HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

|  |  |
|---|---|
| IN RE CLASSMATES.COM CONSOLIDATED LITIGATION | CASE NO. 09-CV-0045 (RAJ) |
| | XAVIER VASQUEZ'S BRIEF IN SUPPORT OF OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT |
| | NOTE ON MOTION CALENDAR: October 27, 2010 |

Objector Xavier Vasquez ("Vasquez") gives notice of his intent to object to the proposed settlement in this action (*see* Exhibit 1).  Through his attorneys, he submits this brief in support of his objection.

## I.    INTRODUCTION

 The plaintiffs' and defendants' support of the proposed Settlement is fatally lacking in evidence that the case was prosecuted with vigor and, most critically, that the proposed settlement agreement is fair, reasonable, and adequate for the absent class members.

To the contrary, on its face, this settlement offers no meaningful compensatory or injunctive relief.  The settlement will predictably result in a near-zero cash return to the subclass, and nothing but a coupon to do business with the very company that plaintiffs complained about for the "millions" of members of the class who are not in the subclass.

In exchange for what will likely be a near-zero cash recovery and coupon redemption rate with 100% reversion to Classmates, defendants United Online, Inc., Classmates Online, Inc., Classmates Media Corporation (collectively, "Classmates" or "Defendants") seek to obtain a

KamberLaw, LLC, (212) 920-3072
100 Wall St., 23rd Fl., NY, NY 10005

broad release that deprives millions of consumers of their procedural and constitutional rights. On many fronts and in profound ways, this proposed settlement fails to come within striking distance of the standards of review that apply here.

The Court should deny final approval.

## II.   PROCEDURAL HISTORY

Lead plaintiff Anthony Michaels ("Michaels") filed his suit in state court in Los Angeles, California on October 30, 2008.  Classmates removed the case to the United States District Court for the Central District of California, where Classmates moved for dismissal for improper venue or, in the alternative, transfer to the Western District of Washington.  In January 2009, Michaels stipulated to the transfer, and his case was designated in this District as C 09-45 RAJ. On December 18, 2008, Xavier Vasquez filed suit in Washington in King County Superior Court. Classmates removed the action to this District, where it was designated as C09-104 RAJ.  On April 30, 2009, this Court consolidated the matters under the caption of "In re Classmates.com Consolidated Litigation" with a case number of C09-45 RAJ.  (Dkt. 45.)

On September 18, 2009 Michaels and plaintiff David Catapano filed a consolidated complaint (Dkt. 59), which Defendants answered (Dkt. 62).  On March 12, 2010, Michaels moved for preliminary approval of a proposed settlement (the "Settlement") (Dkt. 73), which the Court preliminarily approved on April 19, 2010 (Dkt. 76).  The Court set a hearing date of October 27, 2010 to determine whether the Settlement should be made final.

Unfortunately, the parties have engineered the date of their final approval motion and evidentiary support to be *after* the deadline for objections, so Vasquez and other potential objectors do not have the benefit of learning the reasons that the proponents believe the settlement is fair, reasonable, and adequate (for example, the case may be exceptionally weak) or viewing the evidence in support.

## III.   STANDARD OF REVIEW

When evaluating a class action settlement proposal, the District Court owes a fiduciary responsibility to the potential class members to ensure that the proposed settlement is fair, reasonable, and adequate.  "Under Rule 23(e) the district court acts a fiduciary who must serve as a

guardian of the rights of absent class members." *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 123 (8th Cir. 1975). This is a heightened standard applicable to the settlement phase of class actions that require careful scrutiny. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 279-280 (7th Cir. 2002).

Rule 23(e) of the Federal Rules of Civil Procedure prescribes the general standards for approval of a class action settlement:

> The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
>
> (2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
>
> (3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
>
> *   *   *
>
> (5) Any class member may object to the proposal if it requires court approval under this subdivision (e) ...

Pre-certification settlements generally are held to a higher degree of scrutiny in assessing their fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Courts approving such settlements have focused on the "vigor with which the case was prosecuted," among other things. *Malcolm v. Davis*, 706 F.2d 426, 433 (2d Cir. 1983).

## IV.   ARGUMENT

### A.   The Settlement Imposes an Unconstitutional Prior Restraint

In exchange for a release extracted from largely unaware class members, the Settlement binds those class members with a three-year gag order. Section 14.1 of the Settlement states:

> The Releasing Parties and Class Counsel agree, for a period ending three (3) years from the date on which this Court enters an order and judgment granting final approval of this settlement, not to issue any press releases or public

announcements, or make or permit any disclosures, through print media, the internet, electronic mail, broadcast announcements, or otherwise, concerning this Settlement Agreement or the terms and conditions contains herein, not to advertise, market or promote their business or law firms in any way (including on their websites and promotional materials) that would reveal Defendants' identity in connection with the Consolidated Lawsuit or this Settlement Agreement, and not to make or permit any public statements or disclosures regarding this Settlement Agreement that in any way expressly or impliedly reveal the identity of Defendants.

