1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

IN RE CLASSMATES.COM
CONSOLIDATED LITIGATION

MASTER CASE NO. C09-045 RAJ

**JOINT STATEMENT REGARDING
SETTLEMENT**

## I.    INTRODUCTION

Pursuant to this Court's Order, dated August 30, 2010 (the "August 30 Order"), the parties hereby submit this Joint Statement Regarding Settlement ("Joint Statement") to address the questions raised by the Court and to provide the Court with additional information about the settlement of this class action lawsuit.

As a foundational matter, the parties fully understand that supplemental notice must be provided to class members concerning class counsel's fee motion. At the same time, however, the parties do not believe that the extremely low number of objections to the settlement calls into question the appropriateness of the settlement. To the contrary, the fact that only 27 class members objected, out of a class of almost 57 million people, is compelling evidence in support of final approval of the settlement. The extraordinarily low number of objections is even more dramatic when compared to the number of emails the settlement administrator received from class members and visits to the settlement website. To date, the administrator has received

JOINT STATEMENT REGARDING
SETTLEMENT - 1
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1  over 188,000 emails about the settlement, and over 100,000 people have visited the settlement

2  website.  Yet there were only 27 class members who objected.  Thus, it was not that class

3  members ignored this settlement and were not considering their rights and potential remedies;

4  rather, it is simply that only very few of the millions of class members objected to the

5  settlement.

6      The parties respectfully submit that the Court should not be concerned by the objections

7  submitted by these 27 individuals.  Those individuals had every right to opt out and seek their

8  own relief.  Set forth below are answers to the specific questions raised by the Court in its

9  August 30 Order, and some additional information for the Court's consideration.[1]

10                II.     BRIEF BACKGROUND AND RESULTS OF SETTLEMENT
                                ADMINISTRATION
11

12      This lawsuit began on October 30, 2008, with the filing of a putative class action

13  lawsuit against defendants by Anthony Michaels (the "*Michaels* Lawsuit").  Shortly thereafter,

14  on December 18, 2008, a second (nearly identical) class action lawsuit was filed against

15  defendants by Xavier Vasquez (the "*Vasquez* Lawsuit").   The two lawsuits challenged

16  Classmates Online, Inc.'s email and related practices.   On April 30, 2009, the Court

17  consolidated the *Michaels* Lawsuit and *Vasquez* Lawsuit.  On September 18, 2009, plaintiffs

18  filed their Amended Consolidated Class Action Complaint.  The parties conducted extensive

19  formal and informal discovery, research and due diligence on all claims.

20      On December 18, 2009, the parties engaged in a full day of formal mediation before the

21  Honorable Steve Scott of Judicial Dispute Resolution, LLC in Seattle, Washington.   That

22  formal mediation session did not end in settlement, but the parties had made enough progress

23  _____

24  [1]  The parties recognize that the Court did not request briefing in support of final approval of the Settlement
     Agreement in the August 30 Order.  The parties, however, briefly provide information herein in order to assist the
     Court in its considerations.   A final approval motion will be filed at a later time, as directed by the Court's
25  scheduling order.  The parties also note that the information contained herein concerning the administration of this
     settlement was provided by the Settlement Administrator.  The parties believe this information to be up-to-date
26  and accurate and provide it now for the Court's consideration.  A declaration from the Settlement Administrator
     setting forth final numbers and information will be provided with the motion for final approval.

JOINT STATEMENT REGARDING                          DLA Piper LLP (US)
SETTLEMENT - 2                                      701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                             Seattle, WA  98104-7044 ● Tel: 206.839.4800

1   toward a potential settlement that they agreed to continue negotiations.  Over the next three

2   months, the parties spent an enormous amount of time conducting further due diligence on all

3   claims, negotiating a settlement, and working towards the final Class Action Settlement

4   Agreement ("Settlement Agreement"), which the parties executed on March 12, 2010.  This is

5   not a settlement that was quickly thrown together in an effort to generate fees for class counsel

6   or to skirt obligations to class members (as a couple objectors suggest).  To the contrary, under

7   the circumstances, and given the facts and the law, defendants believe the settlement is very

8   generous[2] and the parties agree that it adequately and appropriately resolves this dispute.[3]

9   On April 19, 2010, this Court preliminarily approved the Settlement Agreement.

10  Following preliminary approval, the Court provided the parties with additional instructions

11  concerning settlement notice and worked closely with the parties to ensure that class members

12  would receive adequate notice of the settlement.  The parties and the Settlement Administrator

13  followed the Court's instructions.  Notice to class members commenced on or about June 2,

14  2010 and concluded on July 18, 2010, in accordance with the Court's directive.  Notice was

15  accomplished as follows: (1) the Settlement Administrator sent the approved notice forms via

16  email to almost 57 million class members; (2) the approved publication notice was published in

17  *The Wall Street Journal* on June 4, 2010; and (3) the settlement notice forms and relevant case

18  materials were made available on the Settlement Administrator's settlement website.

19

20

21

---

22  [2]  Defendants vigorously dispute plaintiffs' allegations and are confident that if the case were not settled,
    defendants would have prevailed on the merits of the case.  Nevertheless, defendants were willing to negotiate a

23  potential settlement and ultimately settle the case on the terms set forth in the Settlement Agreement in order to put
    this dispute behind them.

