The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE

CLASSMATES.COM CONSOLIDATED
LITIGATION

CASE NO. C09-00045-RAJ

OBJECTION OF MICHAEL I. KRAUSS
TO PROPOSED SETTLEMENT AND
PROPOSED ATTORNEYS' FEE
AWARD

**CLASS ACTION**

**Note on Motion Calendar:**
**December 16, 2010 at 1:30 p.m.**

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     ARGUMENT.................................................................................................. 2

    A.     Objector Michael I. Krauss Is a Member of the Class............................................ 2

    B.     This Pre-Certification Settlement Merits High Scrutiny. ....................................... 3

    C.     Attorneys' Fees Must Be Proportionate to the Actual Class Recovery of
        $117 Thousand.......................................................................................... 4

    D.     The Addition of *Cy Pres* Relief Is a Breach of Class Counsel's Fiduciary
        Duty. ..................................................................................................... 8

        1.     The Addition of *Cy Pres* Relief Is a Material Modification of the
            Settlement Requiring New Opportunity to Object. ................................... 8

        2.     The *Cy Pres* Relief Impermissibly Violates Accepted Standards and
            Is a Breach of Fed. R. Civ. Proc. 23(a)(4). ........................................... 9

        3.     In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a
            Class Benefit When Calculating Attorneys' Fees. ................................. 12

    E.     New Notice Is Also Required Because Existing Notice Was Misleading........... 12

    F.     Because Notice Was Misleading and the Objections Process Was Unduly
        Burdensome, the Court Should Discount Attempts by the Settling Parties to
        Infer Class Approval From the Low Number of Objections. ............................... 13

III.    CONCLUSION.......................................................................................... 16

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - i
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:  (206) 676-7001

# TABLE OF AUTHORITIES

**CASES**

*Amalgamated Meat Cutters & Butcher Workmen v. Safeway Stores, Inc.*,
   52 F.R.D. 373 (D. Kan. 1971) ................................................................................16

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ..............................................................................................3

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..............................................................................................6

*Crawford v. Equifax Payment Services, Inc.*,
   201 F.3d 877 (7th Cir. 2000) ...............................................................................12

*Diaz v. Trust Territory of Pacific Islands*,
   876 F.2d 1401 (9th Cir. 1989) ...............................................................................3

*Dunleavy v. Nadler*,
   213 F.3d 454 (9th Cir. 2000) .................................................................................3

*Ellis v. Edward D. Jones & Co.*,
   527 F. Supp. 2d 439 (W.D. Pa. 2007) ..................................................................15

*Grant v. Bethlehem Steel Corp.*,
   823 F.2d 20 (2d Cir. 1987) .....................................................................................3

*Grove v. Principal Mut. Life Ins. Co.*,
   200 F.R.D. 434 (S.D. Iowa 2001) ........................................................................14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................4, 8

*In re Airline Ticket Comm'n Antitrust Litig.*,
   307 F.3d 679 (8th Cir. 2002) .................................................................................8

*In re American Tower Corp. Securities Litig.*,
   648 F. Supp. 2d 223 (D. Mass. 2009) ....................................................................8

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
   2005 U.S. Dist. LEXIS 16468 (D. Me. Aug. 9, 2005) ...........................................8

*In re Corrugated Container Antitrust Litig.*,
   643 F.2d 195 (5th Cir. 1981) ...............................................................................15

*In re General Motors Corp. Engine Interchange Litigation*,
   594 F.2d 1106 (7th Cir. 1979) .............................................................................15

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) .......................................................................14, 15, 16

*In re Grand Theft Auto Video Game Consumer Litig.*,
   251 F.R.D. 139 (S.D.N.Y. 2008) ...........................................................................5

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ............................................................................9, 12

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - ii
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*In re Pharmaceutical Industry Avg. Wholesale Price Lit.*,
   588 F.3d 24 (1st Cir. 2009)..................................................................9

*In re Washington Public Power Supply Sys. Lit.*,
   19 F.3d 1291 (9th Cir. 1994)..............................................................3

*In re Wells Fargo Securities Litig.*,
   991 F. Supp. 1193 (N.D. Ca. 1998)....................................................8

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986)..............................................................4

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*,
   834 F.2d 677 (7th Cir. 1987)............................................................15

*Masters v. Wilhemina Model Agency, Inc.*,
   473 F.3d 423 (2d Cir. 2007)................................................................8

*Mirfasihi v. Fleet Mortgage Corp.*,
   356 F.3d 781 (7th Cir. 2004)........................................................3, 12

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003)....................................................3, 8, 12

*Moody v. Sears*,
   2007 NCBC 13 (N.C. Bus. Ct. May 7, 2007).....................................5

*Murray v. GMAC Mortgage Corp.*,
   434 F.3d 948 (7th Cir. 2006)......................................................12, 13

*Nachsin v. AOL LLC*
   No. 10-55129 (pending in the Ninth Circuit......................................11

*Petruzzi's, Inc. v. Darling-Delaware Co.*,
   880 F. Supp. 292 (M.D. Pa. 1995)....................................................15

*Schwartz v. Dallas Cowboys Football Club, Ltd.*,
   362 F. Supp. 2d 574 (E.D. Pa. 2005)..................................................8

*SEC v. Bear, Stearns & Co.*,
   626 F. Supp. 2d. 402 (S.D.N.Y. 2009)................................................8

*Silber v. Mabon*,
   957 F.2d 697 (9th Cir. 1992)..............................................................3

*Six Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990)............................................................8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003)..............................................................7

*Strong v. BellSouth Telecommunications, Inc.*,
   137 F.3d 844 (5th Cir. 1998)..............................................................6

