The Honorable Richard A. Jones

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

9
10

IN RE CLASSMATES.COM
CONSOLIDATED LITIGATION

NO.: C09-45RAJ

11
12

**PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT AND REPLY IN
SUPPORT OF MOTION FOR AWARD
OF ATTORNEYS' FEES AND COSTS
AND PARTICIPATION AWARDS TO
THE CLASS REPRESENTATIVES**

13
14
15
16
17
18
19
20
21
22
23
24
25
26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

1

## I.    INTRODUCTION[1]

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Class Counsel submits this memorandum[2] in support of Plaintiffs Anthony Michaels and David Catapano's (collectively "Named Plaintiffs") motion for final approval of the settlement of this litigation.  Named Plaintiffs, on behalf of other putative Class members (together, the "Class" or "Plaintiffs") have reached a Settlement Agreement with Defendants Classmates Online, Inc., Classmates Media Corporation, and United Online, Inc. (collectively, "Defendants" or "Classmates").

For the same reasons that this Court granted preliminary approval of the class action settlement on May 20, 2010, it should grant final approval of the settlement.

The settlement will achieve one of the primary goals of this litigation – to prospectively stop Classmates from engaging in business practices that Plaintiffs maintain are deceptive.  As this Court recognized in *Zaldivar v. T-Mobile USA, Inc.*, 2010 WL 1611981 (W.D. Wash. Mar. 16, 2010), class actions lawsuits are probably the most effective way to address corporate practices that cause minimal monetary damage on an individual basis, but result in the cumulative damages of millions of dollars to the public.  Quite often, as in this case, the most effective way to curtail the harm is by way of settlement that prospectively preempts the future harm.  Here, Plaintiffs were able to obtain significant prospective relief.

Pursuant to the settlement, Classmates will make material changes that will directly address the potential misleading nature of the Classmates.com guestbook feature that causes emails and other messages to be generated and sent to consumers, and which mislead them into believing that a former classmate is "looking" for them.[3]  Specifically, Classmates will makes these changes to its website: (1) the Classmates Guestbook webpage will clearly explain how the Guestbook feature works, and  explain exactly what it means when it indicates that a person has

---

[1]  Plaintiffs incorporate by reference herein the separately filed Plaintiffs' Response to the Objection of Michael I. Krauss to Proposed Settlement and Proposed Attorneys' Fee Award, which is submitted herewith.
[2]  Class Counsel understands that Defendants will be filing today their own statement in support of final approval of the Settlement.
[3]  The injunctive relief secured by the Settlement is discussed in detail *infra* at 7-8.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

selected a subscriber's name, including the fact that such "selection" may be done by a person whom the visited subscriber does not know or who does not belong to one of that subscriber's affiliations; (2) the Guestbook feature will clearly explain how members can manage their email subscriptions; (3) the Help area of the website will provide clear explanations about the guestbook feature; (4) the Privacy Policy will clearly explain that certain emails Classmates sends to its members contain links that check for existing Classmates cookies on a member's computer and, if no authentication cookie is found, will set such a cookie so that the member can be logged into the site without the need to enter a password.  The policy will further explain, therefore, that members should not forward the emails they receive from Classmates to anyone else and should keep them secure; (5) In every email that Classmates sends that contains a cookie as described above, the footer will contain the following language: "TO PROTECT YOUR PRIVACY, DO NOT FORWARD THIS EMAIL TO ANYONE NOT AUTHORIZED BY YOU TO ACCESS YOUR CLASSMATES.COM PROFILE;" and (6) On every member's profile page, there will be a link that says "not [name]?" or other similar language.  When a member clicks that link, it will take the members to a page that states, "If you are not the person to whom the account you are currently logged into belongs, you may be in violation of Classmates.com's Privacy Policy and/or Terms of Service, and you may be violating the privacy rights of another individual.

Second, the Settlement provides some financial relief for the Subclass that was or could have been directly damaged, through purchasing a paid Gold membership subscription, as a result of Classmates' alleged deceptive conduct.[4]  Because the monetary damages sustained by the Subclass were not that large – the weighted average price of a Gold membership subscription during the Class Period was $24.49, *see* Dkt. 88 at 13 n.18 – and Classmates was not willing to pay a large percentage of this to the Subclass (the Settlement provides for direct payments of three dollar ($3.00) to Subclass members) the ultimate opt-in Claims rate by the Subclass was fairly low.  While it is unfortunate that only 17,412 Class members took advantage of this additional

---

[4] As to the larger Class who was allegedly subjected to Defendants' deceptive practices, but which did not purchase a Gold membership during the Class Period, the Settlement makes available to them a credit for $2.00 off a future Gold membership.  *See infra* n. 11.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

2

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

benefit of the settlement,[5] the claims rate of the cash portion of the settlement should not detract from the fact that: (a) the monetary portion of the settlement was reasonable under the circumstances presented by the claims in this case;[6] and (b) it was not the primary relief upon which the case was settled.  The injunctive relief is the true core benefit provided under the settlement terms.

Third, as a further benefit in addition to the injunctive and monetary relief provided to Class and Subclass members, Plaintiffs (pursuant to the Court's suggestion to consider modifications to the Settlement) successfully negotiated a *cy pres* charitable donation from Classmates of $500,000.  In order to get Classmates to agree to the $500,000 *cy pres*, Class Counsel agreed to a substantial reduction in their fees.

The settlement provides for the payment of attorneys' fees by Classmates in addition to all of the other benefits to the Class.  The Court's order appointing Class Counsel provides them with the right to submit a fee with up to a 2.0 multiplier for their time, yet Class Counsel's fee application will reflect a negative multiplier of .85.  Class Counsel agreed to this negative multiplier to obtain Classmates' agreement to enter the Settlement, and was also agreed upon to prompt Classmates to make a significant *cy pres* payment.

Although there are approximately 142 Class members who filed objections,[7] these statements concerning the Settlement must be placed in proper perspective.  Because there were more than 56 million members of the Class,[8] the number of objectors is relatively small.  On a percentage basis, the number of objectors is even more notable because a professional objector, Theodore Frank of the "Center for Class Action Fairness," established a website, and contributed

---

[5]  Declaration of Jennifer M. Keough Regarding Notice Dissemination And Settlement Administration (Keough Decl.) ¶ 14.

[6]  Significantly, during the settlement notice period, the statutory damage claim was substantially weakened by the decision rendered in *Kleffman v. Vonage Holdings Corp.*, 232 P.3d 625 (Cal. 2010).  In that case, the California Supreme Court, in response to a request from the Ninth Circuit, ruled that marketing emails from an internet company Vonage containing alleged deceptive or misleading information did not violate a comparable California statute.

[7]  Keough Decl., ¶ 14.

[8]  *Id.*, ¶ 4.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    to numerous other websites, urging and facilitating Class members to object.[9]  As demonstrated

2    below and in the separately filed Response to the Objection of Michael I. Krauss, the objections

3    are substantively without merit because they generally fail to account for the primary relief

4    obtained by this settlement – the injunctive relief.

5        Finally, the provision of Notice to Class members and administration of the claims process

6    meets all the requirements for a proper and adequate process, including being the "best

7    practicable" as necessary to protect the due process rights of class members.  *See, e.g., Phillips*

8    *Petroleum Co. v. Shutts,* 472 U.S. 797, 811-812 (1985); *Mullane v. Cent. Hanover Bank & Trust*

9    *Co.,* 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated,

10   under all the circumstances, to apprise interested parties of the pendency of the action and afford

11   them an opportunity to present their objections").  *See* Keough Decl. (attesting to satisfaction of

12   Court-ordered notice plan).

13       Based on the foregoing, including the fact that the Settlement provides meaningful

14   injunctive relief that addresses the deceptive practices alleged in the Complaint and that were the

15   impetus for the litigation, Plaintiffs respectfully request that the Court overrule the objections,

16   which are discussed in more detail below, and enter an order granting final approval of the

17   Settlement and awarding Class Counsel their fees and costs, and the requested participation

18   awards to the Named Plaintiffs.

### II.    THE MICHAEL TODD OBJECTION

19       As an example of the objections received by Class Counsel, Plaintiffs bring to the

20   Court's attention the objection of Michael Todd.  Mr. Todd objects to the settlement on two

21   fronts.  In an objection filed with the Court dated August 14, 2010, he objects that the

22   Settlement is primarily a "coupon" settlement, and that Class Counsel's requested fee of

---

[9] Declaration of Mark A. Griffin in Support of Plaintiffs' Motion in Support of Final Approval and Reply in Support of Motion for Attorneys' Fees ("Griffin Decl.") ¶¶ 14-17, Exs. 13-16.  One of these websites provides a form objection that misrepresents the facts of the settlement, providing class members with a form objection that refers to a "contingency fee of almost 900%" when in fact the Defendants have agreed to pay the amount awarded by the Court in addition to other settlement benefits and fails to mention the expansive injunctive relief obtained for class members.  *Id.* Ex. 16.  Ten class members have used this form to have Mr. Frank's "Center for Class Action Fairness" file objections on their behalf (Dkt. 109-6).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

4

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

$1.3 million is inappropriate when compared to the limited cash relief available to the Class. *See* Dkt. 84.  Mr. Todd does not take into consideration, or even address, the injunctive relief being made available to the Class through the Settlement.  Mr. Todd further objects that he lacks meaningful information by which to evaluate Class Counsel's fees.  As the Court is well aware, however, Class Counsel's full billing records were submitted to the Court on October 12, 2010 and made available to Mr. Todd, and the public, on the Settlement website shortly thereafter.  Although his correspondence with Class Counsel reveals that he reviewed those records, Mr. Todd filed no objection to Class Counsel's fees or costs after it filed its fee petition on October 12, 2010.

