HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| IN RE CLASSMATES.COM CONSOLIDATED LITIGATION | MASTER CASE NO. C09-45RAJ ORDER |
| | (APPLIES TO ALL ACTIONS) |

## I.  INTRODUCTION

This matter comes before the court on a motion from class counsel for preliminary approval of a revised settlement of this putative class action.  Dkt. # 134.  Classmates and class counsel presented argument in support of preliminary approval at a July 7, 2011 hearing.  For the reasons stated herein, the court GRANTS the motion.  This order includes a schedule for issuing notice of the settlement to class members, and permitting them to make claims for compensation, opt out of the class, or object to the settlement and/or class counsel's request for attorney fees.  The court will conduct a hearing on December 15, 2011, to determine whether to grant final approval of this settlement

## II.  BACKGROUND & ANALYSIS

On February 23, 2011, the court issued an order explaining its decision to reject the original settlement.  The court strongly encourages anyone reading this order to read that order as well.  It is available, among other places, at the settlement website (www.cmemailsettlement.com).  That order includes a discussion of the factual background of this lawsuit that the court will not repeat in this order.

ORDER – 1

On March 25, 2011, the parties submitted a revised settlement, and asked the court to preliminarily approve it.

**A.    Comparison of Original Settlement and Revised Settlement**

The court begins by comparing the two settlements, using round numbers. The first settlement offered injunctive relief to 57 million people, essentially every registered user of Classmates.com. For 3 million of those people, the registered users who paid for Classmates memberships, the settlement offered either a $2 coupon to use at Classmates or a $3 cash payment. For the remaining 54 million class members, the settlement offered only the $2 coupon. Although Classmates agreed to pay up to $9.5 million in the settlement, it was obligated to pay only $3 to every class member who submitted a claim. As it turned out, only 17,000 class members requested a $3 payment, meaning that Classmates would have paid about $51,000. The parties tacked on a $500,000 *cy pres* after it became apparent that class member participation in the settlement would be extraordinarily low.

The revised settlement eliminates coupons and eliminates any distinction among class members. The injunctive relief remains essentially the same.[1] The new settlement offers cash to every class member who makes a claim. The maximum payment to any class member is $15, a figure that the parties tout. That figure is, at best, a speculative estimate of what class members will receive. Classmates will pay class members collectively no more than $2.5 million. Therefore, Classmates will pay class members $15 each only if 166,666 class members or fewer make claims on the settlement fund.

---

[1] The injunctions in the two settlements are identical except in one respect. The original settlement's injunction would have required Classmates to use the term "Classmates® Guestbook" rather than "guestbook" in the subject line of emails it sends to its customers, and would have required additional disclosure about the guestbook feature on the Classmates.com website. Those requirements remain in the revised settlement's injunction, but the revised injunction would also require an explanation of the "Classmates® Guestbook" feature in the footer of each email. The parties contend that this as a significant improvement. In its February 2011 order, the court questioned whether the injunction provided meaningful relief to class members. The court continues to question whether the injunction provides meaningful relief, despite the change.

ORDER – 2

With an estimated class of 60 million people,[2] Classmates will pay claimants $15 only if fewer than 0.27% of class members make claims.  If even fewer class members make claims, Classmates will not increase the compensation it pays to class members, it will instead distribute any remainder of the settlement fund equally among 7 *cy pres* recipients.[3]  In no event will Classmates retain any portion of the $2.5 million settlement fund.  As with the previous settlement, class counsel reserves the right to seek up to $1.05 million in attorney fees, to be paid separately from the settlement fund.

**B.    The Revised Settlement Will Not Provide Meaningful Cash Relief Unless Only a Tiny Percentage of Class Members Make Claims.**

The revised settlement presents an interesting wrinkle: no one knows how much money each class member who makes a claim will receive.  Indeed, the parties contend that they chose the $15-per-class-member figure touted in the settlement agreement largely because they were concerned that if they did not state a dollar figure, class members would not participate in the settlement.

The settlement places class counsel and Classmates in an odd position.  If the settlement is too attractive to class members, it will become decidedly unattractive to class members.  For example, when addressing the original settlement at the December 2010 final approval hearing, Classmates' counsel stated that he expected a 25% participation rate.  If 25% of the class makes claims on the revised settlement fund,

---

[2] The court uses 60 million as a rough estimate of the number of class members.  The proposed class definition, which the court adopts for purposes of preliminary approval, is as follows:

> All persons residing in the United States who were registered with or subscribed to www.classmates.com at any time beginning on October 30, 2004 through February 23, 2011.

The previous settlement class had approximately 57 million members.  The revised settlement expands the class somewhat by expanding the class period to February 23, 2011.

[3] Class counsel and Classmates chose as *cy pres* recipients seven charitable organizations who fight against consumer fraud.  Settlement Agreement ¶ 4.1.1.  Assuming that *cy pres* relief is necessary, the court finds that these organizations are appropriate recipients.

ORDER – 3

Classmates will pay each class member just over 17 cents.  At the same hearing, class counsel said that he expected a 10% participation rate.  If 10% of class members make claims on the revised settlement fund, Classmates will pay each class member just under 42 cents.  As noted, in order for each class member to receive $15, the participation rate must be about 0.27%.  The participation rate in the original settlement was less than 0.10%.  But, as Classmates' counsel pointed out at a hearing, the participation rate among class members who were offered cash was higher – almost 0.6%.  If 0.6% of class members participate in the revised settlement, Classmates will pay each of them about $6.94.

In short, the revised settlement will provide meaningful cash relief only if all but a miniscule fraction of class members fail to make claims.  This is a significant shortcoming.  An ideal class settlement encourages class member participation by offering meaningful relief; it does not condition meaningful relief on minimal participation.  This is a significant shortcoming.

To be clear, the court believes that the revised settlement is an improvement over its predecessor.  In response to the court's rejection of the original settlement, class counsel and Classmates made a sincere effort to address the court's concerns.  The revised settlement is a meaningful improvement.  It ensures that Classmates will pay out $2.5 million (plus class counsel's fees) with no possibility that any part of the money will revert to Classmates.  It eliminates coupons entirely as a form of relief.  It awards class counsel no additional attorney fees despite their additional work in crafting the revised settlement.

**C.    Despite the Shortcomings of the Revised Settlement, the Court Finds That It May Be The Best Deal Class Members Could Receive.**

The shortcoming that the court identified above is the consequence of the enormous size of the proposed settlement class.  It is difficult to provide meaningful cash

ORDER – 4

compensation to 60 million people.  To give each class member as little as a dollar would cost Classmates $60 million.  Even the most gifted negotiator would be hard pressed to raise Classmates' settlement offer from $2.5 million to tens or hundreds of millions of dollars.  Indeed, it is possible that Classmates lacks the financial resources to pay such an award.  Having agreed to a settlement, however, an enormous class is in Classmates' best interest, as that ensures that more class members will release any claims against Classmates.  Assuming that no one opts out of the settlement class, the revised settlement amounts to a payment of just over 4 cents per class member for a release of essentially any claim any class member might have had against Classmates.[4]  The court and class counsel, however, must look to the interests of class members.

Whether a settlement whose strength depends on the widespread indifference of class members is in their interest is, at best, an open question.  The court sees two answers to that question.  Either it is reasonable to permit a settlement that can provide meaningful relief to only a tiny fraction of 60 million class members, or it is simply impossible to settle (at least with cash) a class action with 60 million members.  Both answers have their merits.  It is possible that the relief afforded in this settlement is better for class members than any resolution that might result from a judicial resolution of this case.  If this case is not settled, Classmates could prevail at trial or sooner, or it could defeat class certification entirely or at least limit the size of the class.  Even if class counsel prevailed, Classmates might not have the resources to pay significantly more than it is offering in the settlement.  On the other hand, it may well be that Rule 23(b)(3) of the Federal Rules of Civil Procedure, and the vast array of class litigation it has inspired, is poorly suited to address claims for cash compensation for tens of millions of

---

[4] The release set forth in the settlement is exceedingly broad.  It applies not only to the claims now before the court, but to any claim, known or unknown, that could have been brought in this lawsuit.  Settlement Agreement ¶ 13.1.  The court takes no position on whether the release will actually be given such broad effect.  *See*, *e.g.*, *Hesse v. Sprint Corp.*, 598 F.3d 581, 592 (9th Cir. 2010) (concluding that representational inadequacy partially invalidated expansive release of claims in a nationwide class action settlement).

ORDER – 5

people.  When class attorneys seek to obtain cash for such a large class, it may be impossible as a practical matter to reach an adequate settlement.

Although each of the routes charted above is far from ideal, the court chooses to preliminarily approve the settlement.  In so doing, the court chooses the possibility of meaningful compensation to some class members, rather than protracted litigation that might well lead to class members receiving nothing.  Any class member who disagrees with the court's choice may voice his or her views by either opting out of the class or submitting objections to the settlement.  The court intends to make the process of participating in the settlement (whether by submitting a claim, opting out of the class, or objecting to the settlement) as simple as possible, and intends to give every class member the option to participate online.  As every class member became a member of the proposed class by their online activity, the court assumes that online participation is preferable to virtually every class member.

**D.      The Court Accepts the Parties' Recent Revisions to the Revised Settlement, and Advises the Parties that It Will Revise the Form of Notice to Class Members.**

Having decided to preliminarily approve the revised settlement, a few issues remain.  First, the court's approval is conditioned upon the parties agreeing (if they have not already) to the additional revisions to the revised settlement agreement that they presented to the court at the July 7, 2011 hearing.  The first such change is a minor one. It clarifies paragraph 6.1 to eliminate any suggestion that class counsel has agreed not to represent objecting class members or class members who opt out of the settlement.

The second change is more significant, as it relates to how the settlement will be promoted to class members.  The court asked the parties to consider modifying their compensation approach to ensure that virtually all of the $2.5 million settlement fund is distributed to class members, with no significant *cy pres* payment.  To do so, the parties would have to eliminate the $15-per-class-member cap on compensation, and instead

ORDER – 6

agree that all settlement proceeds would be distributed on a pro-rata basis to class members. Thus, for example, if only 100,000 class members make claims on the settlement fund, each of them would receive $25, rather than $15. The parties explained that they were concerned about this change because without a specific dollar amount (like $15) to announce to class members, class members would not believe they had a realistic chance at obtaining meaningful relief. The court appreciates the concern, but any class member who takes any time to consider the terms of the settlement will discover that the $15 figure that the parties propose to announce is meaningless except as an upper limit on their compensation. It remains possible that class members will receive substantially less than $15. Indeed, in at least Classmates' counsel's view, this is a likely outcome. The court concludes that there is no compelling reason to eliminate the possibility that class members will receive more than $15, particularly where that possibility ensures that the vast majority of the settlement fund will go directly to class members. Accordingly, the court accepts the parties' revisions to the settlement agreement (at paragraphs 4.1.1 and 12.7) that give the court discretion to eliminate the $15-per-class-member cap. The court will award *cy pres* relief only to the extent necessary to distribute settlement funds remaining in the event that a class member who makes a claim either fails to cash his or her settlement check or fails to receive a check through no fault of Classmates. The parties shall execute either an amended version of the revised settlement agreement reflecting these changes or an addendum reflecting these changes.

Finally, the court advises the parties that it will revise their proposed notice to class members in an effort to make it as readable as possible. The court's experience with the prior class notice process in this case has suggested that changes are needed. The court will work with the parties to address any concerns about the revised notice.

ORDER – 7

### III.   SCHEDULE

The court sets the following schedule for providing notice to class members, receiving their input, and conducting a final approval hearing.

| | |
|---|---|
| Counsel receive revised settlement notice from court | July 20, 2011 |
| Settlement notice finalized | July 27, 2011 |
| Deadline for class counsel's motion for attorneys' fees and costs (*to be filed in court and posted on settlement website*) | August 5, 2011 |
| Deadline for publishing settlement notice in *Wall Street Journal* | August 12, 2011 |
| Deadline for emailing notice to class members (*the court expects the settlement administrator to complete email notice as far in advance of this deadline as possible*) | October 18, 2011 |
| Deadline for class members to opt out of class | November 18, 2011 |
| Deadline for class members to object to settlement and/or class counsel's request for attorney fees | November 18, 2011 |
| Deadline for class members to submit claim form | November 18, 2011 |
| Deadline for motion for final approval of settlement | December 7, 2011 |
| Final approval hearing | December 15, 2011 |

### IV.   CONCLUSION

For the reasons stated above, the court GRANTS class counsel's motion to preliminarily approve the revised settlement. Dkt. # 134. The court directs class counsel to place this order on the settlement website, along with the revised settlement agreement and briefs supporting preliminary approval. Counsel shall revise the settlement website such that, with the exception of the February 2011 order, information about the prior settlement and prior proceedings is on a separate page with an appropriate hyperlink.

DATED this 8th day of July, 2011.

*Richard A Jones*
_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 8