1

2

3

4

5

6

The Honorable Richard A. Jones

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

IN RE CLASSMATES.COM
CONSOLIDATED LITIGATION

No. C09-45RAJ

11

12

13

14

15

16

PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF REVISED
CLASS ACTION SETTLEMENT,
RESPONSE TO OBJECTIONS, AND
REPLY IN SUPPORT OF RENEWED
MOTION FOR ATTORNEYS' FEES,
COSTS, AND PARTICIPATION
AWARDS TO THE CLASS
REPRESENTATIVES

17

**NOTED FOR CONSIDERATION:**

18

**DECEMBER 15, 2011**

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION
FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ)

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

## Table of Contents

I.  INTRODUCTION ........................................................................................... 1

II.  STATEMENT OF FACTS ............................................................................ 3

  A.  The Settlement Establishes a Common Fund in Excess of $5 Million ................................................................................................... 3

  B.  Plaintiffs' Consolidated Amended Complaint. ...................................... 4

  C.  Procedural History ................................................................................ 4

     1.  The Parties Utilized the Services of Judge Coughenour for Renewed Negotiations after the Court Did Not Finally Approve the First Settlement. .................................................... 5

     2.  The Court Held a Preliminary Approval Hearing in July 2011, and the Parties Further Modified the Settlement in Response to the Court's Inquiries. ............................................ 6

  D.  The Class Has Been Fully Engaged in Responding to the Revised Settlement. ............................................................................................. 7

  E.  The Court Has Closely Reviewed Counsel's Fee Proposal at Every Step of This Litigation. ......................................................................... 9

     1.  The Court Scrutinized Counsel's Hourly Rates and Its Proposed Cap on Fees When It Appointed Interim Lead Counsel in a Contested Proceeding. ............................................ 9

     2.  The Court Has Continued to Scrutinize Lead Counsel's Fees Throughout the Settlement and Approval Process. ......... 11

  F.  Notice and Claims Administration ...................................................... 12

III.  ARGUMENT ............................................................................................. 13

  A.  The Court Should Approve the Settlement as Fair, Reasonable, and Adequate ............................................................................................. 13

  B.  *Bluetooth* Endorses the Heightened Scrutiny This Court Has Already Been Applying to this Litigation, and Does Not Alter the Conclusion That the Settlement Should Be Approved as Fair, Reasonable, and Adequate. ................................................................. 15

     1.  There Was No Collusion. ........................................................ 17

PLAINTIFFS' MOTION
FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - i

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2.    The Strength of Plaintiffs' Case ............................................................ 19

3.    The Risk, Expense, Complexity and Likely Duration of
      Further Litigation ............................................................................... 19

4.    The Risk of Maintaining Class Action Status Throughout
      Trial ...................................................................................................... 21

5.    The Presence of a Governmental Participant ....................................... 22

6.    The Amount Offered in Settlement ...................................................... 22

7.    The Extent of Discovery Completed and the State of the
      Proceedings ......................................................................................... 23

8.    The Experience and Views of Counsel ................................................ 24

9.    The Reaction of Class Members to the Proposed Settlement .............. 24

C.    The Objections Should Be Overruled ............................................................. 27

1.    The Objections to the Settlement Are As Diverse As the
      Population Submitting Them. ............................................................... 27

2.    The Objections to Counsel's Fee Request Should Be
      Overruled. ............................................................................................ 29

D.    The Court Should Uphold its Earlier Finding that Class Counsel
      Has Submitted a Reasonable Fee Request, and Should Further Find
      That the Fee Request is Reasonable in Relation to the Substantial
      Benefit Conferred on the Class. ...................................................................... 32

E.    The Court Should Grant Counsel's Request for Reimbursement of
      Costs and Approve the Request Case Contributions to the Lead
      Plaintiffs ........................................................................................................ 34

IV.    CONCLUSION ......................................................................................................... 35

V.    PROPOSED ORDERS .............................................................................................. 35

PLAINTIFFS' MOTION
FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - ii

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

## **Table of Authorities**

2

Cases

3

*Bateman v. Am. Multi-Cinema, Inc.*,
    623 F.3d 708 (9th Cir. 2010) ....................................................... 21

4

5

*Churchill Vill., L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ....................................................... 13

6

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..................................................... 13

7

8

*Davis v. City & County of San Francisco*,
    976 F.2d 1536 (9th Cir. 1992) ..................................................... 30

9

10

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................... 3

11

*Farfaras v. Citizens Bank & Trust of Chicago*,
    433 F.3d 558 (7th Cir. 2006) ....................................................... 31

12

13

*Fischer v. SJB-P.D. Inc.*,
    214 F.3d 1115 (9th Cir. 2000) ................................................ 30, 31

14

*Franlin v. Kaypro Corp.*,
    884 F.2d 1222, 1229 (9th Cir. 1989) ........................................... 20

15

16

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1026 (9th Cir. 1998) ........................................... 26

17

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ........................................................... 34

18

19

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ................................................................ 30, 32

20

21

*In re Bluetooth Headset Products Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ................................................. passim

22

*In re Exxon Valdez*,
    229 F.3d 790, 795 (9th Cir. 2000) .............................................. 20

23

24

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................... 34

25

26

PLAINTIFFS' MOTION
FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - iii

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*In Re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ................................................................. 22, 23

*In re Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010) ....................................................................... 33

*In Re Warfarin Sodium Antitrust Litig.*,
    212 F.R.D. 231 (D. Del. 2002) ..................................................................... 19

*Medrano v. Modern Parking, Inc.*,
    2007 U.S. Dist. LEXIS 82024, at *10 (C.D. Cal. Sept 17, 2007)........................ 21

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................. 20, 24

*Officers for Justice v. Civil Serv. Com'm of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................. 22, 23

*Orme v. Burlington Coat Factory of Oregon, LLC*,
    No. 07-859, 2010 WL 1838740 n.3 (D.Or. May 3, 2010) .................................... 31

*Pelletz v. Weyerhaeuser*,
    592 F. Supp. 1322, 1326, 1328 (W.D. Wash. 2009)...................................... 10, 29

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ............................................................. 3, 34, 35

*Teicher v. Regence Health & Life Ins. Co.*,
    No. 06-1821, 2008 WL 5071679 (D. Or. Nov. 24, 2008) ............................... 31, 32

*Trulock v. Hotel Victorville*,
    92 F. App'x 433 (9th Cir. 2004)................................................................... 30

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D.Cal. 1995) ................................................................ 35

*Welch v. Metro. Life Ins. Co.*,
    480 F.3d 942 n.2 (9th Cir. 2007) .................................................................. 31

*Wilcox v. Commerce Bank of Kansas City*,
    474 F.2d 336 (10th Cir. 1973) ..................................................................... 21

*Zaldivar v. T-Mobile USA, Inc.*,
    No. 07-1695, 2010 WL 1611981 (W. D. Wash. Mar. 16, 2010) ....................... 1, 26

PLAINTIFFS' MOTION
FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - iv

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Statutes

28 U.S.C. § 1715(b) ........................................................................................ 22

RCW 19.190.010 ............................................................................................... 4

RCW 19.190.020 ............................................................................................... 4

RCW 19.86 ......................................................................................................... 4

RCW 19.86.090 ................................................................................................. 4

Rules

Fed. R. Civi. P. 23 ..................................................................................... 26, 27

Fed. R. Civi. P. 23(b)(3) ................................................................................. 21

Fed. R. Civi. P. 23(e) ............................................................................... 13, 16

Fed. R. Civi. P. 23(g) ....................................................................................... 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Lead Plaintiffs Anthony Michaels and David Catapano move for final approval of the Revised Class Action Settlement (the "Settlement"), ask that the Court overrule the objections to the Settlement, find that the Settlement is fair, reasonable, and adequate, and award Interim Lead Counsel's requested attorneys' fee, cost, and class contribution awards.[1]

This proposed settlement is a good settlement, and worthy of final approval.  In a relatively difficult case, with no clear precedent under a seldom-utilized statute, almost 700,000 class members will be receiving payment of approximately 14% of the average Classmates membership cost.  In addition, Classmates has agreed to injunctive relief that will substantially alter its challenged practices.

## I.   INTRODUCTION

As this Court recently explained in the context of reviewing another consumer class action settlement:

> The practices that led to this lawsuit cost most class members between a few cents and a dollar, on average. [Defendant] has not admitted to any wrongdoing, but it agrees with Plaintiffs that to the extent its practices cost its customers money, it cost them very little on average. Almost no one would file a lawsuit to recover a dollar or less. Collectively, however, [Defendant] may have profited several million dollars as a result of these practices. While almost no one would sue to recover less than the cost of a cup of coffee, the court also expects that almost no one would be comfortable with the notion of a company making millions by unfairly charging millions of its customers a few extra pennies. Currently, the class action is the most widely used solution to this dilemma. A few people harmed by the practice are permitted to stand in for the thousands or millions harmed, and the company is forced to answer for its actions.

*Zaldivar v. T-Mobile USA, Inc*., No. 07-1695, 2010 WL 1611981, *1 (W. D. Wash. Mar. 16, 2010).

---

[1] In support of this motion, Lead Plaintiffs submit declarations from Settlement Administrator, Jennifer Keough, of the Garden City Group ("Keough Decl."), and from Mark A. Griffin ("Griffin Decl."), Richard L. Kellner ("Kellner Decl."), Anthony Michaels, and David Catapano in Support of Plaintiffs' Motion for Final Approval of Revised Class Action Settlement, Response to Objections, and Reply in Support of Renewed Motion for Attorneys' Fees, Costs, and Participation Awards to the Class Representatives.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 1

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

These precepts apply here.  Classmates' alleged deceptive acts fueled its membership by approximately 3 million individuals who paid an average of $24.49 apiece per membership.[2] The centerpiece of its campaign was an email barrage which Plaintiffs allege sent false and misleading statements regarding guestbook inquiries.  Since 2004, individuals who subscribed as a result of Classmates' guestbook emails later discovered they were deceived into believing that other Classmates were actively trying to contact them.  This deception is the gravamen of this case.

The Settlement before the Court, if granted final approval, will provide cash compensation to 699,010 Classmates members who have had enough of Classmates' alleged egregious behavior.  These claimants have opted in to receive a cash recovery that amounts, on a pro-rata basis, to $3.57, or over 14%, of their average out-of-pocket damages.[3]  As this Court has previously ruled, "a $3 payment is not on its face unreasonable, at least to settle a claim that is only worth between $10 and $40."  Dec. 16, 2010 Tr. at 10.  Significantly, if the Settlement is granted final approval, it will also put a stop to Classmates' deceptive use of its guestbook e-mail campaign, so that class members who have been targeted with misleading emails, but not yet suffered out-of-pocket damages, will not fall prey to this scam.  If the Settlement is granted final approval, no new consumers will suffer the same harm during the duration of the two-year injunction.

---

[2] Dkt. No. 88 at 3 n.18.  The amount of out-of-pocket harm drops close to zero if the remaining 57 million Class members to whom cash relief has been offered is considered in the average out-of-pocket analysis.

[3] Indeed, the cash payment was made available to all 60 million of Classmates' subscribers during the Class Period, including tens of millions who were only "free subscribers" to Classmates, and never paid the company a dime. While at least 50,000 of the claimants who submitted claims in the first settlement did have out-of-pocket damages, it is likely that over 600,000 of the claimants are, in effect, getting a cash payment because they received a misleading email, but not because they have yet been duped into buying a Classmates membership in response to that email.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 2

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The Settlement provides substantial and concrete relief to the class—including monetary payments to Class members who have no out-of-pocket damages.  The Class has been fully engaged in its response to the Settlement, resulting in 699,010 timely claims, which is one of the greatest number of administrative claims, if not *the* greatest number, Class Counsel has ever experienced in a class action settlement.  Griffin Decl. ¶ 2; Kellner Dec. ¶ 4.

The Settlement is fair, reasonable, and adequate, and should be finally approved.  As a result of its efforts in litigating and resolving this action, Class Counsel's request for fees, costs, and case contribution awards to the Lead Plaintiffs should also be awarded.

## II.   STATEMENT OF FACTS

**A.   The Settlement Establishes a Common Fund in Excess of $5 Million.**

Exclusive of injunctive relief, the Settlement establishes a common fund of just over $5,000,000.  The Settlement consists of (1) a pro rata distribution of $2.5 million in cash, (2) notice and settlement administration costs of $1,490,000,[4] and (3) Class Counsel's fee request of $1,050,000, plus an additional $38,610.77 in case contribution awards and costs.

Class Counsel's fee request of $1.05 million is a 0.64 negative multiplier on its lodestar of $1,649,609.85, *see* Griffin Decl. ¶ 10, and is about 21% of the common fund—below the Ninth Circuit benchmark—for recovery under the common-fund doctrine.  *See In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (referencing 25% benchmark for recoveries under a common fund, and noting that courts have discretion to employ either the lodestar method or the percentage-of-recovery method where a common fund is generated).

---

[4] Ordinarily, the cost of providing notice to a class is borne by plaintiffs. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  Consequently, the payment of notice costs by a defendant is a benefit to the class. *Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003). In *Staton*, the Ninth Circuit held that the district court "did not abuse its discretion by including the cost of providing notice to the class of the proposed consent decree as part of its putative fund valuation .... The post-settlement cost of providing notice to the class can reasonably be considered a benefit to the class." *Id*. at 974-75.  The notice and settlement administration costs are set forth in the Keough Decl. ¶ 16.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 3

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**B.      Plaintiffs' Consolidated Amended Complaint.**

Plaintiffs' Consolidated Amended Complaint (the "Complaint") asserts claims under Washington law.  The Complaint alleges that Classmates has engaged in a systematic, deceptive method of communicating with its subscribers by sending false and misleading e-mails that deceive recipients into paying a membership fee to learn who has been trying to contact them via their Classmates "guestbook."  As set forth in the Complaint, Classmates' long-standing practice of trolling for on-line clicks to auto-generate misleading emails to its free subscribers violates the Commercial Electronic Mail Act ("CEMA"), RCW 19.190.010, *et seq*.  CEMA was passed in 1998 to prohibit, among other things, the sending of "false and misleading email subject lines" either *from* Washington or to consumers *in* Washington.  RCW 19.190.020.  As a relatively new statute, there are only a few cases interpreting it, and there are *no* cases, in Washington or elsewhere, certifying either a state-wide, or a national, class under CEMA.

As alleged in the Complaint, CEMA violations are both a per se violation, and an independent violation, of the Washington Consumer Protection Act ("CPA"), RCW 19.86.   The CPA is a fee-shifting statute, which in addition to its authorization of monetary and injunctive relief, provides for a prevailing party to obtain recovery of its "reasonable attorney's fee."  RCW 19.86.090.  Plaintiffs' Complaint seeks monetary and injunctive relief pursuant to both CEMA and the CPA, as well as an award of attorney's fees pursuant to the CPA.  Compl., Prayer for Relief ¶ 15.

**C.      Procedural History**

This Settlement follows three years of hotly contested litigation and is the second settlement for which the parties have requested final approval.  The Court denied final approval

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 4

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

to an earlier settlement in a minute order dated January 13, 2011, and an opinion dated February 23, 2011.  Dkt. Nos. 121 & 128.

This action has involved two different complaints filed in two different state courts, two removals to federal court, and a venue challenge that resulted in the action being transferred to Washington from California.[5]

In addition to litigation in this district court, this case has spawned meritless, collateral litigation by class member Michael Todd in state court in Illinois (dismissed for want of prosecution on March 25, 2011), a frivolous appeal to the Ninth Circuit by attorney Charles Chalmers (mandamus denied on December 9, 2010), and an appeal to the Ninth Circuit that "pro se" attorney Christopher V. Langone seeks to characterize as "moot."[6]  Class Counsel has actively defended each of these collateral attacks on the Settlement, requiring it to incur significant time.

> **1.    The Parties Utilized the Services of Judge Coughenour for Renewed Negotiations after the Court Did Not Finally Approve the First Settlement.**

After the Court issued a minute order advising the parties that it would decline to finally approve the parties' original settlement, *see* Dkt. No. 121, the parties re-initiated settlement negotiations to address the Court's concerns.  In late January 2011, the parties conducted a mediation session before the Hon. John C. Coughenour of the United States District Court for the Western District of Washington.  Thereafter, the parties continued to negotiate the points of a potential revised settlement.  On February 23, 2011, the Court issued an Order detailing its concerns with the prior settlement.  Dkt. No. 128.  Armed with this additional information, the

---

[5] Plaintiffs have previously summarized the complex, three-year procedural history in this action.  *See* Dkt. No. 94 ¶¶ 5-8; Dkt. No. 134 at 3-5.  These factual recitations are incorporated herein by reference.

[6] Although Mr. Langone recently attempted to dismiss his appeal as moot, Griffin Decl. Ex. B at 2 ¶ 4, the Ninth Circuit has refused to grant the requested dismissal, ordering him to file his opening appellate brief on December 12, 2011.  Griffin Decl. Ex. C.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 5

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

parties ultimately reached new terms.  The revised agreement was designed to fairly compensate the class by addressing all of the Court's concerns.  On March 24, 2011 the parties entered into a Revised Settlement.

### 2. The Court Held a Preliminary Approval Hearing in July 2011, and the Parties Further Modified the Settlement in Response to the Court's Inquiries.

The parties submitted briefing in March and April 2011 requesting preliminary approval of the Settlement.  *See* Dkt. Nos. 134-36, 144-45, 148.  The Court held a hearing on preliminary approval on July 7, 2011, and issued its order granting preliminary approval on July 8, 2011.  In connection with the preliminary approval hearing, the parties modified two provisions in the Settlement.  One provision lifted any pro rata cap on payment, and eliminated a related *cy pres* provision (except with respect to anticipated de minimis amounts for any Settlement checks that remain uncashed).  The other provision deleted a word from Paragraph 6.1 relating to Class Counsel's possible representation of objectors or those opting out of the Settlement.  *See* Griffin Decl., Ex. D.

On December 7, 2011, the parties agreed to an additional amendment to the Settlement. *See* Griffin Decl., Ex. E.  The amendment provides that if the Court does not award Class Counsel attorneys' fees in the amount of $1,050,000, the difference between the amount awarded by the Court in Class Counsel's fees and $1,050,000, will be added to the $2.5 million available for *pro rata* distribution to the Class, and will not revert to Defendants.

In its preliminary approval order, the Court found that the Settlement was an improvement over its predecessor, and that "class counsel and Classmates made a sincere effort to address the court's concerns."  Nonetheless, the Court pointed out what it characterized as a shortcoming of the Settlement, and which it speculated would be inherent in any class settlement

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 6

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

where an effort is made to provide cash relief to an "enormous" class: namely, that class

members would not receive meaningful relief on a pro rata basis unless a small percentage of

Class members actually submit claims. The court characterized this as a Catch-22: If the

settlement is "too attractive" to class members (by offering a significant cash recovery on a pro

rata basis), it will then become "decidedly unattractive" to class members (because a large

number of claims will drive down the pro rata cash amount). Dkt. No. 156 at 3.

In spite of this seeming paradox, the Court reasoned:

> It is difficult to provide meaningful cash compensation to 60 million people. . . . It
> is possible that the relief afforded in this settlement is better for class members
> than any resolution that might result from a judicial resolution of this case. If this
> case is not settled, Classmates could prevail at trial or sooner, or it could defeat
> class certification entirely or at least limit the size of the class. Even if class
> counsel prevailed, Classmates might not have the resources to pay significantly
> more than it is offering in the settlement.

*Id*. at 5. Balancing the possibility of continued litigation with the Settlement before it, the Court

chose to preliminarily approve the Settlement. In so doing, the Court found that it " chooses the

possibility of meaningful compensation to some class members, rather than protracted litigation

that might well lead to class members receiving nothing." *Id*. at 6.

The Court's preliminary approval order also invited any class member disagreeing with

the Court's approval to "voice his or her views by either opting out of the class or submitting

objections to the settlement." *Id*. To facilitate this process, the Court emphasized the ease with

which class members could voice their views. The Settlement allows Class members to opt-out

or object to the Settlement electronically.

**D.    The Class Has Been Fully Engaged in Responding to the Revised Settlement.**

The Class has been fully engaged in the revised Settlement, resulting in the greatest

number of administrative claims that Class Counsel believes they have ever observed in a

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 7

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

consumer class settlement.  The first settlement covered a class of approximately 57 million, and generated a combined total of 8,457 opt-outs and objectors.  Dkt No. 112 ¶ 14.  The revised Settlement covers a class of 60 million, and generated a combined total of only 4,211 opt-outs and objections.

As set forth in the Declaration of Jennifer M. Keough Regarding Revised Settlement Notice Dissemination and Settlement Administration ("Keough Decl."):

- Class members submitted 699,010 requests for cash payment, which amounts to a 14-fold increase from the 50,018 requests submitted in the prior settlement, and reflects a claim rate of over 1%;

- Opt-outs to this Settlement were more than cut in half: 3,835 class members opted-out of the revised Settlement, compared to 8,273 who opted out previously;

- Between August 11 and November 18, 2011, the Settlement website had over 1.2 million visits (compared to only 154,757 visits in response to the original settlement); and

- Class members submitted 370 timely objections (376 total objections) to the Settlement and/or to counsel's fee petition, *see* Dkt. No. 174.

*Compare* Keough Decl. ¶¶ 12, 14 *with* Dkt. No. 112 (prior Keough Decl.) ¶¶ 12, 14.

The Court has accurately characterized the Settlement class as "enormous."  Dkt. No. 156 at 4.  In fact, the Settlement covers about one-fifth of the U.S. population.  Not surprisingly, given the number of Class members, the objections and other statements submitted in response to the Settlement run the gamut of disgust to emphatic approval.  *See infra* §§ III.B.9 & III.C. While negative statements about the Settlement outweigh the positive submissions, this balance makes sense, given that the objection and opt-out process is designed to capture dissent, not approval.  The nearly 700,000 supporters of the Settlement filed claim forms and had no separately designated forum to discuss their endorsement of the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 8

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

**E.      The Court Has Closely Reviewed Counsel's Fee Proposal at Every Step of This Litigation.**

From the outset of this litigation, the Court has repeatedly and consistently emphasized three primary goals for the efficient prosecution of this case and any award of Class Counsel's fees.  First, the Court quickly consolidated two competing actions and appointed Interim Lead Counsel to eliminate unnecessary duplication of effort.  Second, the Court has emphasized that the class is entitled to the best possible representation for the best possible price.  Third, the Court has emphasized that any recovery by Class Counsel must be both reasonable in relation to the work performed, and in relation to the benefit conferred upon the Class.

**1.      The Court Scrutinized Counsel's Hourly Rates and Its Proposed Cap on Fees When It Appointed Interim Lead Counsel in a Contested Proceeding.**

On April 30, 2009, the Court consolidated the two underlying actions to eliminate unnecessary duplication of effort and to ensure the orderly and efficient prosecution of the litigation.  Dkt. No. 45.  In connection with its consolidation order, the Court also directed the competing sets of counsel to submit fee information so the Court could appoint Interim Lead Counsel.  Dkt. No. 45 at 4 (citing to Fed. R. Civ. P. 23(g)).  The Court made clear that counsel's cost of services would be "a factor of vital importance" in choosing Lead Counsel.  *Id*. at 5.  As the Court explained,

> When more than one counsel group seeks to represent the class, "the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2).  In considering applicants, the court "may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs." Fed. R. Civ. P. 23(g)(1)(C).

*Id*. at 4.  The Court recognized that because the cost of class counsel decreases the benefits available to the class, it is in the interest of the putative class members to "begin managing those costs at the earliest opportunity."  *Id*.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 9

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Based on these concerns, the Court directed counsel to submit evidence regarding how they will charge the class members they seek to represent:

> The court directs counsel to be specific. Generalized statements that counsel will seek fee awards consistent with applicable law are of no use to the court. If a counsel group is willing to agree to a cap on its fees (either as an absolute dollar value or as a pro-rated percentage of the class's ultimate recovery), it shall so state. If not, counsel shall provide the court with sufficient information to permit the court to make a reasonable estimate of the likely cost of their services through class certification.

*Id*.

In response to this direction, the undersigned counsel ("Counsel Group One") submitted a detailed proposed fee structure designed to place caps on what it would charge the class, both on an hourly, and aggregate basis.  Dkt. No. 50.  The fee proposal established hourly rates that Counsel Group One would apply to the case, and specifically committed Keller Rohrback L.L.P. to using its prior year's (2008) billing ranges,[7] regardless of how long the case was litigated or when it would be resolved.  *See id*. at 6.  Counsel Group One also made clear that if their fee petition sought an award of attorneys' fees based on a lodestar or multiplier method, they would agree to cap any fee request at a 2.0 multiplier, and if their fee petition sought an award of attorneys' fees based on the percentage of the common fund, they would cap their request at 15% if the case resolved prior to the filing of a class certification motion.  *Id*. at 5.

Counsel Group Two also submitted a schedule of hourly rates, which rates the Court characterized as "comparable to those of Counsel Group One."  Dkt. 51 at 3.  However, Counsel Group Two refused to place any cap on its potential recovery of attorneys' fees.  *See id*.

---

[7] The proposal also explained that Keller Rohrback's proposed rates were consistent with rates Judge Coughenour had recently approved as reasonable for the payment of attorneys' fees in another consumer class action in this district, in which he applied a "modest" 1.82 multiplier under the lodestar method.  *See* Dkt. No. 50 at 6 (citing *Pelletz v. Weyerhaeuser*, 592 F. Supp. 1322, 1326, 1328 (W.D. Wash. 2009)).

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 10

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

The Court evaluated the two competing fee proposals, and appointed Counsel Group One as Interim Lead Counsel, because they had "responded appropriately to the court's directive to provide specific information about the cost of its services to the putative class." *Id.*, Dkt. No. 51 at 3. The Court found that Lead Counsel's agreement to cap its recovery provided a means of assuring an appropriate allocation of any payment made by Defendants to the class rather than to its attorneys. *See id.*

### 2.   The Court Has Continued to Scrutinize Lead Counsel's Fees Throughout the Settlement and Approval Process.

The Court's scrutiny of counsel's fee request in relation to the relief obtained for the Class has continued throughout this litigation. During review of the parties' initial proposed settlement, the Court reiterated that it would consider the actual relief awarded to class members when it considers a request for attorney fees. Dkt. No. 83 at 4.

Indeed, even at the final approval hearing in December 2010, which resulted in the Court denying final approval, the Court closely evaluated counsel's fee request—the same request submitted here today, notwithstanding an additional year of attorney time spent on the litigation—and found that the requested fees were reasonable in relation to the work that had been accomplished:

> But I do want to address the issue of attorneys' fees in general. Now, many class members were outraged and expressed in many different ways the large disparity between what class members received and what class counsel was asking for. And I can understand that, particularly in light of today's economy where there are many individuals barely able to afford a meal, let alone what has been requested by counsel by way of fees.

> But I have reviewed the fee request. The request is reasonable in light of the work the lawyers have put into this litigation. I understand that it is difficult for class members to imagine that a person could charge upwards of 500 plus dollars per hour, and believe that would be a reasonable fee. But the fact of the matter is, that's a rate that is charged by many firms and that is the rate that is paid by many clients. There is no question in this court's mind that class counsel have put a

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 11

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

tremendous amount of work into this case.  I think there are very serious questions about whether that work resulted in a fair and equitable settlement, but there is no dispute that the lawyers have worked hard on this case.

Tr. Dec. 15, 2010 at 18-19.

With respect to the Revised Settlement, the Court noted in its Order preliminarily approving the Settlement that although counsel had obtained a meaningfully improved settlement, Class Counsel had not submitted an increased fee request:

> The revised settlement is a meaningful improvement.  It ensures that Classmates will pay out $2.5 million (plus class counsel's fees) with no possibility that any part of the money will revert to Classmates.  It eliminates coupons entirely as a form of relief.  It awards class counsel no additional attorney fees despite their additional work in crafting the revised settlement.

Dkt. 156 at 4-5.

## F.    Notice and Claims Administration

Settlement Administrator, The Garden City Group, Inc. ("GCG"), sent the Court-ordered Class Notice by electronic mail to all Class members as instructed and approved by the Court. Each Notice gave each recipient a unique claims and control number, and directed the recipient to the Settlement website to obtain more information on how to file their claim.  Keough Decl. ¶¶ 4, 9.  GCG sent the email Notice to 59,611,443 email addresses in the files provided by Classmates.  *Id*. ¶ 7.

Nearly 89% of these email notices were delivered.  GCG closely monitored the failed email delivery attempts, and attempted as many as three times to deliver to an email address. Ultimately, however, GCG could not deliver 6,622,025 e-mail Notices.  *Id*. ¶ 10.

The Settlement Agreement and Preliminary Approval Order directed that GCG cause the Publication Notice to run once in the *Wall Street Journal*.  GCG confirms that the Publication Notice ran in the *Wall Street Journal* on August 12, 2011.  *Id*. ¶ 11.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Pursuant to the Preliminary Approval Order, GCG established a Settlement Website dedicated exclusively to this Settlement on June 2, 2010, http://www.cmemailsettlement.com. The website provides additional information to the Settlement Class Members.  Between August 11 and November 18, 2011, there were 1,236,133 visits to the Settlement website.  *Id.* ¶ 12.

Class members were able to submit claim forms, objections, and requests to opt-out of the Settlement via e-mail or other electronic submission directly to the Settlement Administrator. GCG has received a total of 699,010 timely claim forms, 3,835 timely requests for exclusion, and 373 timely objections.  *Id.* ¶¶ 13, 14.

### III.   ARGUMENT

### A.   The Court Should Approve the Settlement as Fair, Reasonable, and Adequate

The Ninth Circuit has a "strong judicial policy that favors settlement" of class action litigation.  *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992).  Federal Rule of Civil Procedure 23(e) also dictates that a court should consider the fairness, adequacy and reasonableness of a settlement by balancing a number of factors, which include: (1) the strength of the plaintiffs' case; (2) the risk, expense, and complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the presence of any governmental participant; (5) the amount offered in settlement; (6) the extent of discovery completed and the stage of the proceedings; (7) the experience and views of counsel; and (8) the reaction of the class members to the proposed settlement.  *Bluetooth*, 654 F.3d at 946 (citing *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (the "*Churchill* Factors").

This Settlement easily satisfies each of the relevant *Churchill* Factors.  The Settlement has benefitted from the active mediation services of a retired state court judge, the Hon. Steven

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1  Scott, and an active federal court judge, the Hon. John C. Coughenour.  The Settlement

2  agreement was the product of two rounds of negotiations, spanning a total of six months,

3  between able and experienced attorneys over the course of two years.

4       The settlement negotiations were hard-fought at every juncture.  On several occasions the

5  parties were forced to ask the Court for more time to continue their settlement negotiations

6  because although they were making steady progress, each side's fierce advocacy prevented a

7  quick resolution, and each settlement term was separately, and laboriously, negotiated.  Dkt. No.

8  94 ¶ 8 (describing first settlement); *see also* Dkt. Nos. 67-70 (Minute Orders and Joint Status

9  Reports with respect to first settlement) & 126, 129, 133 (Joint Status Reports with respect to

10  revised Settlement).

11       This Court has also been an active participant in the Settlement process.[8]  This Court has

12  held three hearings (and will soon hold a fourth) scrutinizing the approval process.  The Court

13  has also provided detailed directions to the parties on virtually every aspect of the Settlement

14  approval process, including:  the content and method of class notice, the claim submission

15  process, the process for class members to object to or exclude themselves from the Settlement,

16  the content of the settlement website, the role of any *cy pres* award, the pros and cons of pro rata

17  distributions, the efficacy of an electronic settlement administration process, and Lead Counsel's

18  agreement to cap both its hourly rates and its ultimate fee request.

---

[8] At the preliminary approval hearing on this Settlement, the Court described its active role in overseeing this Settlement.  "[T]his court has been fairly aggressive in trying to address what the proposal is before this court, and the court has a list of instructions for the opportunity to resolve the differences of the parties.  The court always tries to encourage the same.  I think we're at [the] point now where the court has gone as far as it can, and the parties have gone as far as they can to address what's a fair, adequate, and reasonable resolution in this matter." July 7, 2011 Tr. at 25:17-24.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 14

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

**B.**     ***Bluetooth* Endorses the Heightened Scrutiny This Court Has Already Been Applying to this Litigation, and Does Not Alter the Conclusion That the Settlement Should Be Approved as Fair, Reasonable, and Adequate.**

2

3

On August 19, 2011, two weeks after Class Counsel submitted their renewed motion for

4

fees, *see* Dkt. No. 159, the Ninth Circuit in *Bluetooth* vacated and remanded a district court's

5

final approval of a consumer class action settlement and concomitant order granting attorneys'

6

fees and costs.  The Ninth Circuit found that the district court failed to document its

7

consideration of the reasonableness of counsel's requested lodestar, and failed to evaluate the fee

8

award in light of the benefits the settlement conferred upon the class.  *Bluetooth*, 654 F.3d 935.

9

The Ninth Circuit concluded, in particular, that the district court's belief that it had no obligation

10

to evaluate and justify the reasonableness of class counsel's fee award, where defendants had

11

agreed not to contest an award under a pre-designated cap, violated the court's obligations to the

12

class.  The Ninth Circuit remanded the action for the district court to evaluate the reasonableness

13

of the settlement and fee award independently, and in relation to each other.  *Id.* at 949-50.

14

15

The *Bluetooth* plaintiffs had asserted money damages on behalf of "millions of

16

individuals" who had purchased Bluetooth headsets since June 30, 2002 purportedly in reliance

17

on allegedly misleading representations about the safety and usability of the product.  *Id.* at 939.

18

Defendants moved to dismiss.  Before oral argument on the motion to dismiss, and before any

19

motion for class certification, the parties entered a settlement that provided for injunctive relief

20

and a $100,000 *cy pres* award, but provided no economic recovery to any member of the class.

21

*Id.* at 939-40.

22

23

Objector Krauss (whose counsel Theodore Frank, Daniel Greenberg, and the Center for

24

Class Action Fairness appealed the district court's order in *Bluetooth*) relies heavily on the recent

25

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 15

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

opinion to argue that *this* Settlement is inadequate and should be rejected.[9]  *Bluetooth* provides

no precedent for such a result.  Rather, *Bluetooth* merely endorses two long-held principles that

this Court has already endorsed from the outset of this litigation.[10]  This Settlement passes

muster under *Bluetooth*.

First, *Bluetooth* holds that a district court has an obligation to carefully consider and

document the reasonableness of any fee request both in relation to the work performed *and* in

relation to the benefit conferred on the class.  *See id.* at 944.  Second, *Bluetooth* provides that

where a case settles prior to a motion for class certification, the district court must apply

heightened scrutiny to any fee request and document its findings that the relationship between

the attorneys' fees and benefit to the class is reasonable.  *See id.* at 946.  As detailed above, this

Court has applied heightened scrutiny to the (anticipated) benefits of the Settlement and Class

Counsel's fees throughout this litigation, and Class Counsel respectfully urges the Court to

continue to apply such heightened scrutiny on this motion.

Under *Bluetooth*, when a settlement agreement is negotiated prior to formal class

certification, consideration of the *Churchill* factors alone is not sufficient because, *Bluetooth*

concludes, there is a greater potential for a breach of fiduciary duty by class counsel.  *Id.* at 946.

Accordingly, "such agreements must withstand an even higher level of scrutiny for evidence of

collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before

securing the court's approval as fair."  *Id.* (citations omitted).  Under *Bluetooth*, "the district

---

[9]  Krauss also argues, in a self-contradictory manner, that the Settlement (which he believes is inadequate and argues results from collusion) has also improved in a way that significantly benefits the Class, and for which he and his counsel should be compensated.  *Compare* Dkt. No. 167 at 1 (arguing the Settlement is inadequate) *with* Dkt. No. 167 at 15 (arguing that the (inadequate) Settlement has been improved as a result of his efforts, and reserving the right to submit a fee petition).

[10]  The *Bluetooth* settlement is also readily distinguishable from this Settlement.  For example, *Bluetooth* provided no economic recovery to the class, contrasted with the $2.5 million made available here.  Moreover, the requested attorneys' fee in *Bluetooth* was well in excess of the Ninth Circuit's 25% benchmark, where as here the number falls below the benchmark.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 16

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

court's approval order must show not only that 'it has explored [the *Churchill*] factors comprehensively,' but also that the settlement is 'not [ ] the product of collusion among the negotiating parties.'" *Id*. at 947 (citation omitted).

Here, the Settlement satisfies both the *Churchill* factors and *Bluetooth* scrutiny, for the reasons set forth in detail below.

### 1.      There Was No Collusion.

*Bluetooth* characterizes three "signs" of potential collusion in a settlement:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded, . . .

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees  . . . ; *and*

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. (emphasis added) (internal citations and quotations omitted).  Given the Ninth Circuit's conjunctive "and," all three factors must exist in order for a Court to find a Settlement potentially collusive.  *Id*.  (In *Bluetooth*, the Ninth Circuit noted that, "[h]ere, the pre-certification settlement agreement included all three of these warning signs." *Id*.)

The first "sign" is inapplicable here.  Counsel's fee request is not a disproportionate distribution of the settlement for several reasons.  First, the Court has already indicated that the fee request of $1.05 million is reasonable in relation to the work performed.  Dec. 16, 2011 Tr. at 18:15-17.  Second, the fee request is only 64% of Class Counsel's submitted lodestar, which does not include fees incurred after June 2011.  Third, the fee request is well under the 2.0 cap on lodestar that Class Counsel committed to at the outset of the litigation.  Dkt. No. 50.  Fourth, the fee award is based on the reduced hourly rates that Class Counsel agreed to at the outset of the

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 17

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

litigation, and which other courts in this District have concluded are reasonable.  *See id.*  Fifth, the requested fee award of $1,050,000 is only 21% of the common fund established in this case, falling below the Ninth Circuit benchmark of 25% (and well under the percentage that the class counsel in *Bluetooth* sought, 654 F.3d at 945).

The third "sign" of *Bluetooth* is inapplicable here.  As set forth above, the parties have voluntarily amended the Settlement to provide that if the Court chooses to award Class Counsel less than its requested fee amount, any amount not awarded should revert to the Class for *pro rata* distribution, and not to Defendants.  *See* Griffin Decl. Ex. E.

The second "sign" certainly applies to this case.  The Settlement Agreement provides in Paragraph 5.1 that "Defendants will not oppose Class Counsel's application to the Court for an award of reasonable attorneys' fees" provided that Class Counsel limits their fee request to $1.05 million.  This is the so-called "clear sailing" provision referenced in *Bluetooth*, and highlighted by the Krauss objection.  *See* Dkt. 167 at 6-9.

Significantly, however, *Bluetooth* does not prohibit the settling parties from negotiating a clear sailing provision.  Rather, *Bluetooth* merely reasserts that when the parties agree to such a provision,

> the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding "unreasonably high" fees simply because they are uncontested.

*Bluetooth*, 654 F.3d at 948.  As explained above, such heightened scrutiny is easily satisfied here.  Class Counsel's fee is not "unreasonably high."  Throughout this litigation, the Court has closely scrutinized Class Counsel's efforts to avoid duplication of effort, impose reasonable hourly rates, and agree to a reasonable cap on fees.  *See, e.g.*, Dkt. Nos. 45 & 51.  Moreover,

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 18

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

unlike *Bluetooth*, this Settlement provides concrete, cash relief to the class, in addition to injunctive relief.

### 2.     The Strength of Plaintiffs' Case

Plaintiffs believe in the strength of their case and have litigated vigorously to demonstrate the merits of their claims.  Nonetheless, Defendants' Answer included seventeen affirmative defenses, including challenges to the very constitutionality of CEMA.  Answer at 10-11 (Dkt. No. 62).  Although Defendants never moved to dismiss this case, their Answer and other pleadings make clear that they will raise serious challenges to any motion for class certification, and on the merits.  *See* Dkt. No. 144 at 5-15.

Because there is no precedent certifying any prior cases under CEMA—a statute that has been in existence for a full 13 years—this case undoubtedly raises novel and difficult questions of law and fact.  Even if Plaintiffs were able to certify a class and defeat a summary judgment motion, there is no certainty that they would be able to obtain—or hold onto—a favorable jury verdict.  For example, the Court could rule that Classmates' conduct is not deceptive or misleading as a matter of law, or that Defendants are sufficiently insulated from liability because they provided adequate notice or disclosures on their website.

Plaintiffs' damages are also uncertain, as Classmates might have argued that Plaintiffs could not show on a class-wide basis that individual plaintiffs relied on the allegedly deceptive marketing when purchasing a membership or visiting the site.

### 3.     The Risk, Expense, Complexity and Likely Duration of Further Litigation

The risk, expense, complexity and duration of continued litigation also favors settlement.  The Court should consider "the probable costs, in both time and money, of continued litigation."  *In Re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002).  In most cases,

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 19

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy

2   and expensive litigation with uncertain results." *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,

3   221 F.R.D. 523, 526 (C.D. Cal. 2004).  Indeed, the Ninth Circuit has noted that settlement is

4   encouraged in class actions where possible: "the general policy of federal courts to promote

5   settlement before trial is even stronger in the context of large-scale class actions." *In re Exxon*

6   *Valdez*, 229 F.3d 790, 795 (9th Cir. 2000) (citing *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229

7   (9th Cir.1989) (fact that "there is an overriding public interest in settling and quieting litigation

8   ... is particularly true in class action suits.")).

9

10          If not for this settlement, the case would likely continue to class certification, further

11   discovery disputes, summary judgment and trial—and probable appeal.  While counsel for

12   Plaintiffs believe they have brought only meritorious claims and had a reasonable chance of

13   prevailing, incurring additional substantial expenses due to extensive and technical discovery,

14   retention of experts, summary judgment and trial would carve out a significant portion of any

15   eventual jury verdict or post-trial recovery.  Additionally, the expense and uncertainty of

16   collection of a judgment further reduces the value of pursuing this matter through trial when

17   weighed against the outcome for the Class provided by the Settlement.

18

19          Defendants are represented by a competent and nationally-recognized law firm in DLA

20   Piper LLP, and its lead counsel Stellman Keehnel has been recognized as a top lawyer in

21   Washington State by various publications.  Defense counsel was prepared to mount a vigorous

22   and thorough defense.

23

24          Settlement of the litigation at this time under the proposed terms will ensure immediate

25   and ongoing benefits from Classmates' marketing and business reforms, without any additional

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 20

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

expense incurred on behalf of the Class.  Accordingly, final approval of the settlement is

warranted.  *Nat'l Rural Telecoms*, 221 F.R.D. at 527.

### 4.      The Risk of Maintaining Class Action Status Throughout Trial

As part of the Settlement, the parties have agreed to stipulate to certification of the

settlement Class.  If the Settlement is not approved, however, Plaintiffs anticipate any

certification effort would be vigorously and highly contested.  *See supra* at 19.  Plaintiffs' case

centers on Classmates' marketing emails, which contained deceptive statements that induced

individuals to subscribe to Classmates services.  Nonetheless, the certification phase of litigation

poses real and substantial risks.  Classmates was likely to argue that maintenance of a nationwide

class was inappropriate because, among other reasons, Plaintiffs will not be able to prove

reliance by individual class members on the alleged deceptive statements.

Among the many risks that Plaintiffs faced, perhaps the most significant was that class

certification would be denied if the court believed that aggregating the statutory damages in this

case over the massive number of violations of the statute at issue would expose the defendant to

"annihilating punishment unrelated to any damage."  *See Medrano v. Modern Parking, Inc.*,

2007 U.S. Dist. LEXIS 82024, at *10 (C.D. Cal. Sept 17, 2007) (denying class certification for

failing Rule 23(b)(3)'s "superiority" requirement because the "defendants' liability would be

enormous and completely out of proportion to any harm suffered by the plaintiff" and "has little

relation to the harm actually suffered by the class.") (citing sixteen earlier cases reaching the

same conclusion, almost all within the Ninth Circuit). [11]

---

[11] Plaintiffs believe many of these cases were wrongly decided or are explicitly limited to the particular statute at issue which is not any statute at issue here, and should therefore not be applied to the class claims here.  However, it cannot be denied that these authorities represent risk to this litigation.  *See generally Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 723 (9th Cir. 2010) (finding Congressional intent did not allow consideration of the large aggregate damages that would result from class certification in an action under the Fair Credit and Accurate

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 21

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Even if the Class remained certified throughout trial and Plaintiffs prevailed, Classmates would likely challenge class certification on appeal, and there is significant risk that any award could be reversed or overturned on appeal.  Under such a scenario, the Class would recover nothing.  Thus, this factor also weighs in favor of approving the settlement.

### 5.        The Presence of a Governmental Participant

No state attorney general has objected to the Settlement, notwithstanding receipt of notice under the Class Action Fairness Act, *see* 28 U.S.C. § 1715(b).  The absence of any governmental objection to the Settlement counsels in favor of final approval.

### 6.        The Amount Offered in Settlement

In considering the amount offered in settlement, the Court may also look at the difficulties Plaintiffs would face if litigation proceeds.  *In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).  Individual damages suffered by each Class member are small, arguably as little as a percentage of a subscription to the website, which could have been as low as $9.95.  However, the total case value and number of Class members can be significantly reduced if Classmates prevails on its argument that each Class member's decision to upgrade from a non-paid membership to a paid membership is unique and subject to evidence of intent and/or reliance.

In light of the difficulties Plaintiffs would face if litigation proceeded, and in addition to the substantial and valuable corporate reform obtained for benefit of the Class, the $2.5 million consideration being paid out to over 699,000 class members is clearly adequate and fair.

---

Credit Transactions Act ("FACTA"), but explicitly declining to issue any opinion as to whether such consideration is proper as to any other statute nor whether a showing of "'ruinous liability' would warrant denial of class certification in a FACTA or similar action"); *Wilcox v. Commerce Bank of Kansas City*, 474 F.2d 336 (10th Cir. 1973) (noting severe split of authority among district courts whether a threat of "annihilating punishment unrelated to any damage" was a proper matter for consideration in certifying a class and declining to announce any categorical rule).

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 22

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

*Officers for Justice v. Civil Serv. Com'm of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982)

("the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of

highest hopes'") (citation omitted).  Here, each class member submitting a claim will recover

approximately $3.57.  This amount constitutes 14% of the average membership for those class

members who actually submitted a membership payment to Classmates, and goes beyond any

out-of-pocket recoupment for those who did not purchase a paid membership, because they did

not pay Classmates any money.

### 7.    The Extent of Discovery Completed and the State of the Proceedings

The stage of the proceedings and the amount of discovery completed is another factor

that support a finding that this Settlement is fair, reasonable, and adequate.  *Id*. at 625.  The

Ninth Circuit has held that "in the context of class action settlements, 'formal discovery is not a

necessary ticket to the bargaining table' where the parties have sufficient information to make an

informed decision about settlement."  *In re Mego*, 213 F.3d at 459.  Here, both the knowledge of

Class Counsel and the proceedings themselves have reached a stage where counsel can make an

intelligent evaluation of the litigation risks and propriety of settlement.  Plaintiffs pursued

discovery through extensive formal and informal procedures.  Class Counsel have been

informally contacted by numerous potential Class members, many of whom were interviewed

regarding their experience with Classmates as part of Class Counsel's ongoing factual

investigation.  Plaintiffs also pursued significant formal discovery, including the exchange of

initial disclosures, service of several sets of interrogatories and document requests to the parties

involved in the litigation.  Classmates produced, and Plaintiffs reviewed and analyzed, 35,000

pages of documents.  Plaintiffs also consulted with an expert in linguistics when drafting the

amended complaint, preparing their motion for class certification, and negotiating the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 23

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Plaintiffs have gained considerable information about the claims, defenses, facts and law applicable to this case and they have sufficient information to properly evaluate the value and benefit of the settlement agreement.  Class counsel has managed to settle this litigation on terms favorable to the Class without the substantial risk, expense, uncertainty and delay of continued litigation, trial and appeal.

## 8.    The Experience and Views of Counsel

"Great weight is accorded to the recommendation of counsel, who are closely acquainted with the facts of the underlying litigation." *Nat'l Rural*, 221 F.R.D. at 528.  Here, experienced and capable Class Counsel who are actively involved in complex federal civil litigation have weighed all of the above factors and have concluded that the settlement is a favorable result which is in the best interests of the Class.  This factor supports final approval.

## 9.    The Reaction of Class Members to the Proposed Settlement

The Class has been thoroughly engaged in responding to the Settlement.  Although the revised Settlement had an increased number of objections—from 142 to 370—this increase is not independently significant for two reasons.  First, the increase is likely attributable in significant part to the ease of objecting to the revised Settlement via an online submission.  The ability to submit electronic objections was not available in the first settlement.  This new feature undoubtedly resulted in additional objections based on its relative ease and lower transaction costs.  Second, the number of objections increased by a factor of about two and a half from the predecessor settlement, whereas the number of persons excluding themselves from the Settlement *decreased* by half.  At the same time, the number of class members who submitted claims for a cash payment *increased 14-fold*, and the total amount of cash recovered by Class members has increased 40-fold.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 24

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

The number of Settlement website visits during the Notice period, beginning August 11, 2011 also tells a story.  The Class Notice directed Class members to visit the Settlement website in order to submit a claim, or to learn more about the Settlement.  Keough Decl. ¶ 9.  The Settlement website received over 1.2 million visits during the notice period, and nearly 700,000 of these visitors followed through by submitting a claim.  *Id*. ¶¶ 12, 14.  In other words, over 56% of Class members who visited the Settlement website in response to the Class Notice made an evaluation to participate in the cash Settlement and submitted a claim.

When looked at collectively, these numbers show a pattern that demonstrates a strong endorsement by the Class of the revised Settlement.  The Class responded to the ease with which one could object to the Settlement, and the increase in objections reflects this.  Notwithstanding an increase in the number of objections, the significant decrease in the number of exclusions demonstrates that the Class perceived the Settlement as remarkably more favorable than its predecessor.  And most telling of all, the number of Class members affirmatively submitting a claim has increased 14-fold.

The Class reaction to the Settlement may also be characterized anecdotally, to reflect the breadth and diversity of Class members who received a class notice and submitted a statement in response.  Whereas some Class members asserted that this action was nothing more than a "nuisance suit" that should never have been brought, other Class members, such as C. Fonseca, thought that the Settlement was objectionable precisely because of the action's perceived strength, and requested "a settlement paid to me in the amount of $2,000 if the class action suit is won."  These objections suggest that the range of Class reactions to the suit will be as diverse as each of the hundreds of thousands of Class members who brought their own backgrounds to bear when responding to the Settlement.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 25

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

A settlement is necessarily a compromise, and as this Court has previously recognized, Dkt. No. 156 at 5, there is no *single* dollar amount or combination of cash and/or injunctive relief that a settlement must obtain in order to be fair, reasonable, and adequate. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Bluetooth*, 654 F.3d at 948 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  Here, in the aggregate, the Class member's reactions to the Settlement show a pattern of engagement by the Class and its endorsement of the revised Settlement.

Finally, objector Krauss seeks responsibility for drawing the Court's attention in connection with the original settlement to what it characterizes as "the settling parties' incorrect argument that courts construe silence as tacit consent."  Dkt. No. 167 at 2.  The statement is not true.[12]  This Court previously and independently opined on the inference to be construed when class members voice little response to a proposed settlement.  Indeed, in March 2010—long before Mr. Krauss submitted his original objection in November 2010—this Court ruled, in a large class action settlement where only a handful of class members requested exclusion or otherwise objected to the settlement, that low numbers of exclusion or objections do not necessarily indicate widespread approval of the settlement, but rather "more likely that class members simply declined to invest resources in commenting on a settlement that had little impact on them." *Zaldivar*, 2010 WL 1611981, at *1.

Construing this Court's words in the context of *this* Settlement, it appears that the opposite is true here.  Class members were motivated and empowered to speak out on this Settlement in significant numbers, because the notice program worked, because the parties and the Court listened to their objections to the earlier proposed settlement, and because the Class

---

[12] Plaintiffs oppose any attempt by Krauss or his counsel to submit a fee petition and reserve all rights to oppose such a request when ripe, or if and when asserted.

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

members truly felt—whether they support the policy goals of class actions and Fed. R. Civ. P.

23, or whether they oppose them—that this Settlement was relevant to them as consumers.  The

high number of claims indicates substantial Class support for the revised Settlement.

**C.     The Objections Should Be Overruled**

**1.     The Objections to the Settlement Are As Diverse As the Population Submitting Them.**

In addition to the Krauss objection, which was filed with the Court via ECF, there were

369 objections submitted to either Class Counsel, the Court, or the Settlement Administrator

(collectively, the "Electronic Objections").  About 8% of the Electronic Objections (28) provided

a blanket objection, stating simply that they object to the Settlement, without any rationale or

explanation.[13]  Many of the Electronic Objections (206) complained about the fundamental

nature of class actions.  They objected, for example, that class members were getting what they

perceived to be an insignificant recovery on an individual basis, whereas the requested attorneys'

fee would amount to a windfall.[14]  Closer to 20% of the Electronic Objections (71) objected

exclusively to the requested attorneys' fees as too generous, without comparing it to the class

recovery.[15]  A similar number (62) of the Electronic Objections opined that Classmates had

behaved egregiously, and that Class members should be recovering a significantly larger cash

amount, because of the extent of Defendants' unfair practices.[16]  By contrast, a handful of the

---

[13] For example, the September 1, 2011 objection of Jay B. Luttes merely states "I object to this settlement."

[14] For example, on September 22, 2011, an objector identifiable only by an email address (peterstankovich) provided an objection that reads "These class action law suits are a joke!  The lawyers are the only people who make out on these deals  They need discontinued completely  I definitely object to being included in this crap."

[15] For example, the September 3, 2011 objection of Ami Laws states "I object to the settlement in the Classmates.com class action, Case No. 09-45RAJ  I think it undermines the moral fabric of our country that the plainiff [sic] attorneys should collect >$1 million."

[16] For example, the September 3, 2011 objection of John Ourednik states that he objects to the Settlement because "[t]he nature of the complaint seems simple enough" and the case should be taken to trial to set precedent "for what is right and wrong in the upcoming Internet age."  Respectfully, Mr. Ourednik's interest in rolling the dice at trial does not preclude a finding from this Court that the Settlement is a fair, reasonable, and adequate compromise

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 27

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Electronic Objections (8) took issue with Plaintiffs' theory of the case.  These objectors had no complaint to lodge with Classmates; they simply believed that Classmates' users should have been more savvy and detected, rather than be duped by, Classmates' deceptive practices.[17]  At least one "objector," Mr. McGarry, believes that Class Counsel's fee award should be higher.  Mr. McGarry's August 26, 2011 statement suggests that Plaintiffs' counsel should receive a $2 million fee, "to award their vigorous advocacy for helpless plaintiffs, and to encourage the law firm to do so again in another class action matter involving widespread violation of consumer rights."

Whereas one objector, Christopher Langone, colorfully argues that the Settlement has dramatically "shrunk" in value compared to its predecessor, another objector, Mr. Krauss (and his counsel, the Center for Class Action Fairness), argues that the Settlement has improved.  As discussed above, when a settlement class is this large, there may be no silver bullet settlement that will satisfy the personal philosophy of every class member impacted by the challenged consumer transaction.  But a class settlement can redress and put a stop to large-scale deceptive consumer practices, and that is what this Settlement achieves.  The Court should not be surprised by divergent reactions to the Settlement.  Diverse views of the Settlement do not mean that the Settlement should be rejected.  To the contrary, it suggests that the parties may have gotten it "just right."  While some objectors think the Settlement is too generous, others think it is too small.  Indeed, the complaints pale in comparison to the positive response to the Settlement by the nearly 700,000 Class members who are actively participating in its monetary relief.

---

given, among other factors, the merits of the claim and the potential of recovering nothing, or less than was being offered in Settlement, if litigation continued.

[17] For example, the September 8, 2011 objection of Daniel Hnatowich states that he objects because if you join any internet service it should be "BUYER BEWARE": "…When I joined Classmates.com they had everything in writing (even though I never read any contracts, they are usually self explanatory)…. This is the internet, people will always find ways to abuse the system…if you join any internet service it should be 'BUYER BEWARE.'"

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 28

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

2.      **The Objections to Counsel's Fee Request Should Be Overruled.**

On August 5, 2011, Plaintiffs filed their Renewed Motion for Award of Attorneys' Fees

and Costs and Participation Awards to the Class Representatives.  *See* Dkt. Nos. 159-161

(Motion and supporting declarations).  These pleadings were posted on the Settlement website

prior to the dissemination of Class Notice, which began on August 15, 2011.  *See* Keough Decl.

¶¶ 10, 12.

Objector Christopher Langone has reviewed Class Counsel's pleadings and challenges

both its fee request, and certain of its billing records.  However, Mr. Langone's attempted

criticisms of Class Counsel's billing records mischaracterize the evidence, lack support in the

case law, and cannot withstand scrutiny.

First, Mr. Langone objects to Class Counsel's fee request based on their hourly rates.

Langone Obj., at 5-7.  However, Mr. Langone fails to account for the fact that these rates were

previously approved by the Court, and reflect historic billing rates.  Moreover, this Court

specifically found that Class Counsel's rates were comparable to the rates submitted by its

competitors in the contested fee petition. Dkt. No. 51 at 3.  This district court, and other district

courts in the Ninth Circuit, have previously found Class Counsel's hourly rates applied here to be

reasonable in class action settlements.  *See, e.g.*, Dkt. No. 50 at 6 (citing *Pelletz v. Weyerhaeuser*,

592 F. Supp. 2d 1322, 1326 (W.D. Wash. 2009)  (approving Keller Rohrback LLP's hourly rates

as reasonable); Dkt. No. 161 ¶¶ 51-58 (establishing reasonableness of Kabateck Brown &

Kellner LLP's hourly rates).

Mr. Langone also objects that the number of hours spent by counsel was not "reasonably

necessary" to the litigation, and that there has been no effort to eliminate duplicative efforts.  But

tellingly, Mr. Langone does not point to any *concrete instance* of duplication, and does not even

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 29

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

address the Court's finding, in December 2010, that the $1.05 million in fees Class Counsel requested *a year ago* was reasonable in relation to the work performed.  Nor does Mr. Langone address the fact that Class Counsel is seeking a negative multiplier of 0.64 of its lodestar for time billed through June 2011, and that Class Counsel's fee request has not increased since its original October 2010 fee petition (notwithstanding ongoing work on the case, including a currently pending appeal, filed by Mr. Langone himself, in the Ninth Circuit).

Mr. Langone also objects to what he characterizes as "block billing," but he provides no binding authority that requires this Court to reduce, let alone deny, any time entries based either on his selectively quoted summary of fee entries, or the underlying records.  In fact, several of the cases that Mr. Langone relies on explicitly contradict his position.  In *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000), the Ninth Circuit made clear that "plaintiff's counsel 'is not required to record in great detail how each minute of his time was expended,'" but rather may meet its burden "by simply listing [counsel's] hours and 'identify[ing] the general subject matter of [counsel's] time expenditures.'"  *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Davis v. City & County of San Francisco*, 976 F.2d 1536, 1542 (9th Cir. 1992)).  In *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004), the court noted that "[w]hile block billing creates some impediments to the analysis of attorney fee bills, the Supreme Court has indicated that it is not a basis for refusing to award attorneys' fees."  *Id.* (citing *Hensley*, 461 U.S. at 437 n.12); *see also Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice.").[18]

---

[18] The District of Oregon cases cited by Mr. Langone are inapposite, as the District of Oregon, unlike this district, has a policy—posted on the court's website—recommending that counsel refrain from "block billing."  *See, e.g.,*

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 30

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Moreover, the cases cited by Mr. Langone have held that billing entries substantially similar to those of which he complains do *not* constitute "block billing." Mr. Langone inappropriately attributes his definition of "block billing" to the Ninth Circuit. *See* Langone Obj. at 6, citing *Fischer v. SJB-P.-D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000)). In reality, he appears to have taken his particularly stringent definition from an unreported case from the District of Oregon, to which he does not cite. *See Orme v. Burlington Coat Factory of Oregon, LLC,* No. 07-859, 2010 WL 1838740, *6 n.3 (D.Or. May 3, 2010). The Ninth Circuit, on the other hand, has made clear that the non-prohibited practice of "block billing" is simply "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation and quotation marks omitted). Here, Class Counsel has provided such itemization. For example, although Mr. Langone complains of attorney Williams-Derry's time entry on 4/8/2009, in fact Ms. Williams-Derry created *two distinct* time entries on that date, one for each of *two distinct aspects* of the case. First, Ms. Williams-Derry billed 3.5 hours for activities related to a draft joint status report. Second, Ms. Williams-Derry billed 1.9 hours for activities related to a consolidation and leadership motion. *See* Dkt. 160-3 at 8. Thus, in accordance with *Welch*, Ms. Williams-Derry in fact itemized the time she expended on specific tasks.

Mr. Langone also objects that attorney Williams-Derry's 3/19/2009 entry billed for "four or more tasks." Langone Obj. at 6. However, Attorney Williams-Derry has not compiled "four" unrelated tasks into a single entry. Rather, each of the tasks at issue related to the preparation of a *single filing*. *See* Dkt. 160-3 at 5. As the court concluded in *Teicher*, "none of the . . . entries

---

*Teicher v. Regence Health & Life Ins. Co.*, No. 06-1821, 2008 WL 5071679 (D. Or. Nov. 24, 2008) (citing http://ord.uscourts.gov).

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 31

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1   constitute block-billing because the Court can discern the itemized tasks are related to the

2   drafting and preparation" of a motion.  *Teicher*, 2008 WL 5071679 at *8.

3         Counsel has far exceeded the threshold established by the Supreme Court in *Hensley*, and

4   has not only provided ample information regarding the "general subject matter" of Counsel's

5   work, *Hensley*, 461 U.S. at 437 n.12, but has provided details regarding the nature of the specific

6   tasks performed.  Mr. Langone's objections lack evidentiary support, overlook this Court's close

7   scrutiny of Class Counsel's billing practices, and are contrary to the well-developed record in

8   this case.  Nor can Mr. Langone's objection that Class Counsel has spent more time than

9   "reasonably necessary" litigating this case, Obj. at 7, be asserted by him with a straight face, in

10  light of his admittedly meritless appeal currently pending before the Ninth Circuit, which Class

11  Counsel has been forced to spend time opposing.  Mr. Langone's objection should be overruled.

12        The myriad other objections to Class Counsel's fee request simply lack any detail or are

13  based on unproven, conclusory assertions.  Many of the fee objections are rooted in a

14  philosophical objection to class actions, to attorneys, or to anyone receiving a perceived windfall.

15  The novel theories asserted in this action, the complex procedural history of this case, involving

16  litigation in six separate state and federal courts, including two appeals to the Ninth Circuit, belie

17  the charge that Class Counsel is attempting to receive something for nothing in researching,

18  developing, prosecuting, and settling this case.

19  **D.    The Court Should Uphold its Earlier Finding that Class Counsel Has Submitted a
           Reasonable Fee Request, and Should Further Find That the Fee Request is
           Reasonable in Relation to the Substantial Benefit Conferred on the Class.**

20        As set forth in Plaintiffs' Renewed Motion for Award of Attorneys' Fees and Costs and

21  Participation Awards to the Class Representatives, Dkt. No. 159, at 4-5, the use of the lodestar

22  method is fully justified here.  Moreover, where a settlement produces a common fund for the

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 32

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1    benefit of the entire class, courts have discretion to apply either the lodestar method or the

2    percentage-of-recovery method.  *Bluetooth*, 654 F.3d at 942 (citing *In re Mercury Interactive*

3    *Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)).  Though courts have discretion to choose which

4    calculation method they use, their discretion must be employed to achieve a reasonable result.

5    *Bluetooth*, 654 F.3d at 942.  Here, there is no doubt that the fee request is reasonable under both

6    the lodestar analysis, and under the Ninth Circuit's 25% benchmark as a cross-check.

7

8         Under the lodestar analysis, Class Counsel will recover a negative multiplier of 0.64

9    percent of their fee incurred through June 2011, even though it is clear that their defense of the

10   final settlement of this action, and attendant appeals, will likely endure for many months, if not

11   additional years after the time frame covering their fee petition.  The Court has previously

12   indicated that Class Counsel's lodestar is reasonable.  Class Counsel believes that this litigation

13   ultimately resulted in a very successful settlement that establishes a common fund of over $5

14   million.  However, the negative multiplier requested here leaves plenty of room for the Court to

15   approve the fee request as reasonable in relation to the success of the litigation, even if the Court

16   holds the opinion that the Settlement could or should have recovered a greater dollar amount or

17   provided different, or other Class relief.  Accordingly, the negative multiplier applied to the

18   reasonable lodestar for this successful litigation provides a sufficient basis for this Court to

19   specifically satisfy the *Bluetooth* standard.  *See* 654 F.3d at 943.

20

21        Moreover, the injunctive relief provides an additional value to the Class.  For the

22   proposed six-year class period, from 2004-2010, Classmates' guestbook email campaign

23   generated approximately 3 million members, or 500,000 members per year, who upgraded from

24   a free membership to a paid, Gold, membership.  Taking into account a two-year injunction on

25   the deceptive guestbook email campaign, Class Counsel submits that the injunctive relief will

26

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

prevent an additional 500,000 consumers per year from falling prey to the same alleged scam. At an average value of $24.49 per membership, this injunctive relief has an estimated value of just under $25 million.  Accordingly, the injunctive relief, like the cash payment, provides actual, quantifiable relief to the Class.  The Court should take the proposed value of this injunctive relief into consideration in finding that the Settlement is fair, reasonable, and adequate.

E.  **The Court Should Grant Counsel's Request for Reimbursement of Costs and Approve the Request Case Contributions to the Lead Plaintiffs**

The $33,610.77 in expenses advanced by Class Counsel were reasonable and necessary to secure the resolution of this litigation.  *See* Dkt. No. 160 ¶¶ 22-27; Dkt. No. 161.  Courts allow recovery of "out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).  *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177-78 (S.D. Cal. 2007) (costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax costs, and mediation expenses are relevant and necessary expenses in class action litigation).  The categories for which Class Counsel seek reimbursement are of the type routinely charged to hourly clients and should be reimbursed here.

Finally, it is well-recognized that "named plaintiffs … are eligible for reasonable incentive payments" as part of a class action settlement.  *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).  Courts regularly award such enhancements, which are intended to advance public policy by encouraging individuals to come forward and take action to protect their rights and the rights of the class.  *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D.Cal. 1995).  The award also compensates class representatives for their time, effort and inconvenience.  *See Staton*, 327 F.3d at 976-77 (collecting cases).  When evaluating the reasonableness of a participation award, courts consider factors such as "the action the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions … [and] the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id.* at 977.

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Class Counsel request that the Court award Lead Plaintiffs Anthony Michaels and David Catapano $2,500 each.[19]  This amount reflects the Lead Plaintiffs' contributions to the litigation, which include their participation in case investigation, complaint drafting, discovery, and mediation.  *See, e.g.*, Dkt. Nos. 135 & 136 (detailing Lead Plaintiffs' contributions).

## IV.   CONCLUSION

For the reasons stated, Plaintiffs respectfully submit that the Settlement is fair, reasonable, and adequate and should be finally approved by the Court.  The objections to the Settlement should be overruled, and the Court should grant Class Counsel's request for fees, costs, and a case contribution award of $2,500 each to the Lead Plaintiffs.

## V.   PROPOSED ORDERS

A proposed order granting final approval of the Settlement, and a separate proposed order granting the request for fees, costs, and case contributions awards, are submitted herewith.

DATED this 7th day of December, 2011.

KELLER ROHRBACK L.L.P.


By s/Amy Williams-Derry
Mark A. Griffin, WSBA #16296
Amy Williams-Derry, WSBA #28711
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384
mgriffin@kellerrohrback.com
awilliams-derry@kellerrohrback.com


Brian S. Kabateck
Richard L. Kellner
Joshua H. Haffner
KABATECK BROWN KELLNER LLP
644 South Figueroa Street

---

[19] The modest proposed participation awards requested in this case are also reasonable vis-à-vis other class cases involving requested service awards.  *See* Dkt. 93 at 17 n. 13 (collecting cases).

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 35

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

Los Angeles, CA  90017
Tel: (213) 217-5000
Fax: (213) 217-5010
bsk@kbklawyers.com
rlk@kbklawyers.com
jhh@kbklawyers.com

***Interim Class Counsel***

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 36

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON  98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE CLASSMATES.COM                 )        No. CV09-45RAJ
CONSOLIDATED LITIGATION              )
                                     )        CERTIFICATE OF SERVICE
                                     )
_____    )

I HEREBY CERTIFY that on the 7th day of December, 2011, I electronically filed the

foregoing document with the Clerk of the Court using the ECF system, which will send

notification of such filing to the following:

Stellman Keehnel, WSBA No. 9309
Russell B. Wuehler, WSBA No. 37941
Nicole Tadano, WSBA No. 40531
DLA Piper US LLP
stellman.keehnel@dlapiper.com
russell.wuehler@dlapiper.com
Nicole.tadano@dlapiper.com

*Attorneys for Defendants Classmates Online, Inc,*
*Classmates Media Corporation and United Online, Inc.*

Clifford A. Cantor, WSBA No. 17893
Law Office of Clifford A. Canter PC
cacantor@comcast.net

David Stampley
Scott Kamber
KamberLaw, LLC
dstampley@kamberlaw.com
skamber@kamberlaw.com

Lawrence Carl Locker, WSBA No. 15819
Summit Law Group
larryl@summitlaw.com

Daniel Greenberg
Greenberg Legal Services
dngrnbrg@gmail.com

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 37

LAW OFFICES OF
**KELLER ROHRBACK L.L.P.**
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384

1

Mark Lavery
The Lavery Law Firm
mark@laverylawfirm.com

2

3

Theodore Frank
Center for Class Action Fairness
tfrank@gmail.com

4

5

s/Amy Williams-Derry

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR FINAL APPROVAL
OF REVISED CLASS ACTION SETTLEMENT
(No. CV09-45RAJ) Page - 38

LAW OFFICES OF
KELLER ROHRBACK L.L.P.
1201 THIRD AVENUE, SUITE 3200
SEATTLE, WASHINGTON 98101-3052
TELEPHONE: (206) 623-1900
FACSIMILE: (206) 623-3384