1

2

3

4

5

6

7

The Honorable Richard A. Jones

8

9

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

| IN RE CLASSMATES.COM CONSOLIDATED LITIGATION | No. C09-045 RAJ |
|---|---|
| | **CLASSMATES ONLINE, INC., UNITED ONLINE, INC. AND CLASSMATES MEDIA CORPORATION'S STATEMENT IN SUPPORT OF FINAL APPROVAL OF REVISED CLASS ACTION SETTLEMENT AGREEMENT** |

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................1

II.     RELEVANT BACKGROUND..........................................................2

III.    AMENDMENT TO THE REVISED SETTLEMENT IN LIGHT OF *IN RE BLUETOOTH* ...........................................................................4

IV.     THE REVISED SETTLEMENT SHOULD BE APPROVED ................................6

        A.      Merits Of The Case ...................................................7

        B.      Risk, Expense, Complexity, And Duration Of Further Litigation ...............9

        C.      Plaintiffs' Ability To Maintain And Manage Class Action Status..............10

        D.      Governmental Participants ..........................................12

        E.      Amount Offered Through Settlement.............................12

        F.      Stage Of Proceedings ................................................13

        G.      Class Counsel's Experience And Views ....................................14

        H.      Reaction Of The Class To The Revised Settlement ....................................14

                1.      Number of Claims ...........................................15

                2.      Exclusions.....................................................15

                3.      Objections....................................................16

                        a.      A Majority Of The Objectors Solely Challenge Class Counsel's Fee Request And Accuse Plaintiffs Of Bringing Abusive Or Frivolous Litigation To Justify That Request .....................................18

                        b.      Many "Objectors" Come To Classmates's Defense............19

                        c.      Remaining Objections ....................................20

V.      CONCLUSION .................................................................24

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - i
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Browning v. Yahoo! Inc.*
  2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ....................................................................23

*Churchill Vill., L.L.C. v. General Elec.*
  361 F.3d 566 (9th Cir. 2004) ....................................................................................*passim*

*Class Plaintiffs v. City of Seattle*
  955 F.2d 1268 (9th Cir. 1992) ...........................................................................................7

*Garner v. State Farm Mut. Auto. Ins. Co.*
  2010 WL 1687832 (N.D. Cal. April 22, 2010) ................................................................12

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) .........................................................................................12

*Hanon v. Dataproducts Corp.*
  976 F.2d 497 (9th Cir. 1992) ...........................................................................................11

*Hesse v. Sprint Corp.*
  598 F.3d 581 (9th Cir. 2010) ...........................................................................................23

*Hughes v. Microsoft Corp.*
  2001 WL 34089697 (W.D. Wa. 2001) .............................................................................21

*In re Am. Bus. Fin. Servs. Inc. Noteholders Litig.*
  2008 WL 4974782 (E.D. Pa. Nov. 21, 2008) ..................................................................13

*In re Bluetooth Headset Products Liability Litig.*
  654 F.3d 935 (9th Cir. August 19, 2011) ...............................................................4, 5, 6, 24

*In re General Motors Co.*
  55 F.3d 768 (3d Cir. 1995) ..............................................................................................17

*In Re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000) .....................................................................................13, 14

*In re Prudential Ins. Co. Am. Sales Practice Litig.*
  148 F.3d 283 (3d Cir. 1998) ............................................................................................16

*In re Warfarin*
  212 F.R.D. 231 (D. Del. 2002) ........................................................................................12

*Lopez v. City of Santa Fe*
  206 F.R.D. 285 (D.N.M. 2002) .......................................................................................20

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - i
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

*Medrano v. Modern Parking, Inc.*
  2007 U.S. Dist. LEXIS 82024 (C.D. Cal. Sept. 17, 2007) ..................................................11

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) ..................................................................................10, 14

*Officers for Justice v. Civil Serv. Comm'n*
  688 F.2d 615 (9th Cir. 1982) .......................................................................................12, 22

*Pelletz v. Weyerhaeuser Co.*
  255 F.R.D. 537 (W.D. Wash. 2009) ..................................................................................21

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ...............................................................................................7

*Torrisi v. Tucson Elec. Power Co.*
  8 F.3d 1370 (9th Cir. 1993) .................................................................................................7

*Van Bronkhorst v. Safeco Corp.*
  529 F.2d 943 (9th Cir. 1976) .............................................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*
  396 F.3d 96 (2d Cir. 2005) .................................................................................................23

*Zinser v. Accufix Research Inst., Inc.*
  253 F.3d 1180 (9th Cir. 2001) ...........................................................................................11


**RULES**

Fed. R. Civ. P. 23 ............................................................................................7, 9, 11, 12


**OTHER AUTHORITIES**

Theodore Eisenberg & Geoffrey Miller, *The Role of Opt-Outs and Objectors in
  Class Action Litigation: Theoretical and Empirical Issues*
  57 VAND. L. REV. 1529 (2004) ...................................................................................16, 17

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - ii
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    Classmates Online, Inc. (now known as Memory Lane, Inc.), United Online, Inc. and

2    Classmates Media Corporation (collectively, "Classmates") respectfully submit this Statement

3    in Support of Final Approval of Revised Class Action Settlement Agreement.

4    **I.      INTRODUCTION**

5    This is a consolidated class action lawsuit that has been pending for over three years.

6    Lead plaintiffs Anthony Michaels and David Catapano purport to represent a class of roughly

7    60 million users of the Classmates.com website and allege claims arising out of

8    Classmates.com's email practices and user privacy protections.   As Classmates has stated

9    consistently throughout this lawsuit, Classmates denies any wrongdoing, disputes plaintiffs'

10   claims, and strongly believes that if it must defend this case to completion, it will prevail.  But

11   when balancing between defending a lawsuit such as this and settling it, there is more to

12   consider than simply a party's potential for success on the merits.  Classmates has thoroughly

13   evaluated all of the factors relevant to potential settlement and has concluded that it is willing

14   to settle this case on the terms set forth in the Revised Class Action Settlement Agreement

15   entered into by the parties on March 24, 2011, and modified on July 29, 2011 (the "Revised

16   Settlement").

17   The Revised Settlement provides fair, adequate and meaningful relief to the class, and

18   directly addresses all of the Court's concerns regarding the prior Class Action Settlement

19   Agreement dated March 12, 2010 (the "Prior Settlement").   The injunctive relief offered

20   through the settlement materially changes Classmates's business and directly addresses the

21   conduct complained of through this lawsuit.   In addition, Classmates will pay $2.5 million

22   directly to the class, to be distributed *pro rata* to class members who submitted a claim.

23   Classmates will also fund the costs of settlement administration in an amount estimated at

24   $1.5 million and will pay Class Counsel's fees (up to $1,050,000), which further benefits the

25   class.  The parties negotiated at arms-length and in good faith and the relief offered to the class

26   is more than fair, adequate and reasonable.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 1
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

## II.      RELEVANT BACKGROUND

The Court is well-versed in the history of this case, and Classmates will not restate the entire case history here.  In summary, this case began over three years ago in October 2008, when plaintiff Anthony Michaels filed a class action complaint against Classmates in Los Angeles County Superior Court for the State of California (the "Michaels Lawsuit").  The Michaels Lawsuit was removed to federal court in Los Angeles and transferred to this district in January 2009.  In December 2008, plaintiff Xavier Vasquez filed a similar class action lawsuit against Classmates in King County Superior Court for the State of Washington (the "Vasquez Lawsuit").  The Vasquez Lawsuit was removed to this Court in January 2009.  In April 2009, the Court consolidated the Michaels Lawsuit and the Vasquez Lawsuit. Dkt. No. 45.  The Michaels Lawsuit and the Vasquez Lawsuit and all claims and defenses asserted therein, and all claims and defenses asserted in the consolidated action, are collectively referred to herein as the "Consolidated Lawsuit."

In September 2009, plaintiffs filed their Amended Class Action Complaint (the "Amended Complaint").  Dkt. No. 59.  The parties conducted substantial discovery and developed their respective claims and defenses.  In December 2009, the parties conducted mediation before the Honorable Steven Scott, Ret., of Judicial Dispute Resolution, LLC. Although a settlement was not reached at that mediation, the parties continued to engage in intensive negotiations, while working up their respective cases.  After several months of continued negotiations, in March 2010, the parties entered into the Prior Settlement.  On December 16, 2010, the Court conducted a final approval hearing on the Prior Settlement, and ultimately concluded that the Prior Settlement would not be approved.  Dkt. No. 121.  The parties, at the suggestion of the Court, started over.

In January 2011, the parties conducted a second mediation before the Honorable John C. Coughenour of the United States District Court for the Western District of Washington.  The parties did not reach a new settlement at that mediation session, but again continued to engage

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 2
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    in intensive settlement negotiations.  On March 24, 2011, the parties entered into the Revised

2    Settlement.  On March 25, 2011, plaintiffs filed their Motion for Preliminary Approval of

3    Revised Class Action Settlement ("Motion for Preliminary Approval").  Dkt. No. 134.  On

4    April 11, 2011, Classmates filed its Response to Plaintiffs' Motion for Preliminary Approval of

5    Revised Class Action Settlement, in which Classmates provided, among other things, an

6    overview of some of the core weaknesses in plaintiffs' case ("Classmates's Statement In

7    Support of Preliminary Approval").[1]  Dkt. No. 144.  The Court conducted a preliminary

8    approval hearing on July 7, 2011, and on July 8, 2011 preliminarily approved the Revised

9    Settlement.  Dkt. No. 156.

10       Following preliminary approval, the Court provided the parties with additional

11   instructions concerning settlement notice and worked with the parties to ensure that class

12   members would receive adequate notice of the settlement.  The parties and the Settlement

13   Administrator followed the Court's approved notice plan.  Notice to class members

14   commenced on August 12, 2011 and concluded on October 18, 2011.[2]  Notice was

15   accomplished as follows: (1) the Settlement Administrator sent roughly 60 million approved

16   notice forms via email to class members; (2) publication notice was published in *The Wall*

17   *Street Journal* on August 12, 2011, and (3) the settlement notice forms and relevant case

18   materials were made available on the Settlement Administrator's settlement website.

19   Settlement notice and the administration of the settlement plan resulted in the following:[3]

| Publication Notice (*WSJ*) | Published August 12, 2011 |
|---|---|
| Total Emails Sent to Class Members | 59,611,443 (Sent 8/15/2011 – 10/18/2011) |
| Total Emails Not Returned to Settlement Administrator[4] | 52,989,418 |

[1]    Classmates provided this briefing to address the Court's concern that it had little insight into the merits of plaintiffs' case.  *See* Dkt. No. 128 (February 23, 2011 Order denying Prior Settlement), at 11-12.

[2]    *See* Declaration of Jennifer M. Keogh Regarding Revised Settlement Notice Dissemination and Settlement Administration ("Keogh Dec."), ¶¶ 10-11.

[3]    The data contained in this chart is set forth in the Keogh Dec. at ¶¶ 10-16.

[4]    *See* Keogh Dec., ¶ 10 (explaining the email delivery process and reasons why some emails are not

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 3
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

| | |
|---|---|
| Number of Visits to Settlement Website | 1,239,176 |
| Number of Emails Sent by Class Members to Settlement Administrator | 29,223 |
| Total Number of Claims[5] | 699,010 |
| Method of Payment Requested | 589,357 – Check<br>109,653 – PayPal<br>34,751 – No Payment Method Selected |
| Number of Exclusions/Opt-Outs | 3,835 |
| Percentage of Exclusions/Opt-Outs | 0.007% of Class |
| Number of Timely Objections | 370[6] |
| Percentage of Objections | 0.0006% of Class |
| Cost of Settlement Administration to Classmates (Revised Settlement Only) | $1,100,000 |
| Cost of Settlement Administration to Classmates (Total)[7] | $1,515,000 |

## III. AMENDMENT TO THE REVISED SETTLEMENT IN LIGHT OF *IN RE BLUETOOTH*

On August 19, 2011, the Ninth Circuit issued its opinion in *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. August 19, 2011). In *In re Bluetooth*, certain objectors appealed final approval of a class action settlement that the objectors argued resulted in a "gross disproportion" between the amount class counsel would receive in fees and the benefit to the class offered through the settlement. *Id.* at 938. While the Ninth Circuit did not rule on whether the fees awarded were reasonable, instead sending the case back to the trial court to further evaluate the fee request/award, it did raise factors for the trial court to consider in making that evaluation. Specifically, the Ninth Circuit wanted to make sure that the trial court had considered the following three factors in awarding the fees it had awarded: (1) the

---

delivered or returned as undeliverable).

[5]   This number includes the 50,018 claims from the Prior Settlement Agreement. Keogh Dec., ¶ 14.

[6]   There were also 3 objections that were filed late, and 3 submissions that both object and opt-out of the settlement. Dkt. No. 174. Classmates defers to the Court on how these "objections" should be treated.

[7]   These amounts include the estimated costs of completing the settlement administration process, but do not include attorneys' fees incurred in connection with settlement administration.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 4
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

amount that class counsel would receive in fees in comparison to the relief offered to the class, (2) whether defendants had agreed not to contest plaintiffs' fee request up to a certain dollar amount, and (3) if the court did not award the total amount that defendants had agreed not to challenge, the difference would be retained by defendants and not go to the class. *Id.* at 940-45.

With respect to the first factor – *i.e.*, the amount in fees requested compared to the relief offered to the class – we leave it to Class Counsel to justify its fee request. With that said, we do respectfully submit that this case is starkly different than *In re Bluetooth*. In *In re Bluetooth*, the dollar amount going to the class was a $100,000 payment to a *cy pres* fund recipient, which likely seemed insignificant compared to the $800,000 that was to go to class counsel. *Id.* at 938. By contrast, $2.5 million will go directly to the class, and Class Counsel seeks $1,050,000.

With respect to the second factor, Classmates has agreed not to contest Class Counsel's requested fees up to $1,050,000. To be clear, *In re Bluetooth* does not prohibit such an agreement, but merely stands for the proposition that where such a provision does exist, the district court should factor in the existence of the provision when scrutinizing the fee request. *Id.* at 943 ("a defendant's advance agreement not to object cannot relieve the district court of its duty to assess fully the reasonableness of the fee request"). The Court should rest assured that Classmates' agreement not to object to Class Counsel's fee request up to $1,050,000 was not the product of collusion, self-dealing, or any other nefarious motivation. Again, this was a contentiously negotiated settlement. Moreover, Class Counsel's fee request was heavily challenged by numerous objectors in connection with the Prior Settlement. Despite those challenges, the Court previously said it viewed the $1,050,000 fee request to be reasonable. That fact alone eliminates any argument that Classmates's agreement in the Revised Settlement not to object to a fee request *seeking the same amount* raises the possibility of "collusion." Classmates expects the Court to award an amount in fees that it believes is fair and reasonable (within reason, which is why the amount Class Counsel could request was capped). By

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 5
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    agreeing to allow Class Counsel to request the fees they contend they have earned (up to

2    $1,050,000), Classmates was simply deferring to the Court and will continue to do so.  There

3    was no collusion.

4         With respect to the third factor, the parties have agreed to modify the Revised

5    Settlement Agreement to provide that, if the Court does not award the entire $1,050,000 in fees

6    requested by Class Counsel, the difference between the amount actually awarded and

7    $1,050,000 will be added to the $2.5 million that is going to the class and will be distributed

8    *pro rata* to class members who submitted a claim.[8]  Although, Classmates believes that a

9    provision allowing the amount not awarded to stay with Classmates is still permissible under *In*

10   *re Bluetooth*, Classmates sees the concern some may have with this provision in light of *In re*

11   *Bluetooth*.

12   **IV.   THE REVISED SETTLEMENT SHOULD BE APPROVED**

13        The Revised Settlement is the product not only of extensive negotiations between able

14   and experienced counsel on both sides, which included two mediation sessions (before one

15   retired state court judge and one current federal court judge) and many months of intensive

16   debate and negotiation, but it is also reflective of the Court's direction (when it rejected the

17   Prior Settlement) regarding fashioning a fair and reasonable settlement for the class.[9]  The

---

[8]     A copy of the amendment to the Revised Settlement Agreement was submitted by plaintiffs in connection with their Motion for Final Approval of Revised Class Action Settlement, Response to Objections, and Reply in Support of Renewed Motion for Attorneys' Fees, Costs, and Participation Awards to the Class Representatives ("Motion for Final Approval").  Dkt. No. 176.  Under the amendment, for example, if the Court awards Class Counsel $550,000 in fees, instead of $2.5 million going directly to the class, $3 million would be distributed to the class (*i.e.*, $1,050,000 - $550,000 = $500,000 that instead of going to Class Counsel would go to the class; $2.5 million + $500,000 = $3 million to be distributed *pro rata* to class members that submitted a claim).

[9]     In fairness, it should be acknowledged that the central "deficiency" in the Prior Settlement was the total amount of monetary relief that would be provided directly to the class.  *See* Dkt. No. 128 (Order denying approval of Prior Settlement), at 9.  That "deficiency," however was the product of an unexpectedly low claim rate.  Both parties and their counsel had anticipated more monetary relief reaching the class.  The parties and their counsel should not be impugned as a result of the Prior Settlement's low claim rate.  To put a finer point on it, one objector suggests the possibility of collusion, pointing, in part, to the fact that the Prior Settlement resulted in little monetary relief for the class.  *See* Dkt. No. 167 (Objection of Professor Michael I. Krauss to Proposed Settlement and Proposed Attorneys' Fee Award ("Krauss Objection")), at 5-6.  This suggestion is unjustified.  There is no evidence that the parties did not negotiate at arms-length, and no inference of collusion or wrongdoing should be drawn from the fact that the Prior Settlement was ultimately rejected.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 6
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

Revised Settlement is entitled to a presumption of fairness and is consistent with the Ninth Circuit's strong judicial policy in favor of settlements. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 (9th Cir. 2009) (presumption of fairness where settlement negotiated at arm's length after significant case development, mediation and intensive negotiations); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ("strong judicial policy that favors settlement, particularly where complex class action litigation is concerned").

Federal Rule of Civil Procedure 23(e) dictates that in approving a class action settlement the court should consider the fairness, adequacy and reasonableness of a settlement by balancing a number of factors, including: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the presence of any governmental participant; (5) the amount offered in settlement; (6) the extent of discovery completed and the stage of the proceedings; (7) the experience and views of counsel; and (8) the reaction of the class to the proposed settlement. *Churchill Vill., L.L.C. v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[10]   These factors, among others, weigh strongly in favor of finally approving the Revised Settlement.  Classmates discussed many of these factors at length in its Statement in Support of Preliminary Approval (Dkt. No. 144) and will not restate those arguments here, but incorporates them by reference and adds to them below.

### A.    Merits Of The Case

There is a fundamental misconception about this case that needs to be set straight.  The misconception is that this is a case that is worth hundreds of millions of dollars, if not billions, that is being settled for a "measly" $2.5 million.[11]   That view is simply wrong.  To the contrary, from Classmates's perspective, this is an extraordinarily weak case that is being settled very

---

[10]        "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

[11]        *See* Objection of Christopher V. Langone submitted on November 18, 2011 ("Langone Objection"), at 3 ("the total exposure as to all claimants exceeds $343 million.  The settlement is thus less than 1% of the Defendants' exposure.").

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 7
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    generously for business reasons.

2        The misconceived comparison that is being made (comparing the theoretical "exposure"

3    of the case with the settlement amount) would only be compelling if plaintiffs' allegations had

4    real, class-wide merit.  A *valid* comparison must ask:  What is the likelihood that plaintiffs

5    could recover $500 for each of the 60 million class members, or even for a meaningful subset

6    of the 60 million class members, that they purport to represent?  As discussed in Classmates's

7    Statement in Support of Preliminary Approval, there is almost no chance of that happening.[12]

8    Plaintiffs' claims will fail (most likely at the class certification stage, but in any event on the

9    merits) and, if the case is not settled, the class will get nothing.[13]  It is not reasonable to hand-

10   pick ten or twenty examples of purported wrongdoing (as has been done up to this point), and

11   project those examples across a class of 60 million individuals in order to grossly inflate the

12   value of this case.

13       The class is represented by Keller Rohrback, a national and sizeable plaintiffs-side law

14   firm that is experienced in class action litigation, and Kabateck, Brown and Kellner, a Los

15   Angeles-based plaintiffs-side class action firm that also has considerable experience

16   prosecuting class action lawsuits.  Both of these firms have spent a considerable amount of time

17   prosecuting this case, evaluating plaintiffs' claims, and weighing the merits of the case.  If the

18   experienced lawyers at these two firms, who are more than capable of litigating this case to

19   completion, believed that they stood a good chance of securing hundreds of millions (or

20   billions) of dollars for the class, there is no way (we submit) that they would have

21   recommended settlement of this case.  If the case is truly worth $343 million to the class (as

22   Objector Langone suggests), it would be worth $85 million to Class Counsel (assuming a 25%

23   common fund multiplier is applied).  (If the case is worth $1 billion to the class, it would

---

[12]      And, as plaintiffs acknowledge in their Motion for Preliminary Approval, even if plaintiffs' did somehow secure the relief they seek, it is a near certainty that no class member would receive any compensation because Classmates could not absorb a run-away verdict. *See* Dkt. No. 134, at 15 ("Discovery revealed that … a damages award of this magnitude would undoubtedly put Defendants out of business.").

[13]      *See* Dkt. No. 144 (Classmates' Statement in Support of Preliminary Approval), at 2-16.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 8
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    arguably be worth $250 million to Class Counsel.)   Class Counsel (again, we respectfully

2    submit) would not settle this case today just so it could seek $1 million in fees now if they

3    thought they were sitting on a case that would deliver them $85 million (or $250 million) in

4    fees in a couple of years.[14]

5         We respectfully encourage the Court to re-read Classmates's Statement in Support of

6    Preliminary Approval (Dkt. No. 144), which summarizes the main reasons why plaintiffs' case

7    would ultimately fail.   When weighed against the lack of merit in plaintiffs' case, the settlement

8    truly is a windfall for those who submitted claims, providing the class with much more than it

9    would have received through prolonged litigation.

10        All class members will benefit from the injunctive relief that materially changes

11   Classmates's business practices (in a way that directly addresses the conduct complained of).

12   Classmates will distribute $2.5 million on a *pro rata* basis to class members who submitted a

13   claim.   In addition to that $2.5 million, Classmates will pay up to an additional $1.05 million

14   for plaintiffs' lawyers' fees and an estimated $1.5 million in settlement administration fees.   It

15   must also be kept in mind that if class members truly believed they were wronged and entitled

16   to $500 (as opposed to a *pro rata* share of the $2.5 million offered), as Rule 23 is designed to

17   permit, they could have excluded themselves from this lawsuit in order to pursue their $500

18   claim (or any other claim they believe they have).   Roughly 3,800 class members exercised this

19   right and excluded themselves, which means Classmates may still have to respond to further

20   claims.   In short, Classmates is not "getting off cheap."   To the contrary, when weighed against

21   the (lack of) merit in the case, Classmates is paying a steep price.   The (lack of) merit in

22   plaintiffs' case weighs in favor of final approval of the Revised Settlement.

23        **B.    Risk, Expense, Complexity, And Duration Of Further Litigation**

24        The   risk,   expense,   complexity   and   duration   of   continued   litigation   also   favors

---

[14]      Class Counsel has made general statements throughout this case that they believe in the merits of the case
and that they are confident plaintiffs would prevail.   But actions speak louder than words.   Class Counsel must
make such statements for obvious reasons, and this type of client advocacy should not be construed to infer that
Class Counsel does not believe the settlement is fair when compared to the merits of the case.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 9
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

settlement.  "[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."  *Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  The Ninth Circuit recognizes this preference towards quieting expensive and protracted class action litigation through reasonable settlements.  *See Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("there is an overriding public interest in settling and quieting litigation … particularly … in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense.").

This case presents a quintessential example of the type of complex, expensive, and unmanageable litigation that the Ninth Circuit recognizes should be settled if possible.  As discussed at length in Classmates's Statement in Support of Preliminary Approval, while Classmates has stipulated to a settlement class of plaintiffs, without that stipulation this case would grind to a halt.[15]  In summary, there are roughly 60 million class members, all of whom received different "challenged" emails – *i.e.*, there are hundreds of millions, if not billions, of "challenged" emails.  Even Class Counsel acknowledges that not all emails give rise to a claim.  Thus, every single email would need to be evaluated on a class-member by class-member basis to determine if it arguably gives rise to a claim.  Classmates feels very strongly that if this type of analysis were done, and not just the cherry-picked sampling that has been done up to this point, there would be remarkably few emails that we would be fighting over.  But that is a separate issue.  The question here is whether the analysis that would need to be done is even possible when it is compared to the resources that would need to be expended to do it – a doubtful proposition.  The risk, expense, complexity and length of future litigation in this case is unimaginable, which favors final approval.

### C.    Plaintiffs' Ability To Maintain And Manage Class Action Status

Plaintiffs will not be able to maintain class action status through a trial on the merits.

---

[15]    *See* Dkt. No. 144, at 3-8.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 10
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    This fact weighs heavily in favor of approving the Revised Settlement.  *See Churchill Vill.,*

2    *L.L.C.*, 361 F.3d at 575.  The fact is, for case management reasons alone, it would be

3    impractical to certify the class plaintiffs seek to certify.  No two emails that are being

4    challenged in this case are the same.  To meet their burden of establishing that a class is

5    certifiable under Rule 23, therefore, plaintiffs would have to identify every version of every

6    Classmates.com email that plaintiffs challenge and then try to group them in some reasonable

7    manner.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (it is plaintiffs'

8    burden to establish a class can be certified).

9        Classmates does not concede that any grouping can be done, but even if it could, at a

10   minimum there would have to be hundreds, if not thousands, of separate classes or sub-classes

11   of people who received "similar" emails.[16]  For this reason alone, plaintiffs will not be able to

12   maintain a manageable class through trial.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d

13   1180, 1192 (9th Cir. 2001) ("when the complexities of class action treatment outweigh the

14   benefits of considering common issues in one trial, class action treatment is not the 'superior'

15   method of adjudication.").

16       Moreover, the class plaintiffs purport to represent should not be certified and

17   maintained through trial for basic economic reasons.  The total amount of relief plaintiffs seek

18   should not be lost on the Court.  Plaintiffs seek statutory damages of $500 for roughly 60

19   million people – *i.e.*, $30 billion in statutory damages.  But plaintiffs have not and cannot make

20   a single showing that any individual claimant actually suffered $500 in damages.  Under these

21   circumstances, a Rule 23 class would be improper.  Where class certification would result in

22   "annihilating punishment unrelated to any [actual] damage" a class should not be certified.  *See*

23   *Medrano v. Modern Parking, Inc.*, 2007 U.S. Dist. LEXIS 82024, at *10 (C.D. Cal. Sept. 17,

24   2007) (denying class certification for failing Rule 23(b)(3)'s "superiority" requirement because

25

26   [16]    *See* Dkt. No. 144 (Classmates' Statement in Support of Preliminary Approval), at 5-7 (discussing the differences in emails that are sent to each class member and the management problems and difficulties that would be associated with attempting to recreate and group "similar" emails.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 11
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   the "defendants' liability would be enormous and completely out of proportion to any harm

2   suffered by the plaintiff" and "has little relation to the harm actually suffered by the class.").

### D.   Governmental Participants

4        Pursuant to the Class Action Fairness Act's notice requirements, notice of this

5   settlement was provided to state Attorney General's offices around the country.[17]   Classmates is

6   unaware of any state that has objected to or inquired about the Revised Settlement.[18]   The fact

7   that no governmental agencies objected or are participating in this lawsuit supports final

8   approval.   *See Churchill Vill., L.L.C.* 361 F.3d at 575 (government participation is a factor to

9   consider); *Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832 at *14 (N.D. Cal. April

10  22, 2010) ("[a]though CAFA does not create an affirmative duty for either state or federal

11  officials to take any action in response to a class action settlement, CAFA presumes that, once

12  put on notice, state or federal officials will raise any concerns that they may have").

### E.   Amount Offered Through Settlement

14       Class action "settlement is a compromise, a yielding of the highest hopes in exchange

15  for certainty and resolution."   *In re Warfarin*, 212 F.R.D. 231, 254, 257 (D. Del. 2002) (the

16  amount offered through settlement should be contrasted with the probable costs, both in time

17  and money, of continued litigation and potential for success); *Officers for Justice v. Civil Serv.*

18  *Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) ("the very essence of a settlement is compromise,

19  'a yielding of absolutes and an abandoning of highest hopes'").   The Court should not simply

20  compare what is being offered through settlement with plaintiffs' home-run theory of the case.

21  *See Officers for Justice*, 688 F.2d at 625 (a proposed settlement shall not "be judged against a

22  hypothetical or speculative measure of what might have been achieved by the negotiators");

23  *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1027 (9th Cir. 1998) (rejecting objections arguing

24  that settlement could have been "better" because such arguments do not mean that the

---

[17]      *See* Declaration of Russ Wuehler in Support of Classmates Statement in Support of Final Approval of Revised Class Action Settlement Agreement ("Wuehler Dec."), ¶ 2.

[18]      *Id.*

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 12
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   settlement presented is not fair, adequate and reasonable).  The Court should balance the

2   settlement offered by considering the difficulties plaintiffs would face if litigation proceeds.

3   *See In Re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *In re Am. Bus. Fin.*

4   *Servs. Inc. Noteholders Litig.*, 2008 WL 4974782, at *7 (E.D. Pa. Nov. 21, 2008) ("[T]he

5   settlement is not intended to compensate each and every aggrieved individual fully for his

6   loss…."). That balance weighs in favor of final approval.

7           Through the Revised Settlement, the class will share $2.5 million on a per claimant *pro*

8   *rata* basis, which is a substantial amount of money that will go directly to the class.  Classmates

9   will also pay an estimated $1.5 million in settlement administration fees.[19]  While this money is

10  not going directly to the class, it is a benefit to the class because without these expenditures, the

11  class could not receive the relief it is being provided through the Revised Settlement.

12  Classmates will also pay the Court awarded attorneys' fees that were incurred in prosecuting

13  this case on behalf of the class.  Class Counsel seeks $1,050,000 in fees.  Although some argue

14  that Class Counsel should not be awarded all of the fees they request, it cannot be contested

15  that Class Counsel's fee award (whatever it is) is a benefit to the class because Class Counsel,

16  experienced class action lawyers, prosecuted this case, evaluated it for the class, and negotiated

17  a settlement that provides benefits to the class that would not have otherwise existed.  Finally,

18  the entire class will benefit from the injunctive relief offered through the Revised Settlement.

19  In short, the amount offered through the Revised Settlement is substantial when compared

20  against the difficulties plaintiffs will face if litigation proceeds.

21          **F.      Stage Of Proceedings**

22          The stage of the proceedings is another factor which courts consider in determining the

23  fairness, reasonableness, and adequacy of a settlement.  *See Churchill Vill., L.L.C.*, 361 F.3d at

24  575.  But this factor should not be misconstrued.  There is no minimum amount of discovery

25  required, nor are there any procedural gateways to the settlement table.  What matters is that the

26

---

[19]      Keogh Dec., 16.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 13
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   parties have sufficient information to make informed decisions about settlement.  *See In Re*

2   *Mego*, 213 F.3d at 459 ("in the context of class action settlements, 'formal discovery is not a

3   necessary ticket to the bargaining table' where the parties have sufficient information to make

4   an informed decision about settlement.").

5     This case has been pending for over three years.  Both parties have expended

6   considerable resources in litigating the case, evaluating plaintiffs' claims, and fashioning a

7   settlement that is adequate, fair and reasonable.  As plaintiffs explain in their Motion for Final

8   Approval, Class Counsel conducted extensive formal and informal discovery, engaged in in-

9   depth legal research and analysis, consulted with an expert, and spent hundreds of hours

10  working on the case.  The case has proceeded well to the point where the parties, and in

11  particular plaintiffs, have sufficient information to make informed decisions about settlement.

12  This factor, therefore, weighs in favor of approving the Revised Settlement.

13    **G.**  **Class Counsel's Experience And Views**

14    In considering whether a class action settlement should be approved, courts typically

15  accord "[g]reat weight … to the recommendation of counsel, who are closely acquainted with

16  the facts of the underlying litigation."  *Nat'l Rural*, 221 F.R.D. at 528.  Classmates will allow

17  Class Counsel to set forth its expertise and view of this case.  But from Classmates's

18  perspective, it cannot be reasonably contested that Keller Rohrback, Kabateck Brown and

19  Kellner, and the attorneys at those two firms that have worked on this case, are very

20  experienced and well-qualified to handle this case, assess its merits, and recommend the

21  Revised Settlement to the Court.  This fact weighs in favor of approval.

22    **H.**  **Reaction Of The Class To The Revised Settlement**

23    Class members were provided notice of the settlement directly via email, through the

24  Settlement Administrator's settlement website, and by publication notice placed in *The Wall*

25  *Street Journal*.  The time period for submitting claims, objecting to the settlement, or

26  requesting exclusion from the settlement has expired.  Class members were given the

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 14
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    opportunity to submit a claim very easily and efficiently through an online form in order to

2    receive a *pro rata* share of $2.5 million.  They were also given the opportunity to object to the

3    settlement or opt-out online through very plain and simple data entry forms.   Thus, class

4    members were given real incentive to participate in the settlement, and participation was made

5    extraordinarily easy.  The class reacted favorably.

### 1.    Number of Claims

7        Perhaps the strongest indicator that the class approves of the Revised Settlement is the

8    number of class members who submitted a claim.   As the class's reaction to the Prior

9    Settlement reflected, and as many of the objections to the Revised Settlement reflect, more and

10   more people are developing class action fatigue.  They are tired of lawsuits like this and they

11   have little interest in participating in them.  Despite this fact, roughly 700,000 class members

12   have decided that the Revised Settlement is fair and have submitted a claim.  To be precise,

13   698,792 class members submitted a claim and now await their *pro rata* share of the

14   $2.5 million in cash relief to be distributed to the class.  Only 50,018 class members submitted

15   a claim to the Prior Settlement.[20]   Thus, there was a 14-fold increase in the number of class

16   members who evaluated the Revised Settlement and affirmatively expressed their approval for

17   it by submitting a claim.  Given the public's general frustration with cases such as this, this is a

18   telling statistic.  The roughly 700,000 people who submitted a claim could have easily ignored

19   the notice email, but they didn't.  They took the time to consider their claim, make a decision

20   about whether they wanted to submit a claim or exercise the other options with which they

21   were presented (including doing nothing), and in the end they decided to express their approval

22   for the settlement by submitting a claim.  Their collective voice speaks strongly in favor of

23   final approval of the Revised Settlement.

### 2.    Exclusions

25       Another indicator that the class approves of the Revised Settlement comes to light when

---

[20]   *See* Dkt. No. 88 (Joint Statement Regarding Settlement), at 4 (settlement data from Prior Settlement).

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 15
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    you put into context the number of people who excluded themselves.   Only 3,835 class

2    members excluded themselves from the Revised Settlement.  This represents just 0.007% of the

3    total class, which in and of itself reflects class member approval.  *See* Theodore Eisenberg &

4    Geoffrey Miller, *The Role of Opt-Outs and Objectors in Class Action Litigation: Theoretical*

5    *and Empirical Issues*, 57 VAND. L. REV. 1529, 1532 (2004) (statistically, typically about 1% of

6    class members will either opt out of or object to any class action settlement).   This low

7    exclusion rate may also reflect class action fatigue, but Classmates believes it is significant that

8    far fewer people as a percentage have excluded themselves from this settlement than is typical

9    in class action settlements.   This is particularly true given that the exclusion process was made

10   extraordinarily easy.

11       There is another compelling data point that is reflected in this low exclusion rate that

12   should not be overlooked.  There were 8,273 class members who excluded themselves from the

13   Prior Settlement.[21]   That number was cut by more than half, with just 3,835 people excluding

14   themselves from the Revised Settlement.   This 54% reduction in exclusions should not go

15   unnoticed.  Although 3,835 people have excluded themselves from the Revised Settlement (out

16   of roughly 60 million class members), Classmates respectfully submits that the low exclusion

17   rate, which was cut by more than half from the Prior Settlement, evidences class member

18   support of the Revised Settlement.  *See In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148

19   F.3d 283, 318 (3d Cir. 1998) (court found settlement was favored by the class and approved

20   settlement despite fact that 19,000 people, out of a class of roughly 8 million, excluded

21   themselves (*i.e.*, a 0.2% exclusion rate)).

22               **3.    Objections**

23       The number of objections went up slightly from the Prior Settlement, but this was

24   expected given how easy it was to object.   (We are aware of no other class action settlement

25   through which class members were able to object to the settlement through an online form.)

26

---

[21]      *See id.*

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 16
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   Nevertheless, the number of objectors to the Revised Settlement is still very low.  Out of

2   roughly 60 million class members only 370 timely objected.  Classmates respectfully submits

3   that, while they deserve full consideration, the objections should not dissuade the Court from

4   finally approving the Revised Settlement.

5       First, purely in terms of numbers, Classmates does not believe the objections represent a

6   significant enough portion of the class to warrant great deference.  As with all class action

7   settlements, objections are expected.  In fact, one recent study reports that typically about 1%

8   of class members will either opt out or object to any class action settlement.  *See* Eisenberg &

9   Miller, 57 VAND. L. REV. 1529, 1532 (2004).  Here only a fraction of class members opted out

10  or objected.  Indeed, just 0.0006% of the class objected to the Revised Settlement.  This does

11  not mean, of course, that the Court should ignore the objections, and Classmates acknowledges

12  that the Court has a different view about the meaning of the statistically few class members

13  who have objected.  But Classmates respectfully submits that the voice of 370 people (out of

14  roughly 60 million) should not be given more weight than it is due.  The objection process was

15  made extraordinarily easy.  And still, only a tiny fraction of the class objected to the Revised

16  Settlement.  That fact, with respect, should be viewed as support, or at least mass non-

17  opposition to the Revised Settlement.  Said differently, the Court should not presume

18  opposition to the Revised Settlement by class members *who did not object* simply because a

19  small handful of people did.  *See In re General Motors Co.*, 55 F.3d 768, 812 (3d Cir. 1995)

20  ("In an effort to measure the class's own reaction to the settlement's terms directly, courts look

21  to the number and vociferousness of the objectors.  Courts have generally assumed that 'silence

22  constitutes tacit consent to the agreement.'").  If people wanted to object, they should have.

23      Second, the objections must be closely looked at to see what is actually being

24  "objected" to.  While we cannot address each objection separately in this brief, we have

25  attempted to fairly group objections and discuss those groupings in the following sections.[22]

26

---

[22]    We recognize that it is difficult to group objections with broad-brush strokes, but we have done our best
to fairly group the objections so that they can be collectively discussed.  We certainly do not mean to misconstrue

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 17
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1

        a.     <u>A Majority Of The Objectors Solely Challenge Class Counsel's Fee Request And Accuse Plaintiffs Of Bringing Abusive Or Frivolous Litigation To Justify That Request</u>

2

3        By a long shot, the most strenuous objection that is made is to Class Counsel's fee

4 request. Most of these objections are coupled with a characterization of this lawsuit as being

5 frivolous, an abuse of the legal system, and designed only to justify Class Counsel's

6 undeserved fees. We have made our best effort to fairly identify and group these objections,

7 and in doing so read 268 of the 370 total objections to fall into this category. In other words,

8 72% of the total number of objectors object **solely** to Class Counsel's fee request and/or accuse

9 plaintiffs of bringing frivolous and abusive litigation. That leaves just 28% of the objections

10 (or 102) that object to anything other than fees/abusive litigation. While these objections are

11 worded in various ways, the underlying message is the same. Here are a handful of

12 representative examples:

13       Objector Nadine Allen (August 23, 2011):

14          I used Classmates.com in 2008 and because of that I am included in this

15 ridiculous lawsuit against them. Here is another self serving action created by lawyers to make money they don't deserve. $1,050,000, plus costs? You must be kidding….

16          I ask this court to throw this whole thing out and make the attorneys and

17 the two plaintiffs pay for all costs up to this point. …

Objector Estelle James (August 26, 2011)

18          This kind of litigation is socially wasteful. Surely we have better uses for

19 that money.

Objector Jeff Johns (August 23, 2011)

20          It is absolutely unconscionable that the attorneys in this case will receive

21 so much. This is nothing but a license to steal from the subscribers of Classmates and from Classmates itself.

22       Objector Sharon Anderson (August 16, 2011)

23          This lawsuit was only brought to make the attorneys wealthy. I object to

24 being named in a lawsuit for something I don't care about. This is a ridiculous abuse of our legal system. Real issues cannot be adjudicated in a reasonable time because attorneys are wasting the court's time with stupid lawsuits such as this one that only benefits the attorneys and no one

25

26 any of the objections and defer to the Court's interpretation of each and every objection. For the Court's convenience, attached as Exhibit A to the Wuehler Dec. is an alphabetical list of all of the objections that indicates the group or groups that we have placed each objection into.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 18
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    else.  Stop this crazy lawsuit abuse.

2    These objectors are tired of lawsuits such as this, and are tired of class action lawyers

3    collecting large fees for pursuing these types of cases.  What these objectors would like to see

4    is for this lawsuit to go away.  They are not claiming that they were wronged by Classmates or

5    are entitled to greater relief.  To the contrary, in many ways, a number of these objectors are

6    expressing their view that the relief that was offered is undeserved.  These objections support

7    closure of this Consolidated Lawsuit and, therefore, approval of the Revised Settlement.[23]

8    b.    Many "Objectors" Come To Classmates's Defense

9    Of the numerous objectors that complain that this Consolidated Lawsuit is frivolous and

10   an abuse of the legal process, a significant number of them go further and affirmatively defend

11   Classmates.  A total of 67 "objectors" affirmatively come to Classmates's defense (representing

12   almost 20% of the total number of objectors).  Clearly, these "objectors" should not be viewed

13   as opposing Classmates's effort to rid itself of this frivolous lawsuit.  For example:

     Objector John Northcut (September 10, 2011)

14   When a subscriber joins CLASSMATES.COM, he/she should expect that
15   other members will visit their profile.  Otherwise, why would someone
     join?  The web site is, by definition, one which allows former classmates
16   to keep up and see the profiles of any class member….  If a subscriber
     expects to have absolute privacy, then he/she should not have signed up
17   for Classmates.com ….   By joining and establishing a profile, one
     surrenders a certain amount of privacy voluntarily….  I was not harmed by
18   Classmates.com's policies.  I do not see the reasoning behind why other
     members would feel harmed.   If one receives an e-mail from
19   Classmates.com and it has the word guestbook in the subject line, it is not
     rocket science to figure out that it is a Classmates Guestbook which is
20   being referred to – who would think it is anything else?

21   Objector Ken Hillary (August 19, 2011)

22   I am objecting as I feel this is a frivolous claim only to enrich the
     attorneys….  From day one I realized visits to profiles on Classmates left
23   the information claimed in the lawsuit.  Classmates gave a notice of that
     and had a clear link that allowed not leaving that information.  Clear to
24   everyone.

     Objector Jim Gullford (August 21, 2011)

25   Classmates.com has never harmed me in any way.  This is clearly another

26   ─────────────────────

[23]    Classmates will let Class Counsel respond substantively to the mass objection to their fee request and will defer to the Court's ruling on that issue.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 19
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1   instance of 'sleazeball' attorneys enriching themselves at the expense of a
    legitimate business….

2   Objector Ryon Gambill (August 31, 2011)

3       A US corporation sent some emails to its customers and now has a choice
        but to endure interrogatories, subpoenas, depositions, hearings, bad press,
4       and of course millions of dollars in attorneys fees or pay off the
        [plaintiffs.]  What was the damage here?…  Does no one see the injustice
5       in a mid-size law firm finding some technical violation of an obscure law
        covering email communications and capitalizing on it with a class action
6       in order to enrich themselves?  Does the judge involved in the case not
        realize that the damage of an unsolicited email or misuse of an email
7       address is minimal at best to the point of insignificance?

8       I want every dime you legally extorted from the defendant on my behalf
        returned to them as I want no part of this nonsense….

9       These "objections" are significant and should not be overlooked.   These people

10  represent what Classmates believes is a substantial portion of the class that has no gripe with

11  Classmates.  These "objections" support getting rid of this case through the Revised Settlement.

12                          c.      Remaining Objections[24]

13      After you take out the objections discussed above (*i.e.*, that object solely to Class

14  Counsel's fee request, accuse plaintiffs of bringing frivolous and abusive litigation, and/or

15  defend Classmates), there are 102 remaining objections to the Revised Settlement.   These

16  remaining objections fall into six categories:

17      ***Bald Objections***.    Thirty-one objectors make empty objections to the Revised

18  Settlement without providing any substantive (or comprehensible) basis for the objection.  It is

19  difficult to respond to these objections as we do not know what the objector does not like about

20  the settlement.   It may simply be that the objector has no interest in participating in the

21  settlement.  Classmates respectfully submits that, without more, these objections do very little

22  to undermine final approval of the Revised Settlement.  *See Lopez v. City of Santa Fe*, 206

23  F.R.D. 285, 292-93 (D.N.M. 2002) (overruling objections because "even with all of [the]

24

25  [24]     In addition to the responses set forth herein, Classmates joins in plaintiffs' responses in its Motion for
    Final Approval to the substantive objections to the Revised Settlement Agreement, except that Classmates rejects
26  any statements or implications in those responses that Classmates engaged in any wrongdoing.   Furthermore,
    Classmates does not join in plaintiffs' request for an award of attorneys' fees and costs and does not join in
    plaintiffs' response to the numerous objections to that request.

CLASSMATES'S STATEMENT IN SUPPORT OF                    DLA Piper LLP (US)
FINAL APPROVAL OF REVISED SETTLEMENT - 20              701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                         Seattle, WA  98104-7044 • Tel: 206.839.4800

1   publicly available information, the objectors do not specify what exactly" is wrong with the

2   proposed settlement).

3       ***Adequacy Of Relief Offered***.  Forty-six objectors contend that the relief offered through

4   the Revised Settlement is inadequate.  These objections generally fall into four sub-groups.

5   First, a majority of these objections claim the relief is inadequate **IF** there is merit to plaintiffs'

6   claims.  These objectors seem to recognize that if plaintiffs' claims have no merit, the objection

7   would not have been made.  Second, the next sub-group of these objections claim that the relief

8   is inadequate based on the **ASSUMPTION** that plaintiffs' claims have merit.  The first two

9   sub-groups of these objections are squarely undermined by the fact that, as discussed above and

10  in Classmates's Statement in Support of Preliminary Approval, plaintiffs' case is exceptionally

11  weak.  Plainly there is a balance that must be struck between the merit in plaintiffs' case and

12  the relief offered to the class.  That balance was fairly struck through the Revised Settlement.

13  Third, a handful of these objections simply misunderstand what this case is about.  They claim

14  they are entitled to relief for alleged misconduct by Classmates that is not at issue in this case.

15  These objections should have no bearing on the Court's final approval analysis.  Finally, a

16  couple of these objectors appear to truly believe in the allegations in the Consolidated Lawsuit

17  and feel they should receive more.  With respect, Classmates disagrees.  Moreover, although

18  these objectors appear to truly believe in the merits of their case, that does not necessarily mean

19  the Revised Settlement should not be approved.  *See Pelletz v. Weyerhaeuser Co*., 255 F.R.D.

20  537, 544-45 (W.D. Wash. 2009) (approving settlement and overruling objections that

21  settlement benefits were inadequate; *Hughes v. Microsoft Corp.*, 2001 WL 34089697, at *8

22  (W.D. Wa. 2001) (similar).

23      This is a very good deal for the class.  As the Court observed in the Preliminary

24  Approval Order, "[i]t is difficult to provide meaningful cash compensation to 60 million

25  people….  Even the most gifted negotiator would be hard pressed to raise Classmates's

26  settlement offer from $2.5 million to tens or hundreds of millions of dollars."  Dkt. No. 156,

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 21
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1  at 4-5.  These objections ask for home-run settlement relief.  That is not what the law requires.

2  As the Ninth Circuit has long recognized, a proposed settlement shall not "be judged against a

3  hypothetical or speculative measure of what might have been achieved by the negotiators[;]"

4  "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of

5  highest hopes.'"  *Officers for Justice*, 688 F.2d at 624-25.

6      As discussed above, if not resolved through reasonable compromise, plaintiffs' case

7  will fail.  Most notably, the notion that manageable classes could be maintained through trial is

8  absurd.  For example, for each class member we would have to determine if the individual

9  referred to in the challenged email is someone the recipient knows.  If so, **there is no claim** and

10  there would be no basis to put that individual into a sub-class to pursue a claim.  In other

11  words, there is no way of getting around an individual-by-individual analysis of this case.  So

12  there is no benefit to pursuing this case as a class action.  Class Counsel could never do the

13  granular level of work that would need to be done to maintain class action status through trial.

14     Setting aside the underlying question of whether the emails being challenged through

15  this lawsuit are false or misleading (which they are not), the fact that a manageable class could

16  never be maintained through trial is perhaps the most compelling reason why plaintiffs' case

17  has no merit (which renders the relief to the class more than adequate).  The fact that plaintiffs'

18  case will fail has a direct bearing on the adequacy of the relief being offered through the

19  Revised Settlement.  *Churchill Vill., L.L.C.*, 361 F.3d at 575.  This is important because, while

20  a handful of objectors challenge the adequacy of the relief offered through the Revised

21  Settlement, not a single one of them even attempted to explain to the Court how this fatal

22  deficiency in plaintiffs' case could be overcome.[25]

23     ***Inapposite Objections***.  Eleven objections complain about things that have nothing to

24  do with this case or otherwise misunderstand what is being offered through the Revised

25

26  [25]    This material deficiency was explained in great detail to the class through Classmates's Statement in Support of Preliminary Approval, which was available on the settlement website, but not a single objector even attempted to address it.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 22
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    Settlement.  For example, one of these objectors complains about an unauthorized charge on

2    her account while another complains that Classmates did not provide her with the services she

3    thought she was entitled to through its website.[26]  Again, with respect, these objections should

4    have no bearing on the Court's final approval analysis as they bear no relation to the underlying

5    claims in this case.

6         ***Fees Should Be Increased***.  One objector argues that the Court should award Class

7    Counsel more in fees than it has asked for.  We trust that Class Counsel appreciated this

8    "objection," particularly in light of the general sentiment by the other objectors that Class

9    Counsel should not be awarded the fees they seek.  But this objection must be rejected.  The

10   amount that Class Counsel can request is capped by the Revised Settlement.

11        ***Release***.  One objector contends the scope of the release included in the Revised

12   Settlement is too broad.  The release covers claims that were alleged or could have been alleged

13   in the Consolidated Lawsuit.  The federal courts routinely approve such releases.  *See*, *e.g.*,

14   *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("Plaintiffs in a

15   class action may release claims that were or could have been pled in exchange for settlement

16   relief."); *see also Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *7 (N.D. Cal. Nov. 16, 2007)

17   (similar).  Classmates respectfully disagrees with this objector.  But resolving this disagreement

18   is not something the Court needs to do to finally approve the Revised Settlement.  As the Court

19   noted in the Preliminary Approval Order, the scope of the release is an issue that would need to

20   be addressed by a later court.[27]

21        ***Objecting On Various Grounds***.  There are twelve objections that object to the Revised

22   Settlement on various grounds.  The issues raised in these objections, however, are not unique

23   to just these objections.  Instead, they are the same issues that are raised in the rest of the

24   objections that are discussed above.

25   _____

26   [26]      *See* Objections of Objector Carn DeNiro (August 22, 2011) and Objector Shirley Speed (August 22, 2011).

     [27]      Dkt. No. 156 (Preliminary Approval Order), at 5 ("The court takes no position on whether the release will actually be given such broad effect." (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 592 (9th Cir. 2010)).

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 23
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1      For example, Objector Curtis Neeley (October 10, 2011) objects to Class Counsel's fee

2  request, claims the relief offered is inadequate, and complains about alleged wrongful conduct

3  that is not at issue in this case (*i.e.* alleged federal wire fraud crimes).  Objector Christopher

4  Langone (November 18, 2011) contends that the relief offered to the class is inadequate, raises

5  *In re Bluetooth* as a barrier to approval, and challenges Class Counsel's fee request.  Objector

6  Michael Krauss objects to Class Counsel's fee request and raises *In re Bluetooth* as a barrier to

7  final approval.[28]  In other words, what these objectors object to is addressed above and need not

8  be restated here.

9      In sum, the class has reacted to the Revised Settlement and Classmates respectfully

10  submits that the overwhelming sentiment from the class is that it should be finally approved.

11  **V.    CONCLUSION**

12      This case has been pending for over three years.  The parties have engaged in two

13  rounds of intensive and contentious settlement negotiations.  The Revised Settlement reflects

14  years of hard work towards finding a compromise that is fair, adequate and reasonable.

15  Classmates respectfully requests that the Court grant plaintiffs' Motion for Final Approval of

16  the Revised Settlement.

17      //

18      //

19      //

20      //

21      //

22      //

23      //

24

25  [28]      Notably, a handful of these objectors appear to be what some might call "professional objectors."  Indeed,
the most vociferous of the objections to the Revised Settlement Agreement fall in this category.  While Classmates

26  does not suggest the Court should not consider these objections, Classmates calls attention to the fact that the
motivation behind these objections may have less to do with actually protecting the rights of the class members in
this case and more to do with advancing the interests of these objectors.

CLASSMATES'S STATEMENT IN SUPPORT OF
FINAL APPROVAL OF REVISED SETTLEMENT - 24
No. C09-045 RAJ

DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104-7044 • Tel: 206.839.4800

1    DATED this 7th day of December, 2011.

2                         DLA PIPER LLP (US)

3                    By    s/ Russ Wuehler
                          Stellman Keehnel, WSBA No. 9309
4                         Russ Wuehler, WSBA No. 37941
                          701 Fifth Avenue, Suite 7000
5                         Seattle, WA  98104
                          Telephone:  206.839.4800
6                         E-mail:  stellman.keehnel@dlapiper.com
                                      russ.wuehler@dalpiper.com
7
                          *Attorneys for Defendants Classmates Online, Inc. (now
8                         known as Memory Lane, Inc.), United Online, Inc.
                          and Classmates Media Corporation*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CLASSMATES'S STATEMENT IN SUPPORT OF          DLA Piper LLP (US)
FINAL APPROVAL OF REVISED SETTLEMENT - 25      701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                          Seattle, WA  98104-7044 • Tel: 206.839.4800

1

## CERTIFICATE OF SERVICE

2      I hereby certify that on December 7, 2011, I caused to be electronically filed the

3  foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4  such filing to the following counsel of record:

5
- Lawrence C. Locker
  larryl@summitlaw.com
6
- Mark Griffin
7    mgriffin@kellerrohrback.com

- Clifford A. Cantor
8    cacantor@comcast.net

9
- Theodore H. Frank
  tfrank@gmail.com
10
- Amy Williams-Derry
  awilliams-derry@kellerrohrback.com
11
- Scott A. Kamber
12    skamber@kamberlaw.com

- Daniel Greenberg
13    dngrnbrg@gmail.com

14
- Christina Latta Henry
  chenry@seattledebtlaw.com
15
- Richard L. Kellner
  rlk@kbklawyers.com
16
- Joshua H. Haffner
17    jhh@kbklawyers.com

- David A. Stampley
18    dstampley@kamberlaw.com

19
- Eric J. Fierro
  efierro@kellerrohrback.com
20
- Mark Lavery
  mark@laverylawfirm.com
21

22      Dated this 7th day of December, 2011.

23                           _s/ Russ Wuehler_____
                             Russ Wuehler
24

25  WEST\225423619.2

26

CLASSMATES'S STATEMENT IN SUPPORT OF                DLA Piper LLP (US)
FINAL APPROVAL OF REVISED SETTLEMENT - 26           701 Fifth Avenue, Suite 7000
No. C09-045 RAJ                                      Seattle, WA  98104-7044 • Tel: 206.839.4800