The settlement agreement defines "Releasing Parties" to include all class and subclass members.  In other words, not only does the Settlement enable Classmates to continue its deceptive practices and walk away with minimal financial consequences, but Classmates also receives the legal right to silence class members' discussion, grievances, and internet complaints of the sort that were reported in the press and prompted this lawsuit.

The class representatives evidently hope to achieve this draconian result without adequate disclosure in the notice of settlement.  Without adequate notice, would-be class members who received the notice of settlement were presumably unaware that, if the Court were to approve the settlement, they somehow will have "agreed" to be gagged for three years.  Given the inadequacy of notice, this constitutes an unconstitutional prior restraint on speech and renders the Settlement fatally, and constitutionally, defective.

**B.     The Notice Procedures Were Defective**

This is a case in which email messages from Classmates were the vehicle of harm visited on class members.  In this proposed settlement, email messages from Classmates were the primary vehicle for providing notice of the settlement.  Thus, the notice vehicle is one which class members were likely to disregard and/or delete, given their prior experiences with Classmates' deceptive messages.

As noted in an order regarding settlement notice in a recent case involving deceptive email messages from a social networking site, "Individualized e-mail notice would not appear to be advisable given the subject matter of this litigation is unwarranted e-mail communications." *Slater v. Tagged,* Case No. 3:09-cv-03697-EMC, Dkt. 47, Feb. 18, 2010 (N.D. Cal.).

1  This choice of notice mechanism makes it unlikely that class members will learn of their

2  right to make claims or object, or learn of the prior restraint that the proponents seek to impose

3  on them.

4  ### C.    The Settlement's Injunctive Provisions Do Not Provide Relief

5  The heart of this case is and has always been Defendant's practice of sending deceptive

6  emails that claim long-lost acquaintances want to make contact with the recipients, who re-

7  sponded by registered on Classmates' website and, in some cases, paid for Gold memberships.

8  As plaintiffs alleged in the amended complaint (Dkt. 58-2 ¶¶ 7-8):

> [Asserted class members] have received or continue to receive from Defendants
> false, materially misleading, or deceptive information in the subject line of e-mail
> messages, after which they purchase subscription services from Defendants based
> on the reasonable understanding that past acquaintances from school, work or
> military service are trying to contact them through the www.classmates.com
> website.
>
> However, it is not until a class member pays for a premium membership
> subscription that he or she learns that the misleading e-mails are a deceptive
> marketing scam. Defendants' actions and inactions injure Plaintiffs and the Class
> because Plaintiffs do not learn until after paying for a subscription that, despite the
> reasonable interpretation of Defendants' e- mail subject lines, *none of the people
> Classmates has identified* have been trying to contact them through the Classmates
> website.

The proposed settlement, however, does little-to-nothing to address this deceptive prac-

tice of Classmates.  The proposed settlement's  sole gesture toward this practice is Classmates'

agreement to include more explanations in "either the Terms of Service of Privacy Policy."  In

other words, the proposed settlement permits Classmates' continued deceptive subject lines but

calls for Classmates to explain away its deception in relatively obscure locations that Class-

mates' targets—excited at the prospect of reconnecting with old friends—are hardly likely to see

until they have already been had.  (Dkt. 78-1, Exh. E.)

### D.    The Settlement's Compensatory Provisions Do Not Provide Relief

This is a coupon settlement. The coupons offered under this Settlement are being offered

to people who, by definition, were duped into registering for Classmates and are unlikely to see

1    any value in those coupons—if they even see the offer in the first place, under the circumstances

2    of the notice provided.

3         More than anything, the compensatory provisions provide a windfall for Classmates,

4    which acquires the personal data of claimants. Given the high likelihood of a low number of

5    claimants, Classmates will not suffer much diminution in the money it has ostensibly earmarked

6    for relief—all of which reverts to Classmates if unclaimed.

7         Finally, for the class and the subclass defined in the Settlement, Classmates retains the

8    valuable fruits of its deception, the personal data of its registrants. The Settlement does nothing

9    to require Classmates to account for or purge this information. Instead, it calls on the injured par-

10   ties to contribute yet more data and website patronage.

11        Michaels' preliminary approval motion compares this Settlement to the settlement in the

12   Facebook Beacon case, in which some of the undersigned counsel were co-lead counsel. In the

13   Facebook Beacon settlement, however, the $9.5 million was designated for *cy pres* relief and did

14   not revert to the defendant. In addition, Facebook terminated its Beacon program. Here, the Set-

15   tlement essentially endorses Classmates' continued deceptive email campaign.

16        **E.     The Strength of the Case Does Not Justify the Settlement**

17        In Michaels' motion for preliminary approval, he argued that the strength of his case fa-

18   vored approval of the settlement, but did not say why.  In fact, he voiced his continued confi-

19   dence in the merits of his claims and stated his belief that "the evidence at trial would establish,

20   among other things, that Defendants' e-mail subject lines improperly induced free members to

21   pay for a "Gold" membership with Classmates."  (Dkt. 73, p. 16.)

22        Although he observed that Defendants disputed his claims and did not believe plaintiffs

23   would prevail at trial, and he argued that his case should be weighed against the amount offered

24   in settlement, he gave no basis for concluding that his claims, when compared to the Settlement's

25   supposed relief, supported approval of the Settlement.

26        Contrary to Michael's unexplained claim that this factor supports settlement approval, the

27   settlement does not justify relinquishment of class members' claims.  The claims are strong—or

28   at least there has been no showing that they are not.

And, the relief in the proposed settlement illusory.  Even taking the Settlement at face value and assuming a number of class members take advantage of it, class members' are being asked to give up their claims in exchange for a coupon, accept a gag order, and essentially grant their blessing to Classmates' continued deceptive practices.  But in reality, those with experience in class actions know too well that offering a claims-made process to obtain either $3 or a $2 coupon toward future purchase from the alleged wrongdoer is virtually the same as offering nothing.  And the proposed settlement provides no clause preventing reversion of 100% of the supposed benefit to Classmates, if unclaimed.

Even the injunctive relief section, which the class representatives may contend is the primary settlement consideration in exchange for the broad releases and gag order, applies largely to *future* victims, not present class or subclass members.  The injunction does not even require Classmates to destroy its database of personal information it collected from class members under allegedly false pretenses.

Under these circumstances, the strength of the claims militates in favor of continuing to litigate this matter to trial, absent a settlement that provides fair, reasonable, and adequate relief.

### F.     The Objection Requirements Violate Federal Rules

In the parties' settlement agreement, they list a number of specific pieces of information that an objector must provide and specific procedures that an objector must follow.  Vasquez has attempted to comply with those provisions.

If the settlement proponents argue that Vasquez made a misstep by failing to jump through one or another of the hoops that the proponents constructed, Vasquez counters that those hoops violate Rule 23.  Rule 23 provides very simply that "[a]ny class member may object to the proposal …"  It does not provide that any class member may object so long as he manages to clear a series of artificial hurdles that a settlement proponent is allowed construct.  Those hurdles violate the class members' rights afforded by Rule 23.

1

2

### G.      It Appears that Class Members Will Be Denied Their Right to Object to Fees

3

Under the Federal Rules, class members have a right to object to a proponent's request

4

for fees resulting from a class action settlement.  Fed. R. Civ. P. 23(h)(2).  This right derives

5

from subpart (h)(1) of Rule 23, which requires that fee requests "must" be made by motion under

6

Rule 54(d)(2); and subpart (h)(2) of Rule 23, which provides that "[a] class member … may ob-

7

ject to the motion …"

8

It appears that the proponents of this settlement have engineered the briefing and schedul-

9

ing of the settlement proceedings so plaintiffs will move for fees after the deadline for objecting

10

has passed.  Vasquez is unaware of any pending Rule 54(d)(2) motion for fees, yet his objection

11

is due today.

12

This appears to be a blatant attempt by the settlement proponents to circumvent the pro-

13

tections of Rule 23, an attempt the Court should not tolerate.

14

### V.      CONCLUSION

15

For all of the foregoing reasons, Mr. Vasquez respectfully requests that this Court reject

16

the proposed settlement, allow the litigation of this action, and order that the class be represented

17

by a plaintiff and counsel who have not been proponents of this onerous settlement, who are not

18

conflicted by trying to defend it, and who can act in the best interests of the putative class.

19

20

Dated: August 17, 2010          Respectfully submitted,

21

KAMBERLAW, LLC

22

23

s/   David A. Stampley

24

By: David A. Stampley (*pro hac vice*)
      *dstampley@kamberlaw.com*
      Scott A. Kamber (*pro hac vice*)
      *skamber@kamberlaw.com*
      KAMBERLAW, LLC
      100 Wall St., 23rd Floor
      New York, NY 10005

25

26

27

28

1

2

Tel:     (212) 920-3072
Fax:     (212) 920-3081

3

LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
Clifford Cantor (WSBA # 17893)

4

*cacantor@comcast.net*
627 208th Ave. SE

5

Sammamish, WA 98074-7033

6

Tel:     (425) 868-7813
Fax:     (425) 868-7870

7

COUNSEL FOR PLAINTIFF XAVIER VASQUEZ

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VASQUEZ'S OPP. & CROSS-MOT.
re. INTERIM COUNSEL
No. C 09-45 RAJ  /  No. C 09-104 RAJ

- 2 -

LAW OFFICES OF
CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, WA 98074-7033
Tel: (425) 868-7813 ● Fax: (425) 868-7870

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Certificate of Service**

I certify that, on August 17, 2010, I caused the foregoing Notice of Xavier Vasquez, Memorandum of Law, and annexed exhibits, to be electronically filed with the Clerk of the Court via the CM/ECF system, which will send notification of such filing to counsel for all parties in each of the cases captioned on the first page of this document.

        s/  David A. Stampley
        David A. Stampley