24  [3]  Notably, while the Amended Consolidated Class Action Complaint did not contain all of the causes of action
    asserted in the original complaints, the Court should feel confident that each and every cause of action or

25  contention asserted in the original complaints and in the Consolidated Complaint was considered in settling this
    dispute.  This is made particularly evident by the fact that the injunctive relief agreed to by defendants specifically

26  addresses the privacy allegations made in the *Vasquez* Lawsuit, which were not explicitly asserted in the
    Consolidated Complaint.

JOINT STATEMENT REGARDING
SETTLEMENT - 3
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1

The below chart provides relevant settlement data as of September 19, 2010.

| Publication Notice (*WSJ*) | Published June 4, 2010 |
|---|---|
| Total Emails Sent to Class Members | 56,860,107<br>(Sent 6/2/2010 – 7/18/2010) |
| Number of Visits to Settlement Website | 102,136 |
| Number of Emails Sent by Class Members to Settlement Administrator | 188,275 |
| Total Number of Claims | 50,012 |
| Number of Class Claims | 30,737 ($2.00 Benefit) |
| Number of Sub-Class Claims | 19,275 Total<br>• 17,392 Electing $3.00 Cash Payment<br>• 1,862 Electing $2.00 Benefit<br>• 21 Not Stating Election |
| Number of Exclusions/Opt-Outs | 8,273 |
| Percentage of Exclusions/Opt-Outs | 0.016% of Total Class |
| Number of Formal Objections | 27 |
| Percentage of Formal Objections | 0.00005% of Total Class |
| Number of Correspondence Received That Could Conservatively be Read as Objecting to Settlement (Excluding Formal Objections) | 14[4] |
| Cost of Settlement Administration to Defendants (To Date) | $268,594 |

The parties' first reaction to the data above is that extraordinarily few class members objected to the settlement. Out of nearly 57 million class members, a mere 27 filed objections.

---

[4] The fact that these few individuals did not file formal objections should not be overlooked. While some of these notes and letters do take issue with certain elements of the settlement, their authors do not feel strongly enough about their "objections" to raise them formally with the Court. Moreover, these additional "objections" raise the same issues as those raised in the formal objections.

JOINT STATEMENT REGARDING
SETTLEMENT - 4
No. C09-045 RAJ

DLA PIPER LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   It was expected that with a class size of 57 million members, there would be objections.  Most

2   consumer class action settlements face objections.  But 27 total objections out of 57 million

3   members constitutes an extraordinary endorsement of the settlement.

4           The fact that there were over 100,000 visits to the settlement website, and over 188,000

5   emails to the Settlement Administrator, shows that class members who genuinely feel they

6   should be compensated by Classmates are exploring and exercising their rights.  Over 8,000 of

7   those individuals have excluded themselves from the settlement, allowing them the right to

8   pursue their own claims.[5]  With respect to the claim take-rate, the parties acknowledge it is

9   lower than expected.  But a relatively low take-rate does not mean the settlement is not

10  adequate, fair and reasonable.  This is especially true when the Settlement Agreement provides

11  for substantial injunctive relief that will modify the Guestbook feature and revise the Privacy

12  Policy of Classmates for a period of two years.  Class representatives' impetus for this lawsuit

13  was the alleged misleading nature of the "Guestbook" feature of the emails sent by Classmates.

14  This settlement was negotiated in good faith and offers a fair and reasonable benefit to those

15  individuals who truly felt aggrieved.  The motion for final approval will further discuss the

16  adequacy of this settlement and address, in detail, any issues raised by the Court or any

17  objectors.

18  **III.    JOINT RESPONSE TO QUESTIONS RAISED IN AUGUST 30 ORDER**

19          The parties jointly respond to the questions raised in the August 30 Order as follows:

20          **A.    Supplemental Notice to Class Members – *In re Mercury Corp.***

21          The Court calls attention to the Ninth Circuit's recent decision in *In re Mercury Corp.*

22  *Sec. Litig.*, No. 08-17372, 2010 WL 3239460 (9th Cir. Aug. 18, 2010).[6]  The August 30 Order

23

24  _____

25  [5]  Of course, in any class settlement, there is a small percentage of people who opt out in principle because of their
    philosophical opposition to lawsuits generally.

26  [6]  Prior to their receipt of the August 30 Order, counsel for the parties were already in discussions about their
    response in light of *In re Mercury Corp.*  In this regard, the August 30 Order, setting forth a framework for how to
    deal with *In re Mercury Corp.*, was a welcome invitation.

JOINT STATEMENT REGARDING                          DLA Piper LLP (US)
SETTLEMENT - 5                                     701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                    Seattle, WA  98104-7044 • Tel: 206.839.4800

provides that, in light of *In re Mercury Corp.*, "class counsel [must] file a fee motion and notify class members of their right to object to it." August 30 Order at 4:4-5. Of course, this will require sending another 57 million emails to class members, which will be costly and will take considerable time to effectively accomplish. In addition to the time needed to send the 57 million emails, time will be needed to allow class members to object, if they choose to do so, and for the Settlement Administrator to manage the responses and inquiries that this supplemental notice will inevitably trigger. With these considerations in mind, the parties propose the following:

1.  Class counsel will file their motion for fees by **October 12, 2010**. This motion will include a detailed accounting of the expenses and time spent by class counsel on this matter.

2.  The Settlement Administrator will post the motion for fees on the settlement website by **October 13, 2010**.

3.  The parties and the Court will work together to prepare the necessary materials to be sent via email to adequately notify class members of class counsel's motion for fees, including when and where it will be publicly filed and available on the settlement website. The parties will finalize these materials by **September 28, 2010**.

4.  Assuming the notice materials are ready for distribution by September 29, 2010, the Settlement Administrator will cause to be published supplemental notification in *The Wall Street Journal* by **October 11, 2010**.[7]

5.  Assuming the notice materials are approved by the Court and ready for distribution by **September 28, 2010**, the Settlement Administrator will begin the process of supplemental email notification on **September 30, 2010**.

6.  The Settlement Administrator work diligently to try to complete the email notification process by **October 26, 2010**. The Settlement Administrator advises, however, that to maximize the effectiveness of the email notifications, it may not be able to send all 57 million emails by October 26, 2010.[8]

---

[7]  This notice will advise class members that the final fairness hearing, currently scheduled for October 27, 2010, is rescheduled to be held on December 10, 2010, or as otherwise set by the Court.

[8]  The Settlement Administrator has advised that, although it is technically possible to send the 57 million emails by October 26, 2010, due to email delivery limitations imposed by certain Internet Service Providers (*e.g.*, Hotmail, Gmail, etc.), there may be complications in doing so. In short, if too many emails are sent in any given day, Internet Service Providers begin blocking the emails, which requires the Settlement Administrator to contact

JOINT STATEMENT REGARDING
SETTLEMENT - 6
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA 98104-7044 • Tel: 206.839.4800

7.      Class members will be given until **November 19, 2010** to object to class counsel's fee motion.

This supplemental notice and the settlement administration necessary to implement it is expected to cost defendants an additional $75,000 to $100,000.

### B.      Modification of Settlement

The Court inquired whether the parties believe the Settlement Agreement should be modified.  The short answer is, No.  The parties believe that the settlement entered into by the parties is fair, reasonable and adequate.  Discussed briefly below is a non-exhaustive list of some of the reasons why the parties feel strongly that the settlement is adequate and appropriate.  These reasons and others will be discussed in greater detail in the motion for final approval.

Nonetheless, the parties acknowledge the Court's apparent concern about two particular issues: (1) the dollar amount that defendants will pay in connection with this settlement, and (2) the amount of attorneys' fees that class counsel may seek.  To address these concerns, while the parties do not believe modification of the settlement is necessary, they are willing to modify the Settlement Agreement as follows (the "Amendment to the Settlement Agreement"):

1.      In addition to all of the relief already offered through the Settlement Agreement, defendants will make a donation in the amount of $500,000.00 to the non-profit charitable

---

each ISP to gain clearance for delivery, further delaying the process.  Accordingly, the Settlement Administrator will make every effort to complete this process by October 26, 2010, but will not engage in practices that are expected to trigger email blocking, which means the process may not be complete by October 26, 2010.

In addition to the email notifications, all class members will be provided notice through the October 11, 2010 *The Wall Street Journal* publication (which will advise class members of the re-scheduled final approval hearing date). In addition, the Settlement Administrator will send via U.S. Mail a copy of the approved notice form to the 27 class members who filed formal objections to the settlement.

The email notice will advise class members that the final fairness hearing, currently scheduled for October 27, 2010, is rescheduled to be held on December 10, 2010, or as otherwise set by the Court.  A proposed form of supplemental notice to which the parties have agreed is attached as Exhibit A to this Joint Statement.  The Settlement Administrator will not send this notice to the 8,273 individuals who have excluded themselves from this settlement.

JOINT STATEMENT REGARDING
SETTLEMENT - 7
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1  organization Ronald McDonald House Charities, or one or more suitable non-profit charitable

2  organizations as directed by the Court;[9] and

3         2.      Class counsel shall limit their request for attorneys' fees to not exceed

4  $1,050,00.00.[10]

5         Defendants' contribution to the Ronald McDonald House Charities will be made within

6  thirty (30) calendar days after the entry of a Final Approval Order and Judgment (as defined by

7  the Settlement Agreement) and exhaustion of any appeals.[11]

8                    **C.      Motion For Final Approval/Final Approval Hearing**

9         Given the parties' proposal concerning supplemental notice of class counsel's fee

10  motion, above, the final approval hearing set for October 27, 2010, will need to be

11  rescheduled.[12] The parties propose the following:

12      •    Motion for Final Approval due by **December 1, 2010**.

13      •    Final Approval Hearing Rescheduled to no later than **December 10, 2010**.

14  **IV.    THE SETTLEMENT IS ADEQUATE AND APPROPRIATE: ADDITIONAL
        INFORMATION FOR THE COURT'S CONSIDERATION**

15

16         The parties took very seriously the Court's suggestion to consider whether the

17  Settlement Agreement should be modified.  Defendants, who are bearing the cost of settlement

18  administration and are having to send their customers now two emails concerning this lawsuit,

19

---

20  [9]  Another potential non-profit organization the Court might consider is the Legal Foundation of Washington to
    support activities and programs that promote access to the civil justice system for low income residents.  CR 23(f)
21  of the Washington State Superior Court Rules endorses this organization as an appropriate recipient of class action
    settlement funds.

22  [10]  Under the Settlement Agreement as it currently exists, class counsel may seek up to $1,300,000.00 in attorneys'
    fees.
23
    [11]  In addition, there is one other portion of the Settlement Agreement that will be clarified through amendment to
24  the Settlement Agreement.   One of the objectors notes that the Confidentiality provision in the Settlement
    Agreement, as worded, appears to bind unnamed class members to that provision.  This was not the intent.  The
25  parties' modifying agreement will clarify that the Confidentiality provision in the Settlement Agreement is
    applicable only to the named parties and class counsel.

26  [12]  Given the technology limitations on sending these emails, there is no way to notify 57 million class members of
    class counsel's fees motion and allow them time to object by October 27, 2010.

JOINT STATEMENT REGARDING                     DLA PIPER LLP (US)
SETTLEMENT - 8                               701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                        Seattle, WA  98104-7044 • Tel: 206.839.4800

1   would rather not provide supplemental notice concerning class counsel's fee motion if the

2   Court is not inclined to grant final approval based upon this submission.  Thus, the parties

3   request that if the Court currently does not anticipate finally approving the settlement (with the

4   additional consideration being offered by defendants and concession by class counsel on their

5   fees request discussed herein), it proceed with the September 24 tentatively-scheduled

6   conference so that the parties may discuss these issues with the Court.

7        The parties strongly endorse the settlement in its modified form and believe it should be

8   approved.  As a preview of the final approval motion, the parties submit the following brief

9   responses to the objections made to the settlement and issues raised by the Court.

### A.        The Number Of Objectors Is Extraordinarily Low

11       In determining the fairness, adequacy, and reasonableness of a settlement, the key factor

12  is the number of objectors to the settlement.  "In an effort to measure the class's own reaction

13  to the settlement's terms directly, ***courts look to the number and vociferousness of the***

14  ***objectors***.  Courts have generally assumed that '***silence constitutes tacit consent to the***

15  ***agreement***.'"  *In re General Motors Co.*, 55 F.3d 768, 812 (3d Cir. 1995) (emphasis added)

16  (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)).  "It is

17  established that the ***absence of a large number of objections*** to a proposed class action

18  settlement raises a strong presumption that the terms of a proposed class action settlement are

19  favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043

20  (N.D. Cal. 2008) (citation omitted) (internal quotations omitted) (emphasis added); *see also*

21  *Hughes v. Microsoft Corp.*, No.C98-1646, 2001 WL 34089697, at *8 (W.D. Wa. March 26,

22  2001) (approving settlement where 0.02% of the class objected and less than 1% opted out).

23       In *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998),

24  the court found that settlement was favored by the class and approved settlement when, out of a

25  class size of about 8 million individuals, 19,000 members opted out (0.2%) and 300 members

26  filed objections (0.004%).  *See also Stoentzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d

JOINT STATEMENT REGARDING
SETTLEMENT - 9
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1   Cir. 1990) (finding that despite the fact that there were 29 objections out of a class of only 281

2   individuals, settlement was still "strongly favor[ed]").   A recent study shows that about 1% of

3   class members will either opt out of or object to any class action settlement.   Theodore

4   Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation:*

5   *Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1531-32 (2004) ("the right to object

6   to a settlement provides a check on reasonableness").

7        The bottom line is, in class action settlements (especially consumer class action

8   settlements where the number of class members is large), it is expected that there will be

9   members who opt out or object to the settlement.   Where the number of objectors and members

10  who opt out is low, the presumption the Court should make is that the settlement is favored by

11  the class and should be approved.

12       Here, notice of this settlement was sent to almost *57 million* class members.   Of those

13  members *only 27 filed objections* (and 14 more sent correspondence that could conservatively

14  be read as "objecting" to the settlement).   This represents *only 0.00005% of the total class*.

15  Based on this extraordinarily small number, under the case law discussed above and similar

16  case law around the country, the low number of objectors to the settlement strongly weighs in

17  favor of final approval of the settlement.[13]

18       Also significant is the low percentage of individuals who have excluded themselves

19  from this settlement.[14]   To date, 8,273 individuals have excluded themselves, which represents

20  only 0.016% of the total class.   Again, this low exclusion rate shows approval of the settlement

21  by most class members.   *See In re American Investors Life Ins. Co.*, 263 F.R.D. at 239 (noting

22  that the exclusions of "only 0.2%" of the class "demonstrat[es] the class's approval of the

---

[13]   Regardless of the extremely low number of objections, the parties take seriously the substance of the objections, which are briefly discussed below and will be addressed in greater detail in the final approval motion.

[14]   While courts typically just note the number of members who opt out of settlements, and primarily focus on the number of objectors, a low opt out rate cannot be ignored.   *See Parker v. Time Warner Entm't*, 631 F. Supp. 2d 242, 254 (E.D.N.Y. 2009) (noting that class members may opt out of settlements to pursue their own claims, which evidences their dissatisfaction with a proposed settlement).

JOINT STATEMENT REGARDING
SETTLEMENT - 10
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1   settlement"); *Glass v. UBS Fin. Servs., Inc.*, No. C06-4068, 2007 WL 221862, at *5 (N.D. Cal.

2   Jan. 26, 2007) (approving settlement where over 2% of the class opted out); *In re Prudential*

3   *Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 318 (3d Cir. 1998) (approving settlement

4   where 0.2% of the class members opted out).

5       The results of the settlement administration are in, and the message is clear – the

6   overwhelming majority of class members do not oppose final approval of this settlement.  Class

7   members have voted by exercising their rights (including electing not to submit a claim, but

8   also not objecting to the settlement or opting out).  The dramatically low number of objectors

9   and individuals opting out strongly favors approval of this settlement.

10      **B.      Not All "Objectors" Are Actually Challenging The Settlement**

11      While the number of objections is already dramatically low, the number opposing the

12  settlement as somehow inadequate is even lower once we exclude those objections expressing

13  disdain at the fact that the lawsuit even exists.  Of the individuals who have been identified as

14  "objectors" (which includes both those who filed formal objections and those who submitted

15  correspondence questioning the settlement), roughly 25% of them feel that the suit has no

16  basis.[15]

17      In the context of evaluating the appropriateness of this settlement, and whether class

18  members are receiving adequate relief through this settlement, it would be unfair to consider

19  the very small handful of objections questioning the relief offered, but not consider the contrary

20  view of those who took the time to tell the Court that they believe this lawsuit is without merit

21  and/or they do not believe there is any reason they should receive any relief from defendants.

22

---

23  [15]   For example, one "objector" writes: "I have never heard of anything more absurd than this class action
24  lawsuit…. Without Classmates.com, I would not have been notified of my upcoming 50 year class reunion."
    [Dkt. No. 85, pg. 2 of 8 (letter from class member)].  Another "objector" writes: "I have no complaints against
25  Classmates.com.  Anything I have provided to them was of my own choice."  [Dkt. No. 84, pg 30 of 83 (letter
    from class member)].  Another "objector" writes: "I too have received e-mails from classmates.com inviting me to
26  join their website service on numerous occasions.  As an intelligent human being in this world, I knew that the
    language of 'other classmates.com members looking for myself' were just sales tactics that classmates.com uses to
    increase its business." [Dkt. No. 84, pg. 33 of 83 (letter from class member)].

JOINT STATEMENT REGARDING                              DLA Piper LLP (US)
SETTLEMENT - 11                                     701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                              Seattle, WA  98104-7044 • Tel: 206.839.4800

1  Defendants contend (and believe it is safe to conclude) that these individuals are representative

2  of millions of Classmates.com members who are perfectly happy with the services Classmates

3  offers them and who have no interest in seeking "relief" from Classmates.[16]  This explains (in

4  defendants' view), why the take-rate is what it is.[17]

5  ## C.  Class Counsel's Fees

6  Class counsel's fee request is not currently before the Court.  Pursuant to *In re Mercury*

7  *Corp.*, class members will be provided notice of class counsel's fee motion, and be afforded an

8  opportunity to object to that motion.  When the Court rules on that motion, it will have the

9  benefit of all such objections.  At that time, the Court will also have the benefit of knowing that

10 class counsel has voluntarily agreed to reduce the amount of its fee request by $250,000.00.

11 ## D.  Relief Provided By Defendants

12 Some of the 27 objectors take issue with the amount of monetary relief that defendants

13 will ultimately provide through the settlement.  These objectors generally ignore the two years

14 of injunctive relief imposed through the Settlement Agreement.  Instead, they focus on the

15 $3.00 cash offer to sub-class members, guessing that the take-rate would be low, resulting in a

16 lower out-of-pocket amount for defendants to pay claims.  These objections miss the mark.

17 _____

18 [16]  While plaintiffs do not concede the merits of their case (and the parties jointly do not believe this is an

19 appropriate time or place to debate the merits), even plaintiffs acknowledge that not all 57 million class members may feel aggrieved by Classmates' actions or feel they are entitled to any relief from defendants.  The notice of

20 settlement put class members on notice of their potential claims against defendants and provided them a choice – submit a claim for the relief that was negotiated for them in good faith, opt out and be entitled to pursue their own

21 claim, or do nothing and be bound by the terms of the Settlement Agreement.  Making that choice is exactly what class members have done, which is exactly what the settlement of class actions under FRCP 23(b)(3) is designed to have happen.

22 [17]  The parties do not believe that a low take-rate means that the relief offered is inadequate.  Class action lawsuits

23 are often settled and finally approved where the relief offered is payment or a discount off of products or services in the amount of less than $5.00.  *See, e.g., Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15, 2006 WL 5062697,

24 at *7 (S.D. Ill. June 5, 2006) (approving settlement providing $1 coupons towards purchase of defendant's product); *Palamara v. Kings Family Restaurants*, No. 07-317, 2008 WL 1818453, at *4 (W.D. Pa. Apr. 22, 2008)

25 (approving settlement offering vouchers with retail value of $4.38).  Each case must be evaluated separately. What a few of objectors (out of almost 57 million) think their claim is "worth" in settlement is not necessarily the minimum amount all class members should be offered.  If any particular class member feels she should receive

26 more than what is offered, she had the opportunity to opt out of the settlement and pursue any relief she feels is appropriate.

JOINT STATEMENT REGARDING
SETTLEMENT - 12
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1  They ignore the other substantial relief that the settlement provides.  Indeed, the $3.00 cash

2  component is only a small portion of the relief defendants are offering through this settlement,

3  and only a portion of its cost to defendants.

4      The Settlement Agreement was negotiated in good faith and was the product of several

5  months of hard work, including the participation of a retired judge who served as mediator.

6  The parties carefully considered numerous factors, including the relative strengths and

7  weaknesses of plaintiffs' claims and defendants' defenses and the cost of going forward with

8  litigation.  The few objectors to the settlement were not privy to those negotiations, and do not

9  have the benefit of all of the information gained by the named parties to the lawsuit.   The

10  parties' negotiations and hard work resulted in a Settlement Agreement through which

11  defendants offered $3.00 cash to 3.165 million people who had signed up for a Classmates.com

12  Gold membership,[18] exposing defendants to a potential cash payout of $9.5 million.   The

13  remaining class members (*i.e.,* roughly 54 million individuals) never spent a penny on a

14  Classmates service, but were nevertheless offered a $2.00 discount off the lowest current price

15  of a Classmates membership.[19]   In other words, in addition to the $9.5 million in cash offered

16  through this settlement, defendants offered roughly $108 million in discounts to class members

17  through its $2.00 discount offer, in addition to substantial injunctive relief.

18      A couple of objectors argue that a full refund (or more) should be offered to all class

19  members, but these objectors ignore that settlement is a product of compromise.  *See Hanlon v.*

20

---

21  [18]   During the class period, the weighted average price of a Classmates Gold membership was $24.49.  Thus, the $3.00 cash offer represents over 12% of the average cost of a membership – a high percentage return.

22  [19]   The core allegation in this case is that Classmates sent allegedly misleading emails to its users that caused them
23  to sign up for a Gold membership.  Offering a settlement benefit to users who never signed up for a Gold
   membership is generous (in defendants' view), for these class members have not spent a penny as a result of the
24  alleged wrongdoing (*i.e.,* they have suffered no actual damage).  Nonetheless, the parties negotiated relief to be
   offered to even those individuals – a substantial percentage discount off of a Gold membership – in addition to the
   injunctive relief, to directly address plaintiffs' core allegation.  Members who are "curious" to learn what they can
25  learn only by having a Gold membership can now obtain such a membership at a substantial discount.

   So there is no confusion, Classmates will not "mark up" its Gold membership price when offering this discount.
26  To the contrary, class members electing this benefit will be offered the $2.00 discount off of the lowest available
   price for a Classmates Gold membership that is available (to any member) at the time they sign up for Gold.

JOINT STATEMENT REGARDING                                    DLA Piper LLP (US)
SETTLEMENT - 13                                              701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                     Seattle, WA  98104-7044 ● Tel: 206.839.4800

1   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (rejecting objections arguing that

2   settlement could have been "better" because such arguments do not mean that the settlement

3   presented is not fair, adequate, and reasonable).   These objectors also ignore that if any class

4   member truly believes he should be given a full refund, he can opt out of the settlement and

5   pursue such a refund on his own.   Such objections are regularly dismissed in the context of a

6   compromised class action settlement such as this.

7        In *Pelletz v. Weyerhauser Co.*, 255 F.R.D. 537, 544 (W.D. Wa. 2009), the court

8   overruled objections that the settlement "could have been better by providing different or

9   additional relief" because the focus of the inquiry must be on whether the settlement is fair,

10  adequate and free from collusion – not "whether the final product could be prettier, smarter or

11  snazzier."   *Id.* (quoting *Hanlon*, 150 F.3d at 1027).   Again, the probability of class members

12  receiving the full relief sought through this lawsuit must be offset by the risks arising from the

13  relative strengths and weaknesses of the claims and defenses, the additional cost of continuing

14  litigation, and the likelihood of success at trial.   *See In re Am. Bus. Fin. Servs. Inc. Noteholders*

15  *Litig.*, No. 05-232, 2008 WL 4974782, at *7 (E.D. Pa. Nov. 21, 2008) ("[T]he settlement is not

16  intended to compensate each and every aggrieved individual fully for his loss, but instead

17  represents a reasonable amount of relief for the settlement class, given the risks inherent in

18  further litigation").[20]

19        While the parties believe that the previously negotiated relief offered through the

20  Settlement Agreement is adequate and reasonable, it is worth mentioning again here that

21  defendants have agreed to supplement that relief by donating $500,000.00 to a charity.

22  Moreover, defendants are providing a substantial benefit to class members through (and

23

24  ───────────────

25  [20]  It is worth noting that objections concerning the relief offered to any class member are a common by-product of
    the class action mechanism itself, which for policy reasons exists to "overcome the problem that small recoveries
    do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.   A class action

26  solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's
    (usually an attorney's) labor."   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting *Mace v. Van
    Ru Credit Corp.*, 109 F.3d 338, 344 (1997)).

JOINT STATEMENT REGARDING                          DLA Piper LLP (US)
SETTLEMENT - 14                                    701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                     Seattle, WA  98104-7044 ● Tel: 206.839.4800

1   incurring substantial costs in putting into place) the injunctive relief offered through this

2   settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 124 (S.D.N.Y.

3   2009) (quoting *In re Initial Pub. Offering*, 226 F.R.D. at 198) ("this settlement is not solely …

4   about monetary recovery"; noting that injunctive relief that provides "significant changes in

5   practices" and "improved disclosure obligations" provided substantial benefit to class

6   members).

### E.    Scope Of Release

8       A few objectors question the scope of release set forth in the Settlement Agreement.[21]

9   The Court also commented on the scope of the release in its preliminary approval order.  The

10  parties agree that the release set forth in the Settlement Agreement is properly tailored and

11  commensurate with the relief offered through the settlement.  The release covers claims that

12  were alleged or could have been alleged in the Consolidated Lawsuit.  The federal courts

13  routinely approve such releases.  *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d

14  96 (2d Cir. 2005) ("Plaintiffs in a class action may release claims that were or could have been

15  pled in exchange for settlement relief."); *see also Browning v. Yahoo! Inc.*, No. C04-01463,

16  2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007) (same).

17      The release language was included in the settlement notice materials sent to class

18  members for the specific purpose of ensuring that class members were fully aware of the rights

19  they were releasing through the settlement.  The notice specifically advised class members that

20  if they wanted to pursue any claims released through the settlement, they needed to exclude

21  themselves from the settlement.   Over 8,000 individuals did exclude themselves from the

22  settlement.  This process is exactly what FRCP 23(c)(2) is intended to accomplish, and exactly

23  what was accomplished here.

24      While the parties acknowledge that five objectors (out of almost 57 million class

25  members) question the scope of the release, the parties respectfully disagree with those

26

---

[21] *See* Dkt. No. 84, pg. 63 of 83; Dkt. No. 81; Dkt. No. 84, pg. 22 of 83; Dkt. No. 84, pg. 44 of 83.

JOINT STATEMENT REGARDING
SETTLEMENT - 15
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800

1 objections.  But resolving that disagreement is not something this Court needs to do.  As the

2 Court noted in the preliminary approval order, the scope of the release is an issue that would

3 need to be addressed by a later court.  *See* April 19, 2010 Order at 5:21-23 ("The court need not

4 demand a narrower release … because [if it is appropriate to do so] a future court called upon

5 to determine the preclusive effect of this settlement will narrow it appropriately.").

### F.    The Claimed Benefit To Classmates

7 Four of the objectors (out of almost 57 million class members) suggest that the $2.00

8 credit towards a Gold membership of Classmates.com offered to all class members will benefit

9 Classmates.[22]  Underlying this objection is the general notion that "coupon settlements" should

10 be closely scrutinized by the Courts.  But just because "coupon settlements" require close

11 scrutiny does not mean they are not adequate.

12 First, this is not just a "coupon settlement."  Roughly 3.16 million class members were

13 offered a $3.00 cash payment, for a total potential cash payout of $9.5 million.  Moreover,

14 every class member will benefit from the injunctive relief terms offered through the settlement,

15 terms which meaningfully address the issues complained about through this lawsuit.  Even

16 without the $2.00 offer to class members, this settlement offers great benefits to all class

17 members.

18 Second, the notion that Classmates will "benefit" from the $2.00 offer is without merit.

19 It assumes that individuals would not have signed up for a Gold membership, but have now

20 decided to do so because they are being offered $2.00 off their membership fee.  There is no

21 reason to conclude that the roughly 33,000 class members who have elected to receive the

22 $2.00 discount would not have signed up for a Gold membership anyway.[23]

---

[22] *See* Dkt. No. 84, pg. 35 of 83; Dkt. No. 84, pg. 56 of 83; Dt. No. 81; Dkt. No. 84, pg. 60 of 83.

[23] This objection also ignores the fact that defendants will spend substantial amounts of money administering this settlement and making this $2.00 offer available to class members.  The cost of providing notice alone (both of the settlement and the planned notice for attorneys' fees) is estimated to cost more than $350,000.  (This is in addition to payment of class counsel fees – which could be over $1 million, the *cy pres* donation in the amount of $500,000, the $3.00 cash payout, and the administrative cost Classmates will internally incur in setting up a system to send out discount codes and allow class members to use those codes.)  Even if all 33,000 people use their

JOINT STATEMENT REGARDING
SETTLEMENT - 16
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1

2

**G.     The Injunctive Relief Offered Through The Settlement Directly Addresses The Acts Complained Of Through This Lawsuit**

3

4

Four class members (out of almost 57 million) suggest that the injunctive relief offered through this settlement does not address the core allegations in the various complaints.[24]  The

5

parties strongly disagree with those four objectors.

6

7

There are two core components to the injunctive relief offered through the settlement. First, Classmates will be required to make considerable additional disclosures and changes

8

relating to its Guestbook feature.   These disclosures and changes directly address the

9

allegations that users are confused about the Guestbook feature or otherwise do not realize that

10

just because someone visited their profile and signed their Guestbook, that does not mean the

11

user knows the person.   Second, the injunctive relief terms require Classmates to make

12

considerable changes and disclosures relating to user privacy (to address the privacy allegations

13

made in the *Vasquez* complaint).   These changes are material and substantial.   They directly

14

address the allegations in this lawsuit and (in plaintiffs' view) provide needed relief to all class

15

members.

16

**H.     Settlement Notice Was More Than Adequate**

17

Two objectors (out of 57 million class members) questioned the adequacy of settlement

18

notice.[25]  These two objections miss the mark.  As a foundational matter, the Court will recall

19

that after preliminary approval, the parties worked closely with the Court to address concerns

20

the Court had about settlement notice and administration.   After that hard work, settlement

21

22

23

discount, given the current price of a Gold membership, Classmates does not stand to make a bunch of money off of these Gold membership sign-ups (many of which likely would have occurred anyway), which must be balanced against the millions of dollars this settlement will cost defendants.  In short, it is unreasonable to say that offering a $2.00 discount is a marketing scheme that will result in a windfall to Classmates.

24

25

26

[24]  *See* Dkt. No. 84, pg. 27 of 83 at ¶ 9; Dkt. No. 84, pg. 35 of 83 at pg. 3; Dkt. No. 81, pg. 5.  One additional objector "objects" to the injunctive relief being provided, but does not actually question its adequacy.  Instead, this objector merely claims that the preliminary approval motion did not explain why the relief offered is adequate, and calls on the Court to closely scrutinize the injunctive relief offered through the settlement.  *See* Dkt. No. 84, pg. 63 of 83 at pg. 8.

[25]  *See* Dkt. No. 84, pg. 24 of 83; Dkt. No. 81.

JOINT STATEMENT REGARDING
SETTLEMENT - 17
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   notice and administration was approved by the Court and carried out in accordance with the

2   Court's direction.  Almost 57 million emails were sent and administered to provide notice to

3   class members.[26]  The process took over a month and a half to complete and has (to date) cost

4   defendants $270,000.  The class consists of almost 57 million individuals (roughly 20% of the

5   entire United States population), most of whom defendants do not have a physical address for.

6   Not only was it impossible to send notice via U.S. Mail to each class member (because physical

7   addresses are not known), but even if addresses were known, notice via U.S. Mail would have

8   dwarfed the cost of any settlement (mailing alone would have cost in the tens of millions of

9   dollars).  In addition to the email notifications that were sent, the Settlement Administrator also

10  published the Court-approved publication notice in *The Wall Street Journal* on June 4, 2010,

11  and the settlement notice was posted on a website that could be located through various internet

12  search engines.  Indeed, for a class this size, under the circumstances, members received the

13  gold standard in settlement notice.[27]

14                                  **V.      CONCLUSION**

15          The parties strongly believe in the propriety of this settlement.  The objections of the

16  very few should not unravel this well-negotiated, well-administered, preliminarily approved

17  settlement.  The parties stand ready to answer any additional questions the Court may have.

18  Otherwise, the parties look forward to further direction from the Court regarding supplemental

19  notice to class members concerning class counsel's fee request, and to working with the Court

20  toward final approval of this settlement.

21

22

23

24
       _____
       [26]  Classmates.com is an internet-based business.  The way it communicates with its customers is through the
25     internet.  Using that same method of communication, Classmates' customers were notified of this settlement.

26     [27]  Email notice is well-recognized as an acceptable method of notifying class members of settlements such as this
       settlement.  *See, e.g., Lane v. Facebook, Inc.*, No. C08-3845, slip op. at 2 (N.D. Cal. March 17, 2010) (notice
       provided by email to class members).

JOINT STATEMENT REGARDING                          DLA Piper LLP (US)
SETTLEMENT - 18                                    701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                    Seattle, WA  98104-7044 • Tel: 206.839.4800

RESPECTFULLY SUBMITTED this 23rd day of September, 2010.

DLA PIPER LLP (US)

*/s/  Russ Wuehler*
Stellman Keehnel, WSBA No. 9309
Russell B. Wuehler, WSBA No. 37941
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044
Telephone:  206.839.4800
Fax:  206.839.4801
E-mail:  russell.wuehler@dlapiper.com

*Attorneys for Defendants Classmates Online, Inc.,*
*Classmates Media Corporation, and United Online, Inc.*

KELLER ROHRBACK L.L.P.

*/s/ Mark Griffin (with permission)*
Mark A. Griffin, WSBA No. 16296
Amy Williams-Derry, WSBA No. 28711
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: 206.623.1900
Fax: 206.623.3384
E-mail:  mgriffin@kellerrohrback.com
E-mail:  awilliams-derry@kellerrohrback.com

KABATECK BROWN KELLNER LLP

Brian S. Kabateck
Richard L. Kellner
Joshua H. Haffner
644 South Figueroa Street
Los Angeles, CA  90017
Tel: (213) 217-5000
Fax: (213) 217-5010
bsk@kbklawyers.com
rlk@kbklawyers.com
jhh@kbklawyers.com

*Interim Class Counsel*

JOINT STATEMENT REGARDING
SETTLEMENT - 19
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on September 23, 2010, I caused to be electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to all counsel of record.

5

Dated this 23rd day of September, 2010.

6

7

*/s/ Russ Wuehler*
Russ Wuehler

8

WEST\222448943.3

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

JOINT STATEMENT REGARDING
SETTLEMENT - 20
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 ● Tel: 206.839.4800