*True v. Am. Honda Motor Co.*,
   2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26, 2010) ..................5

*Union Life Fidelity Ins. Co. v. McCurdy*,
   781 So. 2d 186 (Ala. 2000).................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................4

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - iii
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

*Williams v. MGM-Pathe Communications Co.,*
129 F.3d 1026 (9th Cir. 1997) .................................................................6

*Wise v. Popoff,*
835 F. Supp. 977 (E.D. Mich. 1993) ..........................................................6

STATUTES

15 U.S.C. § 77z-1(a)(6) ...........................................................................6

15 U.S.C. § 78u-4(a)(7) .........................................................................12

28 U.S.C. § 1711 ....................................................................................5

28 U.S.C. § 1711 note § 2(a)(3)(A) ..........................................................6

28 U.S.C. § 1712(a) ............................................................................5, 6

RULES

Fed. R. Civ. Proc. 23(a)(4) ...............................................................1, 4, 9

Fed. R. Civ. Proc. 23(c)(2)(B) ................................................................12

Fed. R. Civ. Proc. 23(e) ...........................................................................4

OTHER AUTHORITIES

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07 (2010) .................9

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07(a) (2010) .............9

American Law Institute, *Principles of the Law of Aggregate Litigation* § 3.07(b) (2010) .............9

Beisner, John, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class Action Practice*
(2010) ...........................................................................................10, 11

Editorial, *When Judges Get Generous; A better way to donate surpluses from class-action
award*s, WASH. POST (Dec. 17, 2007) .......................................................10

Eisenberg, Theodore & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class
Action Litigation: Theoretical and Empirical Issues*, 57 VAND. L. REV. 1529, 1532
(2004) .................................................................................................15

Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 21.71 (2004) .......................6

Frank, Theodore H., *Cy Pres Settlements*, CLASS ACTION WATCH (March 2008) ........................10

Grow, Brian, *The Great Rebate Runaround*, BUSINESS WEEK (Dec. 5, 2005) ...............................5

Klonoff, Robert H., *Making Class Actions Work: The Untapped Potential of the Internet*,
69 U. Pitt. L. Rev. 727 n. 251 (2008) ........................................................16

Koppel, Nathan, *Proposed Facebook Settlement Comes Under Fire*, WALL ST. J. (Mar. 2,
2010) ...................................................................................................11

Leslie, Christopher R., *The Significance of Silence: Collective Action Problems and Class
Action Settlements*, 59 Fla. L. Rev. 71 (2007) ........................................14, 15

Liptak, Adam, *Doling Out Other People's Money*, N.Y. TIMES (Nov. 26, 2007) ..................10, 11

Notes of Advisory Committee on 2003 Amendments to Rule 23(h) ...........................................6

Redish, Martin H., *et al.*, *Cy Pres Relief and the Pathologies of the Modern Class Action:
A Normative and Empirical Analysis*, 62 Fla. L. Rev. 617 (2010) ..............................10

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

Silver, Charles, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 Tulane L. Rev. 1809 (2000)........................................................................................4

Tharn, James & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 Geo. J. Legal Ethics 1443 (2005) ........................................................................5

Yospe, Sam, *Cy Pres Distributions in Class Action Settlements*, 2009 COLUMBIA BUS. L. REV. 1014.......................................................................................................................10

Zahorsky, Rachel M., "Unsettling Advocate," *ABA Journal* (April 2010) ...................................3

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - v
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

## I.    INTRODUCTION

It is ironic that this is a case about false and misleading advertising, because class counsel has engaged in false and misleading claims to this Court and to the class. Class counsel, in their motion for attorneys' fees, and in their announcements to the world, repeatedly call this a $9.5 million settlement—even though their clients only received $117,000, and the defendant keeps the other $9.4 million. As such, class counsel's request for fees is not "11%," but rather nearly 900%, impermissibly far above the 25% figure that class counsel acknowledge is the appropriate benchmark. Class recovery is so low because class counsel—either collusively or incompetently—negotiated a settlement structure that made it unduly burdensome for class members to collect. If this Court rewards class counsel based on a fictional "settlement fund" which provided no real chance of actual recovery to the class, then it will provide no incentive for future class counsel to negotiate settlements that create actual recovery. This failure is reason enough to reject the settlement, but even if this Court does not reject the settlement, it would be an abuse of discretion, and a violation of the Class Action Fairness Act and the Federal Rules of Civil Procedure to award more than $30,000 in fees.

But this Court should reject the settlement. After the objection deadline, the parties materially modified the settlement to include a *cy pres* component that violates both the American Law Institute's guidelines for *cy pres* awards and the class counsel's fiduciary duty to the class. Due process and Ninth Circuit precedent require this court to permit class members to object to the materially modified settlement. By putting the interests of third parties ahead of their own clients and the unnamed members of the class, the class counsel and the class representative have demonstrated that they cannot fairly and adequately represent the class under Fed. R. Civ. Proc. 23(a)(4). It would be an abuse of discretion to approve the settlement.

The settlement is further problematic because class counsel's notice effectively misled the class into thinking that a $117 thousand settlement was a $9.5 million settlement. As press coverage of the settlement shows, the public was actually deceived. It would be inequitable to

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 1
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   reward class counsel for this false advertising in a false advertising case.  The court cannot

2   approve the settlement without providing a fair opportunity for class members to object to the lack

3   of actual relief.

## II.    ARGUMENT

### A.    Objector Michael I. Krauss Is a Member of the Class.

6        Michael I. Krauss (business address George Mason University School of Law, 3301 North

7   Fairfax Drive, # 316, Arlington, Virginia  22201, 703-993-8024) was registered with

8   classmates.com during the relevant class period.

9        The putative settlement class is defined as "All Persons, excluding Settlement Subclass

10  members, residing in the United States who were registered with or subscribed to

11  www.classmates.com at any time between October 30, 2004 and April 19, 2010." Professor

12  Krauss is thus a class member with standing to object.  He intends to appear at the fairness hearing

13  through his counsel, Theodore H. Frank of the Center of Class Action Fairness and local counsel

14  Lawrence C. Locker of the Summit Law Group.

15       Professor Krauss teaches torts and legal ethics at George Mason University School of Law,

16  and objects to the proposed attorneys' fees and to the settlement as unethical and a breach of the

17  class attorneys' fiduciary duty to their clients.  The class counsel have put payment to themselves

18  and to unrelated third parties ahead of their clients' interests.

19       The Center for Class Action Fairness, founded by legal academic and attorney

20  Theodore H. Frank in 2009, is a project of the non-profit Donors Trust:  a public-interest law firm

21  that represents consumers *pro bono*.  A number of "professional objectors" are for-profit attorneys

22  that attempt to or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a

23  share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not

24  made in good faith.  But this is not the business model of the Center for Class Action Fairness.

25  While the Center focuses on bringing objections to unfair class action settlements, it makes no

26  effort to engage in *quid pro quo* settlements to extort attorneys, and has never settled an objection.

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 2
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1   The Center analyzes complaints from consumers aggrieved by class action settlement notices to

2   determine whether a settlement is objectionable under the law because it favors attorneys over

3   class members; as a non-profit with limited resources, it must restrict itself to objecting only to the

4   most egregiously bad settlements.  The Center's litigation on behalf of consumers has been

5   covered by *Forbes*, the *National Law Journal*, and the *Wall Street Journal*, among others. *See,*

6   *e.g.,* Rachel M. Zahorsky, "Unsettling Advocate," *ABA Journal* (April 2010) ("'What Ted is doing

7   is something very necessary: being there to protect classes from potentially collusive settlements

8   between businesses and lawyers,' says Todd Zywicki, a George Mason University law

9   professor.").

10   **B.      This Pre-Certification Settlement Merits High Scrutiny.**

11          A "district court ha[s] a fiduciary responsibility to the silent class members." *Grant v.*

12   *Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir. 1987); *cf. also In re Washington Public Power*

13   *Supply Sys. Lit.,* 19 F.3d 1291, 1302 (9th Cir. 1994).  "Because class actions are rife with potential

14   conflicts of interest between class counsel and class members, district judges presiding over such

15   actions are expected to give careful scrutiny to the terms of proposed settlements in order to make

16   sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v.*

17   *Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004).  "Both the class representative and the

18   courts have a duty to protect the interests of absent class members." *Silber v. Mabon*, 957 F.2d

19   697, 701 (9th Cir. 1992).  *See also Diaz v. Trust Territory of Pacific Islands*, 876 F.2d 1401, 1408

20   (9th Cir. 1989) ("The district court must ensure that the representative plaintiff fulfills his

21   fiduciary duty toward the absent class members").

22          Where a court is confronted with a settlement-only class certification, the court must look

23   to factors "designed to protect absentees." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

24   (1997); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003).  "Settlements that take place prior to

25   formal class certification require a higher standard of fairness." *Molski*, 318 F.3d at 953 (*quoting*

26   *Dunleavy v. Nadler*, 213 F.3d 454, 458 (9th Cir. 2000)).

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 3
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

"These concerns warrant special attention when the record suggests that settlement is driven by fees; that is, when counsel receive a disproportionate distribution of the settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1021 (9th Cir. 1998).

This is a fee-driven settlement: the attorneys are requesting fees nine times the amount they recovered for the class. It is unclear whether the lack of recovery for class members is because class counsel tacitly colluded with the defendant or because class counsel simply recklessly disregarded their obligation to negotiate a settlement that was likely to provide meaningful recovery to their clients. But in either situation, the attorneys have failed to meet the standard of Fed. R. Civ. Proc. 23(a)(4), and the settlement fails to meet the standard of Fed. R. Civ. Proc. 23(e).

**C.     Attorneys' Fees Must Be Proportionate to the Actual Class Recovery of $117 Thousand.**

Professor Krauss agrees with class counsel that it is appropriate to base attorneys' fees on a percentage of the recovery. "The contingent fee uses private incentives rather than careful monitoring to align the interests of lawyer and client. The lawyer gains only to the extent his client gains. This interest-alignment device is not perfect. . . . But [an] imperfect alignment of interests is better than a conflict of interests, which hourly fees may create." *Kirchoff v. Flynn*, 786 F.2d 320, 325 (7th Cir. 1986). *See generally* Charles Silver, *Due Process And The Lodestar Method: You Can't Get There From Here*, 74 Tulane L. Rev. 1809 (2000) (citing authorities that show a "broad consensus that percentage-based formulas harmonize the interests of agents and principals better than time-based formulas like the lodestar approach."). The percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). In contrast, the "lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits." *Id.*

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 4
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax:   (206) 676-7001

Class counsel also correctly note that the appropriate benchmark for percentage of recovery is 25%. But they are wrong in claiming that the "recovery" is $9.5 million. They neglect to mention that this is largely a coupon settlement, and, as such, attorneys' fees "shall be based on the value to class members of the coupons that are redeemed" rather than the theoretical value of the coupons available for redemption. 28 U.S.C. § 1712(a). *See also True v. Am. Honda Motor Co.,* 2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26, 2010).

Class counsel knew or should have known when they negotiated the settlement that, because of the unduly burdensome claims procedure, there was no chance class members would actually recover $9.5 million. There was no reason to require an opt-in process for class recovery other than to depress the amount of money going to the class. Defendants have records of every class member's payments, and could simply cut a check or reverse charges to class members' credit cards. Claims forms are a marketing science, akin to the rebates used in selling electronics equipment. Parties can reasonably predict response rates based on the hoops that they require claimants to jump through, just as marketers can predict how many fewer rebates will be claimed if they require customers to cut out a UPC symbol to claim a rebate. *See, e.g.,* Brian Grow, *The Great Rebate Runaround*, BUSINESS WEEK (Dec. 5, 2005).

The low redemption rate for class action coupons and claims is well-known, and was one of the motivating factors behind the Class Action Fairness Act. *See* 28 U.S.C. § 1711 note § 2(a)(3)(A). The rule of thumb is that a redemption rate for a coupon without a secondary market is between 1% and 3%. *See generally* James Tharn & Brian Blockovich, *Coupons and the Class Action Fairness Act*, 18 GEO. J. LEGAL ETHICS 1443 (2005). But even that figure may be an overestimate. *See, e.g., In re Grand Theft Auto Video Game Consumer Litig.,* 251 F.R.D. 139 (S.D.N.Y. 2008) (only 2676 claimants out of 10 million class members); *Moody v. Sears,* 2007 NCBC 13 (N.C. Bus. Ct. May 7, 2007) (337 redemptions in 1.5 million-member class); *Union Life Fidelity Ins. Co. v. McCurdy,* 781 So. 2d 186, 188 (Ala. 2000) (113 redemptions in 104,000-member class). Sure enough, barely 1% of the fund was claimed in this case.

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 5
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    Using claim and rebate forms instead of simply requiring the defendant to cut a check is a

2    form of price discrimination against the disorganized and against those with high opportunity

3    costs. There is nothing inherently evil about price discrimination—but there is no reason for it in

4    a class action settlement other than to reduce class recovery. Attorneys should not be rewarded

5    when they do so.

6    Class counsel cite 1997 Ninth Circuit precedent for the proposition that attorneys' fees

7    should be based on the size of the fund available to the class. But *Williams v. MGM-Pathe*

8    *Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), was written before the 2003 amendments to

9    the Federal Rules of Civil Procedure and the 2005 Class Action Fairness Act, and is no longer

10   good law. (Class counsel fails to cite either legal development.) *See* Notes of Advisory

11   Committee on 2003 Amendments to Rule 23(h) (fee award should not exceed a "reasonable

12   percentage of the amount of any damages and prejudgment interest ***actually paid*** to the class"

13   (emphasis added)) (*citing* 15 U.S.C. §§ 77z-1(a)(6); 78u-4(a)(6)). Because the settlement involved

14   "coupons" for future Classmates.com memberships, the Class Action Fairness Act requires fees to

15   be based on actual class recovery: attorneys' fees "shall be based on the value to class members of

16   the coupons that are redeemed" rather than the theoretical value of the coupons available for

17   redemption. 28 U.S.C. § 1712(a). *See also* Federal Judicial Center, *Manual for Complex*

18   *Litigation (Fourth)* § 21.71 (2004) ("the fee awards should be based only on the benefits actually

19   delivered"); 28 U.S.C. § 1711 note § 2(a)(3)(A) (Congress enacted Class Action Fairness Act out

20   of concern over abuses of the class action device that "harmed" class members, "such as where …

21   counsel are awarded large fees, while leaving class members with coupons ***or other awards of***

22   ***little or no value***." (emphasis added)).

23   Similarly, nothing in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) *requires* courts to

24   award fees based on unclaimed funds, especially in a case like this one where the results would be

25   manifestly unjust. *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844, 852-53 (5th Cir.

26   1998); *Wise v. Popoff*, 835 F. Supp. 977, 982 (E.D. Mich. 1993). The preferability of the modern

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 6
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    rule of basing fees on actual recovery is readily demonstrated by imagining two hypothetical

2    settlements in the imaginary class action *Coyote v. Acme Co.*:

3        **In Hypothetical Settlement #1**, the defendant refers to its records, and sends a $15 check

4    to each of the million class members who purchased mail-order rocket skates from Acme Co., for

5    a total of $15 million in class benefit.

6        **In Hypothetical Settlement #2**, the defendant offers $15 for anyone who fills out a claim

7    form that requires the claimant to answer several questions about the time and place of purchase,

8    provide the serial number of the rocket-skates and a copy of the front-page of the owner's manual,

9    swear under penalty of perjury that they believe they were defrauded, and mail the entire package

10   to a claims-processing service within thirty days. Only 1% of the million class members submit

11   valid claim forms, resulting in $150,000 in recovery from the possible $15 million class recovery.

12       According to class counsel, these settlements, with hundred-fold differences in class

13   recovery, are *identical*, and merit identical attorneys' fees payouts. This is an absurd result, and

14   one that creates perverse incentives for class counsel and defendants to collude—explicitly or

15   tacitly—to minimize recovery by making it difficult for class members to make claims, while

16   exaggerating illusory "recovery funds" to guarantee that the attorneys will obtain the majority of

17   recovery. The Ninth Circuit has recognized this principle. "If fees are unreasonably high, the

18   likelihood is that the defendant obtained an economically beneficial concession with regard to the

19   merits provisions, in the form of lower monetary payments to class members or less injunctive

20   relief for the class than could otherwise have obtained." *Staton v. Boeing Co.*, 327 F.3d 938, 964

21   (9th Cir. 2003). No explicit collusion is needed: defendants are naturally trying to limit their

22   expenditures, and class counsel knows that an illusory settlement fund will produce a higher

23   proportion of attorneys' fees from the total actual settlement than a settlement fund that actually

24   provides class benefits.

25       The only way for this Court to fulfill its duty to protect the interests of absent class

26   members and to align class counsel's incentives with their putative clients is to refuse class

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 7
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    counsel's request to base attorneys' fees on illusory relief.  Fees should be based on the recovery

2    of $117 thousand of cash and redeemed coupons, and should not be above $30,000.

3        Any other result would violate the Federal Rules and the Class Action Fairness Act.[1]

4    **D.    The Addition of *Cy Pres* Relief Is a Breach of Class Counsel's Fiduciary Duty.**

5        **1.    The Addition of *Cy Pres* Relief Is a Material Modification of the Settlement
              Requiring New Opportunity to Object.**

6        Courts, including the Ninth Circuit, have repeatedly rejected settlements because of

7    inappropriate *cy pres* awards.  *See, e.g., Molski*, 318 F.3d at 954-55 (reversing settlement

8    approval); *Masters v. Wilhemina Model Agency, Inc.*, 473 F.3d 423 (2d Cir. 2007) (reversing

9    settlement approval); *In re Airline Ticket Comm'n Antitrust Litig.*, 307 F.3d 679, 682 (8th Cir.

10   2002) (reversing settlement approval); *In re American Tower Corp. Securities Litig.*, 648 F. Supp.

11   2d 223, 224-25 (D. Mass. 2009); *SEC v. Bear, Stearns & Co.*, 626 F. Supp. 2d. 402, 415

12   (S.D.N.Y. 2009); *Schwartz v. Dallas Cowboys Football Club, Ltd.*, 362 F. Supp. 2d 574, 577

13   (E.D. Pa. 2005); *In re Wells Fargo Securities Litig.*, 991 F. Supp. 1193, 1197 (N.D. Ca. 1998); *In

14   re Compact Disc Minimum Advertised Price Antitrust Litig.*, 2005 U.S. Dist. LEXIS 16468 (D.

15   Me. Aug. 9, 2005).

16       Moreover, in the Ninth Circuit, a *cy pres* award "will be rejected when the proposed

17   distribution fails to provide the 'next best' distribution." *Six Mexican Workers v. Arizona Citrus

18   Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990).  Any such distribution must "adequately target the

19   plaintiff class." *Id.*  But class members have been given no notice of the *cy pres* award (which

20   was not established until after the objection deadline had passed) and do not even have notice of

---

[1] Class counsel's motion for attorneys' fees does not attempt to quantify the value of the injunctive relief to the class.  Nor can it.  The proposed injunction affects future customers of Classmates.com, not the class.  It is tautological that injunctive relief is not a class benefit unless it provides benefit to the class.  It is appropriate to consider injunctive relief a benefit to the class when the injunctive relief is targeted to the class.  For example, in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), the parties agreed to a settlement whereby Chrysler would provide "a redesigned improved replacement latch to be installed free of charge." *Id.* at 1018.  This injunction provided a direct benefit to the class of Chrysler owners that had purchased an allegedly faulty vehicle.  The injunction in this case does nothing for the class members injured by false advertising in this case, and cannot be counted towards the attorneys' fees.

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 8
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1   who the *cy pres* recipient will be even now.  This is wrong.  Class members have not had a "full

2   and fair opportunity" to contest the proposed *cy pres* distribution.  Under *In re Mercury*

3   *Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010), the court cannot approve the settlement

4   without providing that full and fair opportunity to object to the materially changed settlement.

5   New notice is required before the court approves the settlement.

6   **2.    The *Cy Pres* Relief Impermissibly Violates Accepted Standards and Is a**
        **Breach of Fed. R. Civ. Proc. 23(a)(4).**

7

8        This Court, however, need not require a wasteful third notice in this case, because the

9   proposed *cy pres* is a breach of class counsel's fiduciary duty to the class by valuing the recovery

10  of a third party over the recovery to the unnamed class members, and demonstrates that they

11  cannot fairly and adequately represent the class.  American Law Institute, *Principles of the Law of*

12  *Aggregate Litigation* § 3.07 (2010) ("ALI *Principles*").  This Court should simply accept

13  Professor Krauss's objection to the *cy pres* relief and reject settlement approval.

14       Class counsel owes a fiduciary duty to their putative class clients to put the clients'

15  interests first in negotiating a settlement.  *Cy pres* may be appropriate when the class is not easily

16  ascertainable, or where the transaction costs of distributing a small settlement among many class

17  members is not feasible.  ALI *Principles* § 3.07(a) .  But because this settlement already creates a

18  method to distribute funds for class members, *cy pres* is inappropriate here.  Nor is distribution of

19  any leftover funds appropriate under the ALI *Principles*, which states that "the settlement should

20  presumptively provide for further distributions to participating class members unless the amounts

21  involved are too small to make individual distributions economically viable or other specific

22  reasons exist that would make such further distributions impossible or unfair." *Id.* § 3.07(b) .  The

23  class has not been fully compensated, so additional *pro rata* distributions would not be a windfall

24  requiring *cy pres*. *Cf. In re Pharmaceutical Industry Avg. Wholesale Price Lit.*, 588 F.3d 24 (1st

25  Cir. 2009) (approving *cy pres* of unclaimed funds because district court ensured full treble

26  recovery of class members first).

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 9
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    There is no reason to have *any cy pres* distribution in this settlement, other than the class

2    counsel's preference to assign a discrete and influential third party hundreds of thousands of

3    dollars at the expense of providing a few dollars to thousands of faceless clients.  And no doubt

4    the class counsel wishes to be able to issue a press release making it seem like the class counsel

5    are generous donors to charity, when in fact they are spending their putative clients' money.  The

6    charity-to-be-named is not the class counsel's client; the class members are.  And the failure of

7    class counsel and the class representative to put the interests of the class first in negotiating this

8    settlement raises severe Rule 23(a)(4) concerns: how can they be said to fairly and adequately

9    represent the class when they are pursuing the interests of third parties at the class's expense?  *See*

10   Declaration of Michael I. Krauss ¶ 2.

11       The ALI is not alone in noting the inherent conflicts of interest raised by *cy pres*

12   distributions.  *See, e.g.*, Martin H. Redish, *et al.*, *Cy Pres Relief and the Pathologies of the Modern*

13   *Class Action: A Normative and Empirical Analysis*, 62 FLA. L. REV. 617 (2010) (*cy pres*

14   "threatens to undermine the due process interests of absent class members by disincentivizing the

15   class attorneys in their efforts to assure [classwide] compensation of victims of the defendant's

16   unlawful behavior"); John Beisner, *et al.*, *Cy Pres: A Not So Charitable Contribution to Class*

17   *Action Practice* (2010); Sam Yospe, *Cy Pres Distributions in Class Action Settlements*, 2009

18   COLUMBIA BUS. L. REV. 1014; Theodore H. Frank, *Cy Pres Settlements*, CLASS ACTION WATCH

19   (March 2008); Editorial, *When Judges Get Generous; A better way to donate surpluses from class-*

20   *action award*s, WASH. POST (Dec. 17, 2007) ("Federal judges are permitted to find other uses for

21   excess funds, but giving the money away to favorite charities with little or no relation to the

22   underlying litigation is inappropriate and borders on distasteful. In all but the rarest of

23   circumstances, those funds should be made available to individual plaintiffs and not to outside

24   organizations—no matter how worthy"); Adam Liptak, *Doling Out Other People's Money*, N.Y.

25   TIMES (Nov. 26, 2007).

26

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 10
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    It is further inappropriate to settle a case by providing a sum of money to a judge to issue

2 to a judge's preferred charity.  When the charitable distribution is related to the judge, or left

3 entirely to the judge's discretion, the ethical problems and conflicts of interest multiply.  Class

4 action settlements require judicial approval: one can readily envision a scenario where a judge

5 looks more favorably upon a settlement that provides money for a judge's preferred charity than

6 one that does not.  Even if a judge divorces herself from such considerations, the parties may still

7 believe that it would increase the chances of settlement approval to throw some money to a charity

8 associated with a judge.

9    Moreover, charities that know that a judge has discretionary funds to distribute can—and

10 do—lobby judges to choose them, blurring the appropriate role of the judiciary.  "[A]llowing

11 judges to choose how to spend other people's money 'is not a true judicial function and can lead to

12 abuses.'"  Liptak, *supra* (quoting former federal judge David F. Levi); *see also id.* (quoting Judge

13 Levi as saying "judges felt that there was something unseemly about this system" where "groups

14 would solicit [judges] for consideration as recipients of *cy pres* awards").  As tempting as it is to

15 permit judges to play Santa Claus with settlement money, Congress has not given courts this

16 authority, and the judiciary should not seize this ethically and constitutionally problematic power

17 for themselves.  *See also* Declaration of Michael I. Krauss, ¶¶ 2-4.

18    Lead class counsel in this case, Kabateck Brown Kellner, already has a notable track

19 record of abusing *cy pres*; the case of *Nachsin v. AOL LLC* (pending in the Ninth Circuit, 10-

20 55129) received nationwide criticism for a $0 settlement consisting entirely of *cy pres*—including

21 a donation to a charity affiliated with the judge's spouse.  Nathan Koppel, *Proposed Facebook*

22 *Settlement Comes Under Fire,* Wall St. J. (Mar. 2, 2010); Beisner, *supra,* at 11-13.

23    The way to avoid these conflicts of interest is to forbid *cy pres* awards except in the narrow

24 circumstances where non-windfall pecuniary relief to the class is not feasible.  The settlement

25 must be rejected.

26

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 11
CASE NO. C09-00045-RAJ

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

 3.     **In Any Event, the *Cy Pres* Relief Should Not Be Calculated as a Class Benefit When Calculating Attorneys' Fees.**

In the event this Court decides to disregard the ALI *Principles* and Ninth Circuit precedent on the availability of *cy pres* relief without notice to the class, it should not count the $500,000 *cy pres* as a class benefit when calculating attorneys' fees. *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 784 (7th Cir. 2004) ("There is no indirect benefit to the class from the defendant's giving the money to someone else."); *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 952 (7th Cir. 2006); *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 882 (7th Cir. 2000).

**E.     New Notice Is Also Required Because Existing Notice Was Misleading.**

Class counsel issued public statements claiming that the class would receive $9.5 million; in the second notice of attorneys' fees, class counsel never corrected this deliberate or negligent error, even though class counsel knew that total class recovery was only $117 thousand. Notice is not adequate if it misleads potential class members. *Molski*, 318 F.3d at 952. In this case, there is much evidence that the notice is misleading: multiple press accounts stated that Classmates.com would pay $9.5 million to class members, when in fact Classmates.com is paying barely one percent of that amount. *See* Declaration of Theodore H. Frank Exhibits 1 and 2. Class counsel have breached their duties to the class by failing to provide accurate notice and instead exaggerating class recovery.

Fed. R. Civ. Proc. 23(c)(2)(B) requires "the best notice practicable under the circumstances." There was no reason for class counsel to omit this material information other than to artificially limit the number of objections. *Cf. also* 15 U.S.C. § 78u-4(a)(7) (PSLRA) (notice should include aggregate class recovery and amount recoverable if plaintiff prevailed on each claim alleged).

Class members have not been given a full and fair opportunity to object to a settlement that only provides $117 thousand of relief and seeks to pay attorneys' fees of nearly nine times that amount. *Mercury Interactive*, *supra*. This Court cannot approve this settlement without fair and

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 12
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1    accurate notice, though, as mentioned in Section II.D., *supra*, this Court should simply reject

2    settlement approval.

3           The proposed settlement fund of $9.5 million already reflected a compromise of the class's

4    much larger claim. In reality, the class only realized $117 thousand of benefit, barely 1% of the

5    settlement fund, and an even smaller percentage of the alleged damages.

6           In *Murray v. GMAC Mortgage Corp.*, a 1% ratio of recovery to alleged damages and a

7    high ratio of representative-to-individual recovery was enough to call the settlement untenable: "if

8    the reason other class members get relief worth about 1% of the minimum statutory award is that

9    the suit has only a 1% chance of success, then how could Murray personally accept 300% of the

10   statutory maximum? And, if the chance of success really is only 1%, shouldn't the suit be

11   dismissed as frivolous and no one receive a penny?" 434 F.3d 948, 952 (7th Cir. 2006). Here, the

12   "success" of plaintiffs is similar to the failure criticized in *Murray*. Plaintiffs have either breached

13.  their fiduciary duties by selling the class short or brought an extortionate "strike suit" for their

14   own selfish benefit. Neither should be condoned by approving the settlement or attorneys' fees.

15   And the class should be given the opportunity to object to the settlement actually realized, rather

16   than the misleading settlement terms that were announced publicly.

17   **F.    Because Notice Was Misleading and the Objections Process Was Unduly**
     **Burdensome, the Court Should Discount Attempts by the Settling Parties to Infer**
18   **Class Approval From the Low Number of Objections.**

19          Class Counsel implausibly contends that the 27 objections received in response to the

20   settlement is evidence that the other absent class members *support* the proposed settlement. Dkt.

21   No. 93 at 8-9. There is no reason to draw that inference; Class Counsel has made no effort to poll

22   a representative sample of the putative class members, and they have no basis to claim the class

23   has reacted positively—let alone that millions of class members affirmatively approve the

24   settlement. This is especially true here, where class counsel gave inadequate disclosure that

25   misled class members into believing that the settlement was worth ninety times as much as it was.

26

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 13
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1    Yes, only a few dozen class members objected, but why should class members want to

2    jump through time-consuming procedural hoops to object?  The natural predominant response is

3    apathy, because objectors—unless they can obtain *pro bono* counsel—must spend time and money

4    to attempt to improve the settlement for millions of fellow class members with little potential gain

5    for themselves.  In this case, a class member wishing to object had to jump through procedural

6    hoops in terms of formatting the objection, and then had to spend $1.76 in postage to make four

7    first-class mailings—all over a settlement worth only $2.00 or $3.00 to them.  Little wonder that

8    most class members ignored the settlement notice.

9    Silence is simply *not* consent:

10   There may be many reasons why class members in this case didn't
     register their concerns about the settlement: lack of interest, time,
11   information, etc. Like the Third Circuit in the *General Motors* case,
     the Court is unwilling to automatically equate class silence with a
12   showing of "overwhelming" support for the settlement. Therefore,
     the fact that statistically few people bothered to opt-out or file an
13   objection ultimately counts little in the Court's overall fairness
14   analysis.

15   *Grove v. Principal Mut. Life Ins. Co.*, 200 F.R.D. 434, 447 (S.D. Iowa 2001), *citing In re GMC*

16   *Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 789 (3d Cir. 1995).  "Silence may be a

17   function of ignorance about the settlement terms or may reflect an insufficient amount of time to

18   object. But most likely, silence is a rational response to any proposed settlement even if that

19   settlement is inadequate.  For individual class members, objecting does not appear to be cost-

20   beneficial.  Objecting entails costs, and the stakes for individual class members are often low."

21   Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action*

22   *Settlements*, 59 FLA. L. REV. 71, 73 (2007).

23   There is usually little hope that opt-outs can recover for their claims—the entire purpose of

24   class actions is to aggregate claims that would be uneconomical to bring individually.  "Almost by

25   definition, most class members have too little at stake to warrant opting out of the class litigation

26   and filing an individual lawsuit.  Thus, opting out is probably not a viable option even though a

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 14
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  proposed settlement is unfair or inadequate." Leslie, *supra*, 59 FLA. L. REV. at 109.  Without *pro*

2  *bono* counsel to look out for the interests of the class, filing an objection or opting out is

3  economically irrational for any individual.

4      "[A] combination of observations about the practical realities of class actions has led a

5  number of courts to be considerably more cautious about inferring support from a small number of

6  objectors to a sophisticated settlement." *In re GMC Pick-Up Litig.*, 55 F.3d at 812, *citing In re*

7  *Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981); *cf. Petruzzi's, Inc. v.*

8  *Darling-Delaware Co.*, 880 F. Supp. 292, 297 (M.D. Pa. 1995) ("[T]he silence of the

9  overwhelming majority does not necessarily indicate that the class as a whole supports the

10  proposed settlement. . . .").  "[A] low number of objectors is almost guaranteed by an opt-out

11  regime, especially one in which the putative class members receive notice of the action and notice

12  of the settlement offer simultaneously." *Ellis v. Edward D. Jones & Co.*, 527 F. Supp. 2d 439,

13  446 (W.D. Pa. 2007). "[W]here notice of the class action is, again as in this case, sent

14  simultaneously with the notice of the settlement itself, the class members are presented with what

15  looks like a *fait accompli*." *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834

16  F.2d 677, 680-681 (7th Cir. 1987).  "Acquiescence to a bad deal is something quite different than

17  affirmative support." *In re General Motors Corp. Engine Interchange Litigation*, 594 F.2d 1106,

18  1137 (7th Cir. 1979) (reversing approval of settlement).

19      When class members have little at stake, as in a consumer fraud class action where the

20  maximum recovery was three dollars, the rate of response is famously low.  Theodore Eisenberg

21  & Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical*

22  *and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004).  This is especially true when class

23  members have to follow procedures that artificially deter them from objecting or opting out.  For

24  example, class members were required to affix postage and mail their opt-outs or objections.

25      In the year 2010, there is absolutely no reason that those who settle a class action cannot

26  establish either a dedicated e-mail address or a dedicated form on a website allowing potential

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 15
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  objectors to object or opt out without jumping through burdensome procedural hoops—especially

2  in a case such as this one where the defendant was an Internet website and class notice was

3  achieved through e-mail.  For objections and opt-outs, "the ease and cost-efficiency of such direct

4  internet submissions increases the likelihood of absent class member participation."  Robert H.

5  Klonoff, *Making Class Actions Work: The Untapped Potential of the Internet*, 69 U. Pitt. L. Rev.

6  727, 766 n. 251 (2008).  Given that a dedicated website and dedicated email address was

7  established as part of the settlement notice, the only reason *not* to permit objections through

8  costless means is to artificially lower the number of objections made.  As such, the Court should

9  draw the adverse inference that a majority of the class objects to the settlement.  *Cf. also In re*

10  *GMC Pick-Up Litig.*, 55 F.3d at 813 (finding that "class reaction factor" does not weigh in favor

11  of approval, even when low number of objectors in large class, when "those who did object did so

12  quite vociferously").

13  　　　The judge must act as a guardian for *all* class members—whether or not they have jumped

14  through the hoops of formally objecting.  "[T]he absence or silence of class parties does not

15  relieve the judge of his duty and, in fact, adds to his responsibility."  *Amalgamated Meat Cutters*

16  *& Butcher Workmen v. Safeway Stores, Inc.*, 52 F.R.D. 373, 375 (D. Kan. 1971).  The settlement's

17  proponents have the burden to show the proposed settlement and the proposed fee award is

18  fundamentally fair, adequate, and reasonable, and class counsel have simply not carried this

19  burden.

20  　　　　　　　　　**III.    CONCLUSION**

21  　　　This is not a $9.5 million settlement: it is a $117 thousand settlement, and attorneys' fees

22  should be calculated appropriately.  Any other result would encourage the tacit collusion to benefit

23  defendants and class counsel at the expense of the absent class members that occurred in this case.

24  　　　The class notice failed to give class members an opportunity to object to the $117 thousand

25  recovery, the disproportionate attorney fee request, or the impermissible proposed *cy pres*

26  distribution.  New notice and a full and fair opportunity to object to these provisions is required

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 16
CASE NO. C09-00045-RAJ

Summit Law Group PLLC
315 Fifth Avenue South, Suite 1000
Seattle, Washington 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  under *Mercury Interactive* before this Court can approve the settlement.  However, it would be

2  more efficient if this Court simply accepted and upheld Professor Krauss's objection to these

3  impermissible terms of the settlement.

4       DATED this 18th day of November, 2010.

5

6                             Respectfully submitted,

7                             CENTER FOR CLASS ACTION FAIRNESS

8                             By */s/ Theodore H. Frank*

9                                Theodore H. Frank (*pro hac vice*)
                              Center for Class Action Fairness

10                               1718 M Street NW, No. 236
                              Washington, DC  20036
                              Tel:  (703) 203-8848

11                               *tfrank@gmail.com*

12                            SUMMIT LAW GROUP PLLC

13

14                            By */s/ Lawrence C. Locker*
                              Lawrence C. Locker, WSBA #15819

15                               315 Fifth Avenue S., Suite 1000
                              Seattle, WA  98104-2682

16                               Tel:  (206) 676-7000
                              *larryl@summitlaw.com*

17                            Attorneys for Objector Professor Michael Krauss

18

19

20

21

22

23

24

25

26

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 17
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Mark A. Griffin, Esq.
> Amy C. Williams-Derry, Esq.
> Keller Rohrback
> 1201 Third Avenue, Suite 3200
> Seattle, WA 98101
> *mgriffin@kellerrohrback.com*
> *derry@kellerrohrback.com*

> Richard L. Kellner, Esq.
> Kabateck Brown Kellner L.L.P.
> 644 S. Figueroa Street
> Los Angeles, CA 90017
> *rlk@kbklawyers.com*

> Stellman Keehnel, Esq.
> Russell B. Wuehler, Esq.
> DLA Piper LLP (US)
> 701 Fifth Avenue, Suite 7000
> Seattle, WA 98104
> *stellman.keehnel@dlapiper.com*
> *russell.wuehler@dlapiper.com*

I hereby further certify that on this day I caused a true and correct copy of the foregoing to be served via First Class Mail upon addressees designated above.

DATED this 18th day of November, 2010.

_____
Marcia A. Ripley

OBJECTION OF MICHAEL I. KRAUSS TO PROPOSED
SETTLEMENT AND PROPOSED ATTORNEYS' FEE
AWARD - 18
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001