On a second front, Mr. Todd has been threatening Class Counsel with litigation and demanding hefty fees to "settle" his "claims" since July 23, 2010.  On December 7, 2010, Mr. Todd filed an action against Mark Griffin, Amy Williams-Derry, and Keller Rohrback L.L.P., in the Circuit Court of Cook County, Illinois, alleging negligence and legal malpractice related to Class Counsel's alleged actions and inactions in litigating and settling this case.

Class Counsel first heard from Mr. Todd on July 18, 2010, when Mr. Todd sent a request asking for certain documents related to the litigation and set a self-imposed deadline of 7 days, or July 25, 2010, for Class Counsel to respond.  Griffin Decl. Ex. 19.  Class Counsel, through Ms. Williams-Derry, responded to Mr. Todd's request in good faith by providing him information, numerous documents, and clarifying Class Counsel's position with respect to other requests, by letter sent via U.S. Mail on July 22.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class Counsel breached no Rule of Professional Conduct by declining to voluntarily satisfy every one of Mr. Todd's very broad requests for documents.  Indeed, even if Mr. Todd had formally moved for discovery of the documents he requested—something he did not do—this Court would have been well within its discretion to deny his motion.  *See Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 834 F.2d 677, 684 (7th Cir. 1987) (affirming denial of objector's motion for discovery of settlement negotiations, noting that "[s]uch discovery is proper only where the party seeking it lays a foundation by adducing from other sources evidence indicating that the settlement may be collusive").

Ms. Williams-Derry's letter not only provided Mr. Todd with numerous documents, but also encouraged him to call Class Counsel if had particular questions about the Settlement or had further questions.  Griffin Decl. Ex. 19.  Mr. Todd never telephoned Class Counsel to discuss the Settlement.  Instead, on July 23, 2010, before Mr. Todd had received Class Counsel's letter, Mr. Todd wrote to accuse Class Counsel of "a clear breach of your duties [by not responding to his July 18 letter]."  *Id.*  Mr. Todd wrote, "I am offering to settle all claims against class counsel for $10,000."  *Id.*  Mr. Todd made a similar attempt at extorting money from Class Counsel in his email dated August 4, 2010, when he wrote, "Accordingly, I will have no option outside of filing my objections, appeal any negative rulings and initiate suit against the two firms for the willful refusal to abide by the Rules of Professional Conduct.  The previous $10k offer to settle my claims will expire once suit is filed and double prior to beginning discovery."  Griffin Decl. Ex. 20.  Mr. Todd's August 4 email, then, appears to offer to withhold his objections to the Settlement in exchange for $10,000.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In sum, Mr. Todd's sole motivation in contacting Class Counsel and objecting to the Settlement appears motivated by extracting money from Class Counsel, rather than any legitimate concerns about the Settlement itself.  For these reasons, Mr. Todd's objections, (and those of the other objectors, as discussed in further detail herein) should be overruled.

### III.    PROCEDURAL AND FACTUAL BACKGROUND

**A.    Description of the Litigation**

For a history of the litigation, Plaintiffs respectfully refer the Court to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Dkt. 73, Sections II.A., B, and the Declaration of Mark A. Griffin in Support of Plaintiffs' Motion for Award of Attorneys' Fees and Costs and Participation Awards to the Class Representatives, ¶¶ 4-8 (Dkt. No. 94).

**B.    Overview of the Settlement Terms**

The parties believe that the final terms of the settlement are fair, adequate and reasonable.

**1.    The Settlement Class**

The proposed Settlement Class is "All Persons, excluding Settlement Subclass members, located in the United States who were registered with or subscribed to www.classmates.com at any time between October 30, 2004 and the present."

The Settlement Subclass is defined as:

> All Persons located in the United States who registered with or subscribed to www.classmates.com and between January 1, 2007 and the present paid for a Gold Membership subscription to www.classmates.com (and did not previously receive a refund of such payment) as a result of:
>
> i)      Upgrading to a Gold Membership through the process on Classmates.com of seeking to see who visited their Guestbook; or
>
> ii)     Upgrading to a Gold Membership after clicking on a link to Classmates.com in a Guestbook email, or Connections email that included a Guestbook subject line, and upgrading to a Gold Membership within the same session activated by clicking on that link or within the same day of clicking on that link; or
>
> iii)    Upgrading to a Gold Membership within the same day of receiving a

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Guestbook email or Connections email that included a Guestbook subject line.

**2.    Prospective Relief**

In consideration for the release set forth in the Settlement Agreement, Classmates agreed to provide effective prospective relief to the Class for a period of two years, by agreeing to be enjoined from the following:

- To the extent that Classmates continues to use the term "guestbook" in connection with the existing guestbook feature, it will not use this term on a stand-alone basis, but will instead call it "Classmates® Guestbook".  In addition, the Classmates® Guestbook webpage will contain a hyperlink title "What's This?" or some other language indicating an opportunity to learn more about the Classmates® Guestbook feature works, including how Classmates® Guestbook names are left behind (either manually when the other member's Classmates® Guestbook setting is on "quiet" mode or automatically when the other member's Classmates® Guestbook setting is on "normal" mode) and that, because members' profiles can be viewed by all members of Classmates.com, other members who have left their names behind may not be people that the visited member knows or who belong to one of that member's affiliations.

- In either the Terms of Service or Privacy Policy, the Classmates® Guestbook feature will be clearly explained (in the same way as it is explained in the pop-up window in #1 above and to explain how members can manage their email subscriptions.

- Classmates will improve the Help area of the website to explain the Classmates® Guestbook feature in the same way that it is described in #1 above and to explain how members can manage their email subscriptions.

- Classmates will revise its Privacy Policy to clearly explain that certain emails Classmates sends to its members contain links that check for existing Classmates cookies on a member's computer and, if no authentication cookie is found, will set such a cookie so that the member can be logged into the site without the need to enter a password.  The policy will further explain, therefore, that members should not forward the emails they receive from Classmates to anyone else and should keep them secure.  The Privacy Policy will also fully explain what a "cookie" is and how cookies are used in the internet context.  The policy will explain that by visiting Classmates.com and not opting out of the use of cookies (by affirmatively clicking a link stating that the computer should not remember the user), the user consents to the addition of a "cookie" on the computer.

- In every email that Classmates sends that contains a cookie as described above, the footer will contain the following language: "TO PROTECT YOUR PRIVACY, DO NOT FORWARD THIS EMAIL TO ANYONE NOT AUTHORIZED BY YOU TO ACCESS YOUR CLASSMATES.COM PROFILE."  After that

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

8

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

statement, there will be a link that says "For more information, see our Privacy Policy", with "Privacy Policy" being a hyperlink that will take the member to the privacy Policy.

- On every member's profile page, there will be a link that says "not [name]?" or other similar language. When a member clicks that link, it will take the members to a page that states, "If you are not the person to whom the account you are currently logged into belongs, you may be in violation of Classmates.com's Privacy Policy and/or Terms of Service, and you may be violating the privacy rights of another individual. Classmates.com does not permit the unauthorized use of member profiles and may prosecute or assist in the prosecution of any unauthorized privacy violations." The member will also be given the opportunity to logout of the site, with the option to have the member's password remembered or not remembered on that computer, along with a warning that the member should choose the option to not have the member's password remembered if the computer is publicly available or shared with others.

### 3. *Cy Pres* Relief

As described in more detail below, the monetary claims of Class members are relatively small and the response rate by the Class to the $3.00 monetary payments was lower than expected. Accordingly, prompted by the Court's suggestion to respond to the low claims rate, the parties renegotiated a portion of the settlement and agreed to the payment of $500,000 to a charity designated by the Court. With this motion, Plaintiffs are submitting a list and description of proposed charities for the Court to apportion the $500,000 *cy pres*. Griffin Decl. ¶¶ 2-12, Exs. 1-11. Thus, in addition to the injunctive relief and monetary relief, additional substantial benefits will result from this settlement.

### 4. Monetary Settlement

One of the most pragmatic problems in negotiation of a settlement of this case was the fact that there was a very large Class, and yet, each Class member sustained relatively small monetary damages. If every Class member who did not renew their paid membership were actually deceived into purchasing the paid membership, the damages would range between $9.95 and $39.00 (the cost of the membership).[10] Accordingly, based upon the issues involved in this case (including questions of liability and certification), a settlement of $3.00 per person (in addition to

---

[10] There were also some statutory damages that might have been available but, as discussed below, Defendants would have vigorously contested the appropriateness and availability of those statutory damages, and Class Counsel considered the risk of obtaining full payments of those statutory damages when negotiating the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (No. CV09-45RAJ)

9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Classmates' agreement to injunctive relief that would prospectively curtail the subject practices) was fair and reasonable.

Pursuant to the settlement, Defendants agreed to establish a fund of $9.5 million for the approximately 3.1 million members of the settlement Subclass to pay the $3 cash portion of the settlement. The claims administration process was entirely electronic. However, a small number of Class members ultimately took advantage of the monetary benefits that were made available to them.[11]

### 5. Participation Awards to Plaintiffs and Attorneys' Fees

To recognize the time and effort the named Plaintiffs expended for the benefit of the Class, the Settlement Agreement contemplates participation awards to the named Plaintiffs in the amount of $2,500 each. These awards are not to be deducted from the maximum total aggregation award to the Class. These awards are to be separately made in recognition of each Plaintiff's participation in this litigation.

Finally, pursuant to the Settlement, Class Counsel is seeking $1,050,000, plus $21,679.07 in costs – all to be paid by Defendants. The requested attorneys' fee and costs will not come out of the cash component of the Settlement available to the Class. Class Counsel's fee request constitutes a "negative" .85 multiplier (and does not include recent and prospective time incurred in connection with the final approval of this Settlement or ongoing claims administration time).

### 6. Notice and Claims Administration

Settlement Administrator, the Garden City Group, Inc. ("GCG"), sent the Court-ordered Class Notice by electronic mail to all members of the settlement Class or settlement Subclass as instructed and approved by the Court. Each Notice was embedded with a link to the Settlement Class Claim Form or Settlement Subclass Claim Form, as appropriate. Keough Decl. ¶¶ 1-3.

---

[11]    Additionally, all members of the Settlement Class (comprised of both paying and non-paying subscribers totaling approximately 56 million members) have the option of selecting a $2.00 credit toward future purchase or renewal of a Classmates Gold Membership. As of November 21, 2010, the Settlement Administrator had received a total of 50,017 Claim Forms. 17,412 settlement Subclass members requested to receive a cash payment of $3. Keough Decl. ¶14. The settlement Subclass members entitled to receive the $3 cash payment had the alternative option of receiving the $2 credit rather than $3 cash, and 1,862 of them elected the credit over cash. Joint Statement Regarding Settlement, Dkt. 88 at 4.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    GCG sent the Email Notice to 56,860,107 email addresses in the files provided by Classmates.  *Id.*

2    ¶ 4.

3          Over 90% of these email addresses were delivered.  GCG closely monitored the failed

4    email delivery attempts throughout the Email Notice dissemination, and attempted as many as

5    three times to deliver to an email address.  Ultimately, however, GCG could not deliver 5,075,679

6    Email Notices.  GCG could not deliver 2,610,912 Email Notices because the email address no

7    longer existed, the email account was closed, or the email address had a bad domain name or

8    address error (collectively, "Hard Bounces").  The remaining 2,464,767 emails were not delivered

9    after three delivery attempts due to reasons such as inactive or disabled accounts, full recipient

10   mailboxes, recipient server network and technical auto-replies, or the recipient server was too

11   busy or unable to deliver (collectively, "Soft Bounces").  *Id.* ¶ 7.

12         In response to the Court's September 24, 2010 Minute Order, the Parties instructed GCG

13   to provide a Supplemental Email Notice to the Class  *Id.* ¶ 8.  GCG commenced sending the

14   Supplemental Email Notice on September 28, 2010, and completed all Supplemental Email

15   Notice by October 22, 2010.  GCG attempted to send the Supplemental Email Notice to

16   54,155,963 email addresses.  There were a total of 52,183,746 emails that were not returned

17   undeliverable or "bounced," which reflects a delivery success rate of over 96%.  Again, GCG

18   closely monitored failed email delivery attempts and attempted as many as three times to deliver

19   to an email address.  For the Supplemental Email Notice campaign, GCG could not deliver

20   1,972,217 emails.  Of these, GCG could not deliver 859,548 emails due to Hard Bounces, and

21   after at least three delivery attempts, 1,112,669 emails were not delivered due to Soft Bounces.

22   *Id.* ¶ 10.

23         The Settlement Agreement and Preliminary Approval Order directed that GCG cause the

24   Publication Notice to run once in *The Wall Street Journal.*  GCG confirms that the Publication

25   Notice ran in *The Wall Street Journal* on June 4, 2010.  A Supplemental Publication Notice also

26   ran in *The Wall Street Journal* on October 13, 2010.  *Id.* ¶ 11.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    Pursuant to the Preliminary Approval Order, GCG established a Settlement Website

2 dedicated exclusively to this Settlement on June 2, 2010, http://www.cmemailsettlement.com.

3 The website provides additional information to the Settlement Class Members and Subclass

4 Members, including: (1) the Email and Supplemental Email Notices; (2) the full text of the

5 Settlement Agreement; (3) the Preliminary Approval Order; (4) answers to frequently asked

6 questions; (5) contact information for the Settlement Administrator; and (6) important dates and

7 deadlines.  The website address was provided in the Email and Supplemental Email Notices and

8 the Publication and Supplemental Publication Notices.  GCG continues to maintain and update the

9 website.  As of November 21, 2010, there have been 154,757 visits to the site.  *Id.* ¶ 12.

10    Pursuant to the terms of the Preliminary Approval Order, GCG established and is

11 maintaining two email addresses dedicated to this Settlement:

12 claimforms@cmemailsettlement.com and exclusions@cmemailsettlement.com to provide email

13 addresses to which Class Members could send Claim Form requests and Claim Form submissions

14 and questions, and to which requests for exclusion could be delivered to the Settlement

15 Administrator by electronic mail.  *Id.* ¶ 13.

16    To participate in the Settlement, Settlement Class Members and Settlement Subclass

17 Members were required to submit a valid Claim Form by August 17, 2010.  Settlement Class

18 Members and Settlement Subclass Members had the option of submitting their claim either online,

19 to the dedicated email address, or by returning a hard copy Claim Form via U.S. mail.  As of

20 November 21, 2010, GCG has received a total of 50,017 Claim Forms.  17,412 Settlement

21 Subclass Members requested to receive a cash payment of $3.00.  In addition, as of December 8,

22 2010, GCG has received 8,315 Requests for Exclusion and has received or been provided by

23 Counsel with correspondence from 142 Class members that have been classified by GCG as

24 objections. 16 objections received constituted objections to the overall settlement, 81 objections

25 received constituted objections to attorneys' fees, and 45 objections received constituted general

26 objections to the Settlement and the attorneys' fees.  *Id.* ¶ 14.  At Class Counsel's urging, some of

PLAINTIFFS' MOTION FOR FINAL          12
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

13

1    these opt-outs were considered to be timely by GCG despite being received in response to the

2    Supplemental Notice.  *See* Griffin Decl. ¶ 19 and Ex. 18 thereto.

3                            **IV.    LEGAL ANALYSIS**

4          **A.    The Settlement Should Be Approved as Fair, Reasonable and Adequate.**

5          The Settlement agreement reached by the parties was the product of negotiations

6    between able and experienced attorneys on both sides.  The Ninth Circuit has a "strong

7    judicial policy that favors settlement, particularly where complex class action litigation is

8    concerned."  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).

9    Federal Rule of Civil Procedure 23(e) dictates that a court should consider the fairness,

10   adequacy and reasonableness of a settlement by balancing a number of factors, which

11   include: (1) the strength of the plaintiffs' case; (2) the risk, expense, and complexity and

12   likely duration of further litigation; (3) the risk of maintaining class action status throughout

13   the trial; (4) the presence of any governmental participant; (5) the amount offered in

14   settlement; (6) the extent of discovery completed and the stage of the proceedings; (7) the

15   experience and views of counsel; and (8) the reaction of the class members to the proposed

16   settlement.  *Churchill Vill., L.L.C. v. Gen Elec.*, 361 F.3d 556, 575 (9th Cir. 2004).  The

17   Court may also consider the absence of collusion in the settlement process.  *Id.* at 576.  This

18   list is not exclusive and different factors may predominate in difference factual contexts.

19   *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370 (9th Cir. 1993).

20         When reviewing these factors, the settlement is entitled to a presumption of fairness

21   because it was negotiated at arm's length by experienced counsel after significant discovery, a

22   mediation, and three months of intense settlement discussions.  *See Rodriguez v. W. Publ'g Corp.*,

23   563 F.3d 948, 961 (9th Cir. 2009).  A proposed settlement shall not "be judged against a

24   hypothetical or speculative measure of what might have been achieved by the negotiators."

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

14

1  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

2         Here, the parties reached a settlement only after conducting extensive discovery and

3  motion practice for two years.  Settlement negotiations occurred at arm's length over three months

4  with the assistance of an experience mediator, the Hon. Steven Scott (Ret.).  Significantly, the

5  settlement agreement was not reached until Classmates agreed to commit itself to significant

6  changes in its marketing and business practices as well as to a commitment to make available to

7  the Class a significant sum of money.

8                 **1.        The Strength of Plaintiffs' Case**

9         Classmates' answer included seventeen affirmative defenses, including challenges to the

10  constitutionality of CEMA.  Answer at 10-11 (Dkt. No. 62).  Classmates also planned to oppose

11  class certification on various grounds.  *Id.*  Given the novel and difficult questions of law and fact

12  involved, it was not certain whether Plaintiffs would be able to certify any class or survive all

13  motions attacking the case.  Even if that occurred, a favorable jury verdict was not guaranteed.

14         Significant obstacles existed to certifying a class and proving liability.  There was a risk

15  that the Court would agree with any one of Classmates' many affirmative defenses.  The Court

16  might also have ruled that Classmates' conduct was not deceptive or misleading or that the issues

17  in this case were unsuitable for class-wide treatment.  Furthermore, even if a class were certified,

18  Plaintiffs might not prevail on liability, as the Court might have found that Defendants were

19  sufficiently insulated from liability because they provided adequate notice or disclosures within

     the marketing materials and sign-up procedure.

20         Damages were also uncertain, as Classmates might have argued that Plaintiffs could not

21  show on a class-wide basis that individual plaintiffs relied on the allegedly deceptive marketing

22  when purchasing a membership or visiting the site.  Given the response by some Class members

23  to the Settlement, it is quite possible that Defendants could have obtained declarations from some

24  Class members stating that they were not harmed by Classmates.

25         If Plaintiffs could not establish damages with the requisite certainty, their claims would

26  fail and they would be forced to simply walk away from the litigation without securing any relief

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

14

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

for the Class.  This would include, among other things, the injunctive relief provided in the Settlement that requires Classmates to alter its practices on a prospective basis to prevent future harm to current and future Classmates subscribers.  Thus, the Settlement not only eliminates the risks associated with continued litigation, but it also guarantees full prospective injunctive relief that represents a fundamental change in Classmates' business model.

### 2. The Risk, Expense, Complexity and Likely Duration of Further Litigation

The risk, expense, complexity and duration of continued litigation also favors settlement. The Court should consider "the probable costs, in both time and money, of continued litigation." *In Re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002).  In most cases, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  Indeed, the Ninth Circuit has noted that settlement is encouraged in class actions where possible: "there is an overriding public interest in settling and quieting litigation … particularly… in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

If not for this settlement, the case would likely continue to class certification, further discovery disputes, summary judgment and trial – and probable appeal.  While counsel for Plaintiffs believe they have brought only meritorious claims and had a reasonable chance of prevailing, the incursion of additional and very substantial expenses due to extensive and technical discovery, retention of experts, summary judgment and trial would carve out a significant portion of any eventual jury verdict or post-trial recovery.  Additionally, the expense and uncertainty of collection of a judgment further reduces the value of pursuing this matter through trial when weighed against the outcome for the Class provided by the Settlement.

Most significantly, if the settlement were not reached, Classmates would continue to engage in the alleged deceptive practices throughout the likely lengthy duration of this litigation. By agreeing to a settlement now (with the injunctive relief), the alleged improper practices will

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT (No. CV09-45RAJ)

15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

16

end with final approval – and not continue as long as the litigation endures.

Defendants are represented by a competent and nationally-recognized law firm in DLA Piper LLP, and its lead counsel Stellman Keehnel has been recognized as a top lawyer in Washington State by various publications.  Defense counsel was prepared to mount a vigorous and thorough defense.

Settlement of the litigation at this time under the proposed terms will ensure immediate and ongoing benefits from Classmates' marketing and business reforms, without any additional expense incurred on behalf of the Class.  Accordingly, final approval of the settlement is warranted.  *Nat'l Rural*, 221 F.R.D. at 527.

### 3.    The Risk of Maintaining Class Action Status Throughout Trial

As part of the Settlement, the parties have agreed to stipulate to certification of the settlement Class and Subclass.  If the Settlement is not approved, however, Plaintiffs anticipate any certification effort would be vigorously and highly contested. Classmates already expressed to Plaintiffs that they believe they have meritorious potential defenses to class certification and they dispute whether this action would be manageable for trial.  Plaintiffs' case centered on Classmates' marketing practices which deceived individuals into subscribing to Classmates services.  Class Counsel believe that while Plaintiffs presented a strong case against Classmates, the certification phase of litigation posed substantial risks.  Classmates was likely to argue that maintenance of a nationwide class was inappropriate because, among other reasons, Plaintiffs are required to, and cannot, prove reliance by individual class members.

Among the many risks that this litigation faced, perhaps the most significant risk was that class certification would be denied because the court believed that aggregating the statutory damages in this case over the massive number of violations of the statute at issue would expose the defendant to "annihilating punishment unrelated to any damage."  *See Medrano v. Modern Parking, Inc.*, 2007 U.S. Dist. LEXIS 82024, at *10 (C.D. Cal. Sept 17, 2007) (denying class certification for failing Rule 23(b)(3)'s "superiority" requirement because the "defendants' liability would be enormous and completely out of proportion to any harm suffered by the

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

17

plaintiff" and "has little  relation to the harm actually suffered by the class.") (citing sixteen prior cases reaching the same conclusion, almost all within the Ninth Circuit) (emphasis in original). [12]

It is also expected that Defendants will point to the recent California Supreme Court decision in *Kleffman v. Vonage Holdings Corp.*, 49 Cal.3d 334, 232 P.3d 625 (2010), which was decided in response to a request from the Ninth Circuit Court of Appeals to rule on whether marketing emails from an internet company, Vonage, containing alleged deceptive or misleading information violated a comparable California statute.

Even if the Class remained certified throughout the trial and Plaintiffs prevailed, Classmates would likely challenge class certification on appeal, and there is significant risk that any award could be reversed or overturned on appeal.  Under such a scenario, the Class would recover nothing.  Thus, this factor also weighs in favor of approving the settlement

### 4.     The Presence of a Governmental Participant

While there has been no direct governmental participation in this lawsuit, the risk of administrative regulation or attorney general involvement in large, mass scale litigation such as this is ever present.  In response to Defendants' CAFA Notice, several state attorneys general inquired with Class Counsel about the Settlement beginning in March 2010. Through numerous written and oral exchanges between March and July 2010, Class Counsel responded to these inquiries and explained the details of the Settlement to a variety of attorneys general.  No state attorney general has filed an objection to the Settlement.  *See* Declaration of Amy Williams-Derry, and Exhibits thereto, filed herewith (describing attorneys' general notice and review of the Settlement).

---

[12]     Plaintiffs note that they believe many of these cases were wrongly decided or are explicitly limited to the particular statute at issue which is not any statute at issue here, and should therefore not be applied to the class claims here.  However, it cannot be denied that these authorities represent considerable risk to this litigation.  *See generally Wilcox v. Commerce Board of Kansas City*, 474 F.2d 336(10th Cir. 1973) (noting severe split of authority among district courts whether a threat of "annihilating punishment unrelated to any damage" was a proper matter for consideration in certifying a class and declining to announce any categorical rule); *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) (finding Congressional intent did not allow consideration of the large aggregate damages that would result from class certification in an action under the Fair Credit and Accurate Credit Transactions Act ("FACTA"), but explicitly declining to issue any opinion as to whether such consideration is proper as to any other statute nor whether a showing of "'ruinous liability' would warrant denial of class certification in a FACTA or similar action.")

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

18

5.      **The Amount Offered in Settlement**

In considering the amount offered in settlement, the Court may also look at the difficulties Plaintiffs would face if litigation proceeds. *In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Individual damages suffered by each Class member are small, arguably as little as a percentage of a subscription to the website, which could have been as low as $9.95. However, the total case value and number of Class members can be significantly reduced if Classmates prevails on its argument that each Class member's decision to upgrade from a non-paid membership to a paid membership is unique and subject to evidence of intent and/or reliance.

In light of the low individual damages to class members, which potentially exceed the administrative costs of providing monetary relief, the settlement's focus on prospective relief represents a fair and reasonable outcome to all Class members.  In addition, the significant aggregate monetary fund made available to the Subclass ($9.5 million) and the *cy pres* relief ($500,000) represents a fair settlement compromise between the parties.

In light of the difficulties Plaintiffs would face if litigation proceeded, and in addition to the substantial and valuable corporate reform obtained for benefit of the Class, the consideration offered here is clearly adequate and fair. "[S]ettlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *In Re Warfarin*, 212 F.R.D. at 257 (finding settlement amount representing 33% of maximum possible recovery was well within a reasonable range when compared with recovery percentages in other class action settlements); *see also Officers for Justice*, 688 F.2d at 624 ("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes'") (citation omitted).

6.      **The Extent of Discovery Completed and the State of the Proceedings**

The stage of the proceedings and the amount of discovery completed is another factor which courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *Officers for Justice*, 688 F.2d at 625.  The Ninth Circuit has held that "in the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In Re Mego*,

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

213 F.3d at 459.  Here, both the knowledge of Class Counsel and the proceedings themselves have reached a stage where they could make an intelligent evaluation of the litigation risks and propriety of settlement.  Plaintiffs pursued discovery through extensive formal and informal procedures.  Class Counsel have been informally contacted by numerous potential Class members, many of whom were interviewed regarding their experience with Classmates, as a part of Class Counsel's ongoing factual investigation.  Plaintiffs also pursued significant formal discovery, including the exchange of initial disclosures, service of several sets of interrogatories and document requests to the parties involved in the litigation.  Classmates produced, and Plaintiffs reviewed and analyzed 35,000 pages of documents.   Plaintiffs also consulted with an expert in linguistics when drafting the amended complaint and negotiating the Settlement.

Plaintiffs are, at this stage, extremely knowledgeable about the claims, defenses, facts and law applicable to this case and therefore they have sufficient information to properly evaluate the value and mutual benefit of the settlement agreement.  Class counsel has managed to settle this litigation on terms favorable to the Class without the substantial risk, expense, uncertainty and delay of continued litigation, trial and appeal.

### 7.     The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are closely acquainted with the facts of the underlying litigation." *Nat'l Rural*, 221 F.R.D. at 528.  Here, experienced and capable Class Counsel who are actively involved in complex federal civil litigation have weighed all of the above factors and have concluded that the settlement is a favorable result which is in the best interests of the Class.  Whereas here, the settlement is the product of serious, informed and non-collusive negotiations, "the trial judge . . . should be hesitant to substitute its own judgment for that of counsel." *Nat'l Rural*, 221 F.R.D. at 528; *see also Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) ("The recommendation of experienced counsel carries significant weight in the court's determination of the reasonableness of the settlement."); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("The fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

19

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

weight.")  *In re Phenylpropanolamine (PPA) Products Liab. Litig.*, 227 F.R.D. 553, 567 (W.D. Wash. 2004)

### 8.      The Reaction of Class Members to the Proposed Settlement

Class members were given notice of the settlement (i) via email; (ii) via a website regarding the settlement; and (iii) by published notice placed in *The Wall Street Journal*.  The time period for objecting to the settlement or requesting exclusion from the settlement has expired.  Plaintiffs have complied with all notice, objection and opt-out procedures in accordance with the terms of the settlement agreement and this Court's Preliminary Approval order.  (Dkt. No. 76) and September 24, 2010 Minute Order (Dkt. No. 90).  A list of all persons who have excluded themselves from the Class, including each person's name, city and state of residence, to the extent known is attached as an exhibit to the Keough Decl and to the proposed final approval order.  8,315 Class members requested exclusion from the Class and 142 class members filed objections to the settlement.  Keough Decl. ¶ 14.

Given the small amount of money at stake on a per person basis, Class Counsel recognizes that the miniscule percentage of Class members who have lodged objections is not necessarily indicative of some Class support for the settlement. *Zaldivar v. T-Mobile USA, Inc.*, *supra*; *but see Wilson v. Airborne, Inc.*, No. EDCV 07-770, 2008 WL 3854963, at *7 (C.D. Cal. Aug. 13, 2008) (230 opt-outs and 17 objections out of a class of 419,606 weighs in favor of approval); *Nat'l Rural*, 221 F.R.D. at 529 ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *15-*16 (N.D. Cal. Jan. 26, 2007) (approving settlement with opt-out rate of approximately 2%).

Class member objections generally fall into three categories, those where members wish not to be included in a lawsuit, those where members object to the attorney fee amount, and those that object to the relief afforded to Class members.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

20

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

### a.    All Fee Based Objections Should Be Overruled

In total, approximately 126 objectors complain that Class Counsel should not get the full fee requested under the settlement.[13]  As an initial matter, the Court should not consider the 18 objections by individuals who have opted out of the Settlement.  Since Class Members who opt-out do not have standing to object to the Settlement, Plaintiffs do not specifically address the objections made by these individuals.  However, since their 18 objections are largely identical to the other general objections that have been lodged, their exclusion will have no bearing on the Court's consideration of this motion.

It is black letter law that a non-party to settlement only has standing to object to that settlement if it can show "that it will sustain some formal legal prejudice as a result of the settlement."  *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987).  While this principal is most commonly applied to bar objections by non-settling defendants on the basis of their lack of standing, this same principal has been applied to plaintiffs who have opted out of the settlement, *In re Integra Realty Res., Inc.*, 262 F.3d 1089, 1102-03 (10th Cir. 2001), and to parties with claims against the settling defendants who were explicitly excluded from the settlement class.  *Kirkorian v. Borelli*, 695 F. Supp. 446, 454 (N.D. Cal. 1988) (parties with claims against the settling defendants whose claims were "explicitly *not* included in the settlement class" lacked standing to object to settlement) (emphasis in original).  *See also, generally*, *Transamerican Refining Corp. v. Dravo Corp.*, 952 F.2d 898, 900 (5th Cir. 1992) (Non-parties to a settlement "generally have no standing to complain about a settlement, since they are not members of the settling class."); *Integra*, 262 F.3d at 1103 (asserting that a settlement merely placed a party who opted out of the settlement at a "tactical disadvantage" in its continuing litigation against the settling defendants is inadequate to confer standing to object to settlement).[14]

---

[13]    "81 objections received constitute objections to attorneys' fees, and 45 objections received constitute general objections to the Settlement and attorneys' fees."  Keough Decl. ¶ 14.

[14]    By letter dated December 3, 2010, Class Counsel confirmed the Defendants would accept as timely requests for exclusion from eighteen Class members who objected and also requested an opportunity to be excluded from the Class.  Griffin Decl. ¶ 19, Ex. 18.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

21

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

In response to the initial Notice, twenty-seven Class members (Baswell, Berman, Bie, Buck, Carter, Cermak, Danforth, Delafrange, Doyle, Hughes, Humphries, Karassik, Kempf, Klausner, Langone, Markuson, Masters, McGarry, L. McMillin, Ruthven, Schrader, Silverberg, Spencer, Todd, Vasquez and Westra) objected to Class Counsel being awarded $1.3 million in attorney's fees (Dkt. Nos. 79, 81, 84).   Subsequently, the Parties amended the Settlement Agreement to add a $500,000 *cy pres* payment, reduce the attorney's fee request to $1,050,000, and provide the Class Members another opportunity to object to the fee request.   Only two of these class members (Langone and Markuson) objected to the reduced amount of fees being sought as disclosed in the Supplemental Notice.   Griffin Decl. ¶ 22, Exs. 21 & 22.

Virtually all of the objectors have myopically concentrated on the monetary relief portion of the settlement, and have failed to recognize and consider the injunctive relief – which is the primary relief obtained as a result of this settlement.   Indeed, the fee objections of Abbott, Lewis, Markuson, Schaeffler, Splinter, Coco, Frette, Markuson, Sorokwasz, Perryman, Childs, Rundus, Gottfried, Frank, Levey, Higgins, Alban, Hodak, Huff, Hertz, Blackman, Becker, Brock, and Morthland do not make any mention of the injunctive relief obtained by this settlement – they just posit that the fee is large and are unhappy with the settlement's monetary benefits.

Mr. Fontana stated that the attorneys should get a fee based upon the hourly rate, apparently without knowledge of the fact that Class Counsel is seeking a fee based upon an hourly rate – reduced by a negative multiplier of 0.85.   Mr. Glascow thought the hourly rates were too high, but provided no substantive analysis notwithstanding the detailed submissions provided by Class Counsel in support of the fee request.

Mr. Flanagan believes that the fees should be capped at a specific percentage of the class action settlement award, without reference to the injunctive relief.   Mr. Harrison concentrates his attack solely on the "coupon" settlement, without any recognition or comments on the injunctive relief provided.   Mr. Galbraith thought that Classmates is engaging in an internet scam, but failed to recognize the injunctive relief that addresses his concerns.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

23

Objectors Lewis, Luther, Gettler, Johnson, Campis, Lacaster, Manchester, Toohey, Dyer, Klem, Stokes, Clayton, Smith, Lundy, Sutter, Vera, Colvin, Torrey, Splinter, Baird, Clark, Bretthauer, Adams, Willis, Rutenbar, Freer, Tobey, Dadez, Moriconi, Veilleux, Gamboa, Higgins, Karnan, Danforth, Gilman, Wheeler, Hamilton, Trabucco, Arcuri, Isaac, Westra, Ballalatak, Glover, Woodhouse, McFarland, White, Wilson, Malmskog, Cook, Sawyer, Wampler, Brown, Holder, Wittig, DeBurr, Simpson, Ramos, Black, Porter, Heyden and DuPlechain all object to the fee without providing any substantive reasons for their objections (*i.e.*, simply stating "I object to the fee request" or words to that effect) and many of them also state they do not want to be part of the lawsuit.

Ms. Buses objects because she believes the fee request would place a "very big hardship on my family." Objectors Hanselman, Bosserman, Divodi, ghsesdzc@bellsouth.net,[15] Liebenberg, McLenira, Burns, Rhodes and Furtunato similarly say that they do not want to be liable for fees. Mr. Giannola expressed concerns about being part of a Vietnam Veteran's class. Ms. Osterholhoff stated that "[t]he golden postcard I received only stated if I had bought a lawnmower between certain dates – which I had" and is opposed to the fee. Ms. Acolla wants no part of this lawsuit and has no objection to the fee if it does not directly affect her. Ms. Oliver wants the court to scrutinize the fees, based upon her opinion (among other reasons) that attorneys should dictate as fast as secretaries type. Objector Dakis never registered or subscribed and wants "off the fee request." Objector Enclu (who professes to be Her Majesty Queen of England) claims that because defendant brought the lawsuit, Class Counsel should not get fees.

Objector Langone contends that there was block billing and, on that basis, the fees should be reduced. Langone acknowledges that he has not fully reviewed the comprehensive billing summaries provided by Class Counsel, but nonetheless attempts to take pot-shots at some of the billing entries. Langone categorically states that Class Counsel engaged in "block billing," attacking the time spent by two attorneys who did multiple tasks in connection with the litigation. Langone's proposal that Class Counsel itemize every particular task and assign a time allotment

---

[15]    This class member did not provide a name, only an email address.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

24

completely ignores the realities of litigating a major case.  Langone does not contend that any

motion or work was unnecessary (except for limited time determining lead counsel), or that the

attorneys inefficiently apportioned work between themselves.  Instead, Langone grossly

oversimplifies the extensive billing records submitted and states that there should be a full

reduction because each minute was not separately accounted for.  The overall question is whether

the time entries are sufficiently detailed for the Court to make a determination of reasonableness.

These are extremely detailed time entries that are largely related to the same litigation tasks, all of

which document the large amount of work that was done in prosecution of this case.  Langone's

blanket "block billing" attack is without merit.

Langone also claims that additional details were required when an entry states "legal

research," since the entry should state in detail the actual research that was conducted.  Such

request for detail goes far beyond what is required to support an attorney fee request, and in any

event would delve into areas of privileged attorney work product.  Langone's claim that this is a

"coupon settlement" ignores the injunctive relief that was made available to the Class, as well as

the monetary relief portion of the Settlement.  Indeed, Langone's conclusion that Class Counsel

has only performed $75,000.00 worth of work is indicative of his bias and detachment from the

reality of class action practice.[16]

Of course, the denial of any fee to Class Counsel would be contrary to the well-established

common fund doctrine which allows a court to distribute attorney's fees from the common fund

that is created through the litigation.  *See Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161, 164

(1939) (holding that the authority to award fees from the common fund stems from the "historic

equity jurisdiction of the federal courts").  The doctrine is grounded in the principles of quantum

meruit and unjust enrichment.  The doctrine prevents unjust enrichment of absent members of the

Class at the expense of the attorneys.  It is meant to compensate the attorneys in proportion to the

benefit they have obtained for the entire class, not just the representative members with whom

---

[16]     The Court is respectfully referred to Plaintiffs' Motion for Award of Attorneys' Fees and Costs and
Participation Awards to the Class Representatives (Dkt. No. 93), which provides full arguments in support of
the fee application.  For space constraints and since these issues were fully addressed in the prior motion, Class
Counsel will not repeat all of those arguments here.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

24

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

they have contracted.  *See Lindy Bros. Builders, Inc. of Phila. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 165 (3d Cir. 1973) (attorney entitled to fees because he "conferred a benefit on all the class members, that one or more of whom [] agreed by contract to pay for the benefit the attorney conferred upon him, and that the remaining class members should pay what the court determines to be the reasonable value of the services benefiting them").  Moreover, the doctrine prevents the unjust enrichment of absent class members at the expense of the class representatives.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (the doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense"); *Lindy*, 487 F.2d at 165 (class representative can claim "that by instituting the suit he has performed a service benefiting other class members.  The reasonable value of that service is measured by the expenses incurred by the plaintiff on behalf of the class.")  In the absence of the doctrine, only the present members (who hired the attorneys) would have to pay attorney's fees, while all the members (both absent and present) would enjoy the benefits of the settlement.  The members who did not hire the attorneys would be unjustly enriched at the expense of those who did.

Further, and no less significant, the fees requested are fair and reasonable, especially when consideration is provided to the injunctive relief portion of the settlement.  As this court recognized in *Zaldivar v. T-Mobile USA, Inc.*:

> While almost no one would sue to recover less than the cost of a cup of coffee, the court also expects that almost no one would be comfortable with the notion of a company making millions by unfairly charging millions of its customers a few extra pennies. Currently, the class action is the most widely used solution to this dilemma. A few people harmed by the practice are permitted to stand in for the thousands or millions harmed, and the company is forced to answer for its actions. The people who stand in for class members . . . cannot do so without attorneys. . . .[B]ringing a class action is difficult work even for attorneys experienced in this area.  Anyone who believes, for example, that the attorneys in this action are receiving money for nothing is mistaken. . . . . No group of attorneys, however, could have achieved relief for class members without investing many, many hours working on their behalf. If attorneys are not compensated for their time, then they cannot be expected to work on class actions in the future.

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

25

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2010 WL 1611981, at *1 (citations omitted).

Like *Zaldivar*, the Court should approve the attorneys' fees and costs sought by Class Counsel. However, unlike *Zaldivar*, the amount being sought is less than the uncontested lodestar amount incurred by Class Counsel, constituting a negative .85 multiplier (and does not include recent and prospective time incurred in connection with the final approval of this settlement).

In the Ninth Circuit, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common-fund cases." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*"). The rationale for enhancing the lodestar figure derives in part from the established practice in the private legal market of rewarding attorneys who take contingency cases with the risk of non-payment by paying them "a premium over their normal hourly rates" when they win. *Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299. The Ninth Circuit has found that "[i]t is an abuse of discretion to fail to apply a risk multiplier, however, when: (1) attorneys take a case with the expectation that they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence that the case was risky." *Fischel v. Equitable Life Assurance Soc'y of the United States*, 307 F.3d 997, 1008 (9th Cir. 2002). Here, Class Counsel is not seeking a risk multiplier so the Court should find the requested amount to be reasonable given the results achieved in this case. Non-monetary benefits conferred by the litigation, like the substantial injunctive relief achieved in this case, can be considered by the Court in awarding fees. *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-97 (1970); *Vizcaino v. Microsoft Corp.*, 290 F.3d. 1043, 1049 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

No Class member has objected to the reimbursement of $21,679.07 in costs that were reasonably advanced by Class Counsel in pursuing this litigation. Pursuant to the Settlement Agreement and contrary to the misunderstanding of some Class members, Defendants will pay the amount of fees and costs awarded by the Court in additional to all of the other remedies provides

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

27

for in the Agreement.[17]

**b.**   **All Objections Based On the Adequacy of Relief Obtained Should Be Overruled.**

The Class members who prepared objections based on their assessment of the relief provided to Class members, either (1) have not considered the substantial risk and compromise that is inherent in any lawsuit and settlement; or (2) have ignored the injunctive relief portion of the settlement.  Many of the objections to the adequacy of relief provided by the settlement state that they were victims of Classmates' improper business practices and they believe something should be done about it.  Objectors like Galbraith and Neeley Jr. do not recognize that prospective injunctive relief obtained on behalf of the Class and Subclass will protect themselves and others from the guestbook related misconduct alleged in Plaintiffs' complaint.  The Holder objection requests that any settlement reached should pay Class members the full amount of their Classmates.com membership cost.  This request does not take into account the compromise that must be reached when settling a lawsuit.

While the monetary amount received for individual Class members in this case is small, the relief obtained by the prospective injunctive portion of the settlement was the driving force behind this lawsuit.  Other than those mentioned below, not a single Class member objected to the substance of the prospective injunctive relief portion of the settlement.  While individual members may be unsatisfied with the monetary amount received by this settlement, all Class members are benefited by the changes Classmates has agreed to make to their privacy policy and guestbook features.

Objectors Torrey and Colvin feel that this case, due to the small damages and issues, is a waste of the Court's time and resources.  One of the purposes of the class action mechanism is to address claims of bad conduct that would otherwise not be redressed because the cost to pursue them would overshadow any individual recovery obtained.  However, the class action mechanism

---

[17]      As noted above, some class members have expressed concern about paying Class Counsel attorneys' fees despite the fact that the Settlement Agreement and the Court Notice specifically said that they do not have to do so.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   is often the only method to resolve very small but very widespread claims, as is the case here.

2   *Accord Scott v. Cingular Wireless*, 161 P.3d 1000, 1005 (Wash. 2007).

3          In addition to his objection based upon the size of the fee award, Neeley Jr. also objects on

4   a myriad of other grounds.  Mostly incomprehensibly, Neeley Jr. claims that Classmates should be

5   subject to criminal penalties for wire fraud.  Neeley Jr. may in fact be correct, but the resolution

6   and settlement of this civil suit does not immunize defendants from criminal prosecution,

7   therefore Neeley Jr.'s concerns are improperly addressed at this hearing.  Neeley Jr. also believes

8   it is improper to approve this settlement without first certifying the Class.  However, this Court

9   has already preliminarily certified this matter, so Neeley Jr.'s objection is misplaced.  *See* Dkt. No.

10  76.  Contrary to Neeley Jr.'s representation, Plaintiffs do not represent any uncertified Class

11  members.

12

13         Attorney Charles D. Chalmers objects on behalf of two Class members, Tim Cermak and

14  David Klausner, who did not pay for a Gold membership.  When Mr. Chalmers refused to follow

15  the Court's *pro hac vice* requirements, the Court refused to allow him to appear as counsel but

16  ruled that the objection would be considered.  August 30, 2010 Order at 2, n.1 (Dkt. No. 83).  Mr.

17  Chalmers subsequently filed a petition for a writ of mandamus and a motion to stay with the Ninth

18  Circuit, both of which have been denied.  Griffin Decl. Ex. 23.  However, Plaintiffs have taken

19  this opportunity to respond to the substantive portions of his objection pursuant to this Court's

20  November 30, 2010 Order.  Dkt. No. 106.  Mr. Chalmers alleges that Plaintiffs have included the

21  non-Gold members for the sole purpose of increasing the attorney fee award.  This is

22  demonstrably false.  The non-Gold members, those who did not pay anything out of pocket, are

23  eligible to receive a rebate off a future Classmates subscription.  However, Class Counsel's fee

24  request is not based on any portion of this rebate.  Rather, the requested fee award is predicated

25

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

29

upon lodestar and primarily upon the injunctive relief obtained.

Also, non-Gold members will share equally in the prospective injunctive relief benefits obtained on behalf of the entire Class.  The settlement forces Classmates to revise its guestbook system so that the solicitation emails that Plaintiffs alleged are improper will cease to be sent to anyone, including non-Gold members.  This will not only reduce the annoyance of these improper emails but also stop any future chance of misleading these non-Gold members into signing up with Classmates based on false pretenses.

Chalmers also claims that the $2 rebate on services for non-paying members is an illusory benefit.  In making this argument he completely ignores the benefits conferred by the prospective injunctive relief portion of the settlement.  But even without the injunctive relief element of the settlement, the $2 rebate, while small in actual cash value, represents 20% of Classmates promotional sign up fee of $10, and 5% of the full gold membership fee of $40.

Next, Chalmers takes issue with the fact that to make a claim you must read the claim form.  The claim form outlines and describes the relief provided and the rights released. Therefore conditioning that members read the form maintains the integrity of the settlement and prevents future lawsuits based on claims that members did not read and do not know of the rights they were releasing.  Next, Chalmers alleges that the fee motion procedure was improper.  However, Class members were given notice, not once, but twice of the proposed attorneys fee and related provisions in the Class notice and supplemental Class notice required by this Court in October of 2010.  Notably, Chalmers did not object to the fee petition after detailed billing records were made available to all Class members via the Settlement website.

Chalmers also alleges that there is no relationship between the injunctive relief granted and the privacy allegations in the Complaint.  Once again, this is demonstrably false.  As shown in part II.B.2 above, the parties negotiated the prospective injunctive relief by focusing on two principles.  One was to alter the functionality of the guestbook feature to curtail generation of misleading solicitation emails, and the second was to redefine the privacy policy of the Classmates.com website to make the privacy terms more transparent and under the control of the

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

user.

Finally, the objection submitted by William Paparian lacks all merit.  Mr. Paparian references allegedly improper conduct of counsel Kabateck Brown Kellner in an unrelated California Class Action Settlement.  *Kyurkjian v. Axa S.A.*, No. 02-CV-01750 (C.D. Cal. Feb. 28, 2002).  Mr. Paparian has a personal vendetta which he is attempting to leverage by disrupting the business of Kabateck Brown Kellner, including by filing this objection.  All references, complaints and accusations related to any alleged misconduct on the part of Kabateck Brown Kellner have been denied or overturned by every court of body of review to which they have been presented.  See Decl. of Richard Kellner, submitted herewith.

As discussed herein, Class Counsel believes that the Settlement provides a significant benefit to the Class under all the circumstances and is fair, reasonable and adequate.  As a result, Class Counsel requests that all objections be overruled and that the Court grant final approval.

## 9.   Absence of Collusion in the Settlement Process

The Settlement was negotiated at length by experienced counsel on both sides, each with a comprehensive understanding of the strengths and weaknesses of each party's respective claims and defenses.  The parties' settlement negotiations took place over the course of three months.  The parties' extensive settlement negotiations involved the preparation of comprehensive mediation materials, consultation with experts and percipient witnesses, and the review of discovery responses and document production.

The parties mediated before the Hon. Steven Scott (Ret.), of Judicial Dispute Resolution, LLC, and expended numerous hours on emails, correspondence and phone conversations to negotiate the settlement terms, including an extensive drafting process to ensure both sides were satisfied with the details of the settlement agreement.

During the course of negotiations, the parties vigorously debated the merits of their respective claims and defenses.  Class Counsel zealously advanced the Class' positions and were fully prepared to continue to litigate rather than accept a settlement that was not fair, adequate and reasonable.  As a result of the considerable negotiations, the involvement of an experienced

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

31

1   mediator, and the results achieved, there can be no question that the settlement was the result of

2   hard fought, adversarial, arm's-length negotiations and "not the product of fraud or overreaching

3   by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d. at 625.

**B.     The Settlement Provided Adequate Notice to the Class.**

5        Pursuant to the Court's direction, notice was provided to Class members by three methods:

6   (i) the settlement Class and Subclass were notified via electronic mail; (ii) a dedicated website

7   was created which contains all the relevant information in plain language with sufficient detail

8   about the terms and operation of the settlement; and (iii) the Class was notified by publication in

9   *The Wall Street Journal* classified section.  *See* Keough Decl.

10       The federal rules require the "best notice that is practicable under the circumstances" and

11  it is to be directed "in a reasonable manner to all members who would be bound." Fed. R. Civ. P.

12  23(c) (2)(B); Fed. R. Civ. P. 23(e)(1)(B).  Notice by email is particularly appropriate here, where

13  the claims of the Class members arise from email communications regarding an internet site in the

14  first instance. *Browning v. Yahoo!, Inc.,* 2007 WL 4105971, at *4 (N.D. Cal. 2007).

15  Additionally, every Class member provided an e-mail address to Classmates in the process of

16  registering as a user.  Notice does not have to be perfect, just the best notice practicable under the

17  circumstances.  *Id.*  Also because there are an extraordinarily large number of Class members, by

18  providing notice by email the administrative costs of providing notice are protected from

19  swallowing up the settlement funds available for distribution to Class members.

20       The email contains all the required information and provided a website address to visit for

21  members to receive additional information.  The notice described the terms and operation of the

22  settlement, considerations causing the parties to conclude that settlement is fair and adequate and

23  details of the attorneys' fees and costs including the participation awards to the named

24  representatives.  Notice also provided the procedure for objecting to the settlement, making a

25  claim and/or opting out of the settlement.  Finally, Plaintiffs have enabled Class members to

26  return claim forms via email so that the costs to Class members to submit a claim are kept as low

    as possible which is a concern here where the individual financial award to each Class member is

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

32

1  relatively small.

2      In response to the Court's April 19, 2010 order, the parties also altered their original notice

3  plan to include the ability to opt-out of the settlement via electronic format.  Also, in response to

4  the discussion in this Court's August 20, 2010 order, Plaintiffs provided Class members with a

5  follow-up Supplemental Notice by email clarifying the objection and opt-out procedures in light

6  of new case law and submissions received by the court from Class members.

7      Notice of the settlement was also provided by publication in *The Wall Street Journal* on

8  June 4, 2010 (Original Notice) and October 13, 2010 (Supplemental Notice).  Notice by

9  publication is deemed effective enough to be used in both class action notice contexts and as a last

10  resort for service of a summons.  RCW §4.28.100.  This method of service was provided as a

11  redundant method of service to ensure that the maximum number of people that could practicably

12  be given notice were given notice.

**C.      The Settlement Class Should Be Finally Certified.**

13
**1.      The Settlement Class Satisfies the Prerequisites of Rule 23(a).**

14
15      In order to grant final certification of a settlement class, the requirements of Rule 23 must

16  generally be satisfied.  *See* Fed. R. Civ. P. 23; *Hanlon*, 150 F.3d at 1019.  As the Court

17  preliminarily found with respect to approval of the settlement Class and Subclass (Dkt. No. 76),

18  certification is warranted where, as here, it is demonstrated that the four prerequisites of Rule

19  23(a), numerosity, commonality, typicality, and adequacy of representation, and one of three

20  requirements of Rule 23(b), are satisfied.  Fed. R. Civ. P. 23.  The Court has great discretion in

21  determining whether to certify a settlement Class.

22      As set forth in the proposed settlement agreement, the parties seek to resolve claims

23  relating to Classmates members who were deceived into visiting or signing up with Defendant by

24  misleading marketing practices.  The proposed settlement Class and Subclass satisfy the requisite

25  elements of Rule 23(a) – numerosity, commonality, typicality and adequacy of representation for

26  the purposes of settlement. *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv.*

*Sec. Litig.*, 122 F.R.D. 251, 253 (C.D. Cal. 1988).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

32

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    The Class easily satisfies the ***numerosity*** requirement. Fed. R. Civ. P. 23(a)(1).  The

2    parties estimate that the number of Subclass members to be 3.1 million and the number of Class

3    members to be around 50 million.  Generally, where the proposed class "exceeds forty, and

4    particularly where class members number in excess of one hundred, the numerosity requirement

5    will generally be found to be met." *In re Itel Sec. Litig.*, 89 F.R.D. 104, 111 (N.D. Cal. 1981).

6    The Class also meets the ***commonality*** requirement for the purposes of settlement. Fed. R.

7    Civ. P. 23(a)(2). Commonality exists even when there is either a common legal issue stemming

8    from divergent factual predicates or a common nucleus of facts resulting in disparate legal

9    remedies within the class. *Hanlon*, 150 F.3d at 1019-20; *see also Amchem Prod., Inc. v. Windsor*,

10   521 U.S. 591, 625 (1997) ("[p]redominance is a test readily met in certain cases alleging

11   consumer . . . fraud"). Where a complaint alleges a "common course of conduct" that affects

12   members of the class in the same manner, common questions predominate. *Blackie v. Barrack*,

13   524 F.2d 891, 902-03 (9th Cir. 1975).  Here, Plaintiffs allege that Classmates induced individuals

14   to pay for membership by using deceptive marketing practices in violation of the CPA and

15   CEMA.  Numerous common questions of law and fact are presented by these allegations.

16   Moreover, a single common question is sufficient to satisfy this element of Rule 23.  *Haley v.*

17   *Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996).

18   Plaintiffs' claims are also ***typical*** of those of the Class because, like all members of the

19   Class, they arise from a single course of conduct and are based on the same legal theories. Fed. R.

20   Civ. P. 23(a)(3).  In *Hanlon*, the Ninth Circuit explained that "[u]nder [Rule 23's] permissive

21   standards, representative claims are 'typical' if they are reasonably co-extensive with those of

22   absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.  Here,

23   the same course of conduct gave rise to the proposed Class representatives' and proposed Class

24   members' claims.  Mr. Catapano and Mr. Michaels allege they paid for memberships as a result of

25   Classmates' deceptive practices.  All Class members were targets of Classmates' deceptive

26   practices and therefore Mr. Catapano and Mr. Michaels have claims typical of the Class because

they were subject to the same conduct as all Class and Subclass members.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Finally, the proposed Class representatives have "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy prong is satisfied where a "suit [is not] collusive and plaintiff's interests [are not] antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig*, 122 F.R.D. at 257. Here, the proposed settlement does not present any antagonism or disabling conflict between the proposed representative Plaintiffs and the absent Class members. See *Lubin v. Sybedon Corp*., 688 F. Supp. 1425, 1461 (S.D. Cal. 1988); *Weinberger v. Jackson*, 102 F.R.D. 839, 844-45 (N.D. Cal. 1984).  Each of the proposed Class representatives was subject to the same conduct as the members of the Class and Subclass they seek to represent.  Accordingly, Plaintiffs believe the interests of the Class will be fairly and adequately protected.  Fed. R. Civ. P. 23(a)(4). Additionally, Plaintiffs and the Settlement Class and Subclass are represented by experienced counsel who have handled numerous class action matters through settlement and trial and have no interests antagonistic to the Class.

>    **2.      The Settlement Class Satisfies the Requirements of Rule 23(b)(2).**

As explained above, an essential component of Plaintiffs' claims throughout this case, and of the final settlement of this matter, comprises injunctive relief designed to end the conduct complained of in the Complaint.  This injunctive relief addresses conduct by Defendants that applied generally to all members of the settlement Class and all members of the settlement Subclass; thus, certification of both the settlement Class and the settlement Subclass under FED. R. CIV. P. 23(b)(2) is appropriate.

>    **3.      The Settlement Class Satisfies the Requirements of Rule 23(b)(3).**

Because of the nature of Plaintiffs' claim and the uniformity of Classmates' conduct, this case satisfies the requirements of Rule 23(b)(3).  Predominance does not demand that the common issues be identical so long as there is an essential common factual link between all Class members and the Defendant for which the law provides a remedy.  *Yokoyama v. Midland Nat'l Life Ins. Co*,, 594 F.3d 1087, 1093 (9th Cir. 2010);  *see also Olson v. Tesoro Refining & Mktg. Co.*, No. C06-1311RSL, 2007 WL 2703053, at *6 (W.D. Wash. Sept. 12, 2007) (citing treatise).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
 SETTLEMENT (No. CV09-45RAJ)

34

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

A case like this, where the liability is determined by a common and uniform marketing practice is particularly appropriate for certification. *Mortimore v. FDIC*, 197 F.R.D. 432, 438 (W.D. Wash. 2000). Upon settlement of a class action, many of the concerns articulated in Rule 23(b)(3) do not apply because the negotiated resolution makes them inapplicable. *Amchem*, 521 U.S. at 621. However, neither party, nor any Class member has expressed any concerns that this Court is an undesirable forum for resolving the claims of the settlement Class and Subclass at issue in this case.

### D.       The Court Should Appoint Plaintiffs' Counsel as Class Counsel.

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

As identified in the firm CV's of Keller Rohrback L.L.P. and Kabateck Brown Kellner L.L.P. (Dkt. Nos. 94 and 95), Plaintiffs' counsel has significant experience in litigating class actions. Plaintiffs' counsel has diligently investigated, prosecuted, and settled this litigation, dedicated substantial resources to the investigation and prosecution of the claims at issue in the litigation, and demonstrated their knowledge of the claims and laws at issue. Because plaintiffs' counsel meets the criteria enumerated in Rule 23(g), this Court should appoint Keller Rohrback L.L.P. and Kabateck Brown Kellner L.L.P. as Class Counsel.[18]

---

[18] The Court has already preliminarily appointed these firms as Class Counsel (Dkt. No. 76).

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

35

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    For all the foregoing reasons, Plaintiffs respectfully request that the Court grant final

2    approval of the Settlement Agreement, award Class Counsel its fees and costs, and enter the

3    proposed orders submitted herewith.

4    DATED this 9th day of December, 2010.

5

6                                              **KELLER ROHRBACK L.L.P.**

7                                              By s/Mark A. Griffin
8                                              Mark A. Griffin, WSBA #16296
                                               Amy Williams-Derry, WSBA #28711
9                                              1201 Third Avenue, Suite 3200
                                               Seattle, WA 98101-3052
10                                             Tel: (206) 623-1900
11                                             Fax: (206) 623-3384
                                               mgriffin@kellerrohrback.com
12                                             awilliams-derry@kellerrohrback.com

13

14                                             Brian S. Kabateck
                                               Richard L. Kellner
15                                             Joshua H. Haffner
                                               KABATECK BROWN KELLNER LLP
16                                             644 South Figueroa Street
                                               Los Angeles, CA  90017
17                                             Tel: (213) 217-5000
                                               Fax: (213) 217-5010
18                                             bsk@kbklawyers.com
19                                             rlk@kbklawyers.com
                                               jhh@kbklawyers.com
20

21                                             *Class Counsel*

22

23

24

25

26

PLAINTIFFS' MOTION FOR FINAL                      36
APPROVAL OF CLASS ACTION
SETTLEMENT (No. CV09-45RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

37

1

<u>CERTIFICATE OF SERVICE</u>

2

3      I HEREBY CERTIFY that on the 9th day of December, 2010, I electronically filed

4  the foregoing document with the Clerk of the Court using the ECF system, which will send

5  notification of such filing to all ECF participants.

6

7                                              s/Mark A. Griffin
                                              _____
8                                              Mark A. Griffin

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION            37
SETTLEMENT (No. CV09-45RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

38