The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re<br><br>CLASSMATES.COM CONSOLIDATED LITIGATION | CASE NO. C09-00045-RAJ<br><br>REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S MOTION FOR SANCTIONS<br><br>**CLASS ACTION**<br><br>**NOTED ON MOTION CALENDAR:**<br>**Friday, February 3, 2012** |

## I.    INTRODUCTION

On January 27, 2012, class counsel responded to Professor Michael Krauss's "Motion for Sanctions" (Dkt. No. 187) with a 31-page "Plaintiff's Response in Opposition to Objector Michael Krauss's Motion for Sanctions & Statement Regarding Fees."  Dkt. No. 196 ("Response").[1] Krauss contended that the bulk of the subpoenas that class counsel had issued were overbroad or issued for an improper purpose, and were therefore sanctionable under Rule 45(c). *Mattel Inc. v. Walking Mt. Prods.,* 353 F.3d 792, 814 (9th Cir. 2003).  Counsel who issue an objectively unreasonable subpoena may be sanctioned. *Watson v. State,* CV-04-16, 2006 U.S. Dist. LEXIS 55206 (D. Mont. July 27, 2006); *see also Highfields Capital Mgmt., L.P. v. Doe,* No. C. 04-00176, 2005 U.S. Dist. LEXIS 29680, at *6 (N.D. Cal. May 31, 2005).  In its Response, class counsel supplies numerous attempts to defend its behavior; they fail.

---

[1] Twenty-four of class counsel's pages were devoted to a defense against the motion for sanctions.  Under Local Rule 7(f)(4), Krauss is entitled to a twelve-page reply brief; he has restricted himself to nine.  This reply brief confines itself to the question of sanctions; it does not address the matter of attorneys' fees.

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 1
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

II.     ARGUMENT

1.      The subpoena issued to the Center for Class Action Fairness (at § 9) (hereinafter, "the Center") requested documents that would reveal private information about its donors. Nowhere is this indefensible request justified anywhere in class counsel's 31-page response, except for its claim that it is entitled to "probe the Center's litigation motives."  Response at 12. The silence is deafening:  class counsel never identifies anything relevant that would trump the central First Amendment associational rights that would have been trampled by class counsel's harassing request.  *NAACP v. Alabama,* 357 U.S. 449 (1958) ("overriding valid interest of the State" required for compelled disclosure of membership lists).[2]  By itself, this attack on the First Amendment rights of Professor Krauss and his counsel demonstrates the improper and overbroad nature of the subpoena.  Class counsel has failed to provide any counterargument to the Center's claim that this aspect of the subpoena was sanctionable.

2.      Class counsel argues that it was entitled to issue a subpoena that would "probe" the political views of Professor Krauss and his counsel.  Although class counsel spends several pages relating a cockeyed portrait of litigants' political opinions (Response at 9-11), its discussion is necessarily irrelevant:  the political motivations of a litigant are entirely distinct from the merits of the litigant's argument.  Class counsel's revelation that its subpoena was designed to reveal political motivations (*id.*) demonstrates the subpoena's impropriety.  *NAACP v. Alabama,* 357 U.S. 449 (1958); *see also Perry v. Schwarzenegger*, 591 F.3d 1147 (9th Cir. 2010).  Class counsel's attempt to bring evidence of "nothing more than the abstract beliefs" of litigants into court violates their First Amendment rights, given that it is necessarily aimed at inviting this Court to take notice of such irrelevancies as litigants' political views or associations.  *Dawson v.*

---

[2] Class counsel notes (Response at 18) that one case that Professor Krauss cited for this proposition was reversed in part:  *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 407 (D. Kan. 2009).  Curiously, class counsel fails to bring to this Court's attention that the portion that Professor Krauss cited was not reversed.  *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1151 (D. Kan. 2010) ("Plaintiffs do not dispute Judge O'Hara's ruling that the First Amendment protects against disclosure of trade association confidential membership and financial contributor information.").

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 2
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

*Delaware*, 503 U.S. 159, 166-67 (1992). *See also Huminski v. Corsones*, 396 F.3d 53 (2d Cir. 2004) (the First Amendment's prohibitions of viewpoint discrimination apply to judges). Class counsel's armchair psychoanalysis, which culminates in the accusation that Professor Krauss's counsel have misrepresented their own motives to this Court (Response at 28), is false, groundless, irrelevant, and offensive (*see* Declaration of Daniel Greenberg in Support of Motion for Sanctions ("Greenberg Decl."), ¶ 9); the portions of class counsel's subpoena that attempted to "probe" the political views of litigants are sanctionable.

      3.      Furthermore, the portions of class counsel's subpoena that are based on their extensive criticism of the political views of Professor Krauss's counsel, and even of the political views of Professor Krauss (*see, e.g.*, Michael Griffin Declaration (Dkt. No. 197) ("Griffin Decl."), ¶ 15), are insupportable for another reason.

          a.      In the course of class counsel's series of petty professional insults directed at Professor Krauss and his counsel, class counsel falsely represents that the Center objects to settlements "regardless of the legal merits of its objections." Response at 10. In fact, the Center has a focused and effective litigation program: the Center has had 18 objections that resulted in settlement rejections or material improvements to the fairness of the settlement (including two in this case); there have been only six cases that the Center has lost that are not still pending on appeal;[3] and the Center has won every federal appeal it has argued. The Center has requested fees five times and received fees five times. Class counsel lacked any reasonable justification for its statements about the motivations or the legal strategies of the Center; the fact of the matter is that any public-interest litigation agenda runs the risk of losing cases, and indeed runs the risk of the occasional critical statement from the bench.

          b.      In its attempt to obscure the Center's record of success, class counsel quotes the *Lonardo* decision's criticism of the Center's brief as "long on ideology and short on law." *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio. 2010). Class counsel,

---

[3] These figures do not count the Center's eight cases that are currently pending at the trial or appellate level.

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 3
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

1  however, overlooks two crucial facts.  *First,* class counsel omits the context of the Center's
2  argument which the *Lonardo* court found "long on ideology and short on law":  namely, that the
3  attorneys' fee award should not be segregated from the class fund.  One year later, the Center's
4  position was adopted by the Ninth Circuit in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d
5  935, 949 (9th Cir. 2011).  (Even more recently, this Court itself referenced the rule of *Bluetooth*
6  when noting that "such agreements are inherently suspect."  *McClintic v. Lithia Motors, Inc.*,
7  No. C11-859RAJ, 2012 U.S. Dist. LEXIS 3846, at *14-15 (W.D. Wash. Jan. 12, 2012).)  *Second*,
8  class counsel neglects to relate that the *Lonardo* court awarded the Center attorneys' fees out of
9  class counsel's award, in light of the Center's contribution to the settlement.  *Lonardo*, 706
10 F. Supp. 2d at 813.  That is:  one year after the Center's *Lonardo* objection was criticized, it was
11 awarded attorneys' fees for its objection, and the legal theories that its objection propounded are
12 now recognized as correct and uncontroversial in this Circuit.  If *Lonardo* indicates (as class
13 counsel argues) a failure of public-interest advocacy, it is hard for us to imagine success.  We
14 agree with the Ninth Circuit and with this Court that, on the matter of segregating attorneys' fees
15 from the rest of the settlement, that those tribunals have the better view of the law.  Class
16 counsel's attempt to anchor its subpoena on an argument that is not only legally non-cognizable,
17 but insupportable by its own premises, deserves sanctions.

18        4.      Class counsel also groundlessly argue that they had reason to believe that the
19 Center for Class Action Fairness, LLC was not a nonprofit program.  They fail to demonstrate any
20 relevance to that allegation. The only effect of the Center's nonprofit status in this case is to
21 reduce the fees they would seek in a fee request because of its conservative interpretation of IRS
22 limits on fee recovery in a calendar year.  The Center's nonprofit status is entirely irrelevant to the
23 legal representation that its attorneys provided to Professor Krauss.  Class counsel's baseless
24 allegations that the Center is committing felonious tax fraud are absurd (why would the Center
25 commit a crime to *reduce* its fee recovery?) and have no relevance to the merits of Krauss's
26

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 4
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  objections; they cite no law for the authority that a for-profit objector's fee request is to be treated
2  differently from a nonprofit's.

3      5.    Class counsel's subpoena also demanded the financial records of various charitable
4  donations made by Donors Trust to organizations that had (independently) compensated Professor
5  Krauss for his work, based apparently on a frivolous theory that these charitable donations might
6  somehow have been payments to Krauss in connection with pending litigation.  Response at 13.
7  For instance, class counsel argues that because Professor Krauss was compensated for writing an
8  article for the Cato Institute in 2001, and because Donors Trust made a charitable donation to the
9  Cato Institute in 2009, that this gave class counsel reason to believe that Professor Krauss's
10 attorneys were somehow paying him to object to the settlement.  Griffin Decl., ¶ 15.  It is not just
11 hilariously unlikely that Professor Krauss or anyone else would have been able in 2001 to predict
12 the settlement at hand, to say nothing of designing or participating in a scheme that would
13 compensate him for his participation in it: rather, it is impossible.  Class counsel's conspiratorial
14 suspicions―which would require coordination and prediction that are arguably beyond the powers
15 of mere mortals―are similarly unattached to reality in the rest of the examples that it provides:
16 the notion that Professor Krauss's lawyer's funders' parent corporation made, for instance,
17 charitable donations to his employer (George Mason University School of Law) that were actually
18 disguised payments to him is not simply false, and not simply offensive to common sense, but can
19 be seen by any reasonable person to be groundless:  the idea that these payments might be part of a
20 plan that predated this action's initiation and the very idea of the Center is absurd.  This three-
21 times-removed conspiracy theory cannot justify class counsel's abusive subpoena; it should earn
22 sanctions from this Court.

23     6.    More generally, class counsel's attempt to produce hypothetical and irrelevant
24 conflict-of-interest claims is a frivolous use of the subpoena.

25     a.    Class counsel explains that it is entitled to explore by subpoena whether
26 Donors Trust is actually directing the legal strategy of Professor Krauss's attorneys (Response at

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 5
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

14). Donors Trust is doing nothing of the kind, but even if it were, that would only provide grounds for an action by Professor Krauss against his attorneys, not any action by class counsel. In any event, Professor Krauss's attorneys exercised independent judgment in their representation in this matter; the contract between Donors Trust and Center attorney Theodore H. Frank requires that Donors Trust permit him to exercise that judgment freely.  *See* Supplemental Declaration of Theodore Frank in Support of Motion for Sanctions ("Frank Suppl. Decl."), ¶ 10.

      b.      Similarly, class counsel's reliance on D.C. Rule of Professional Conduct 1.5(b), *id.,* is insupportable; that Rule, by its own terms, protects clients from unfair billing by their attorneys. Rule 1.5, cmt. 2. Professor Krauss, who teaches legal ethics, has personally approved the legal strategy in this case as well as every filing by his counsel; he does not need intermeddling from class counsel to protect him from his attorneys. In any event, class counsel has provided no support for the theory that any of these fictional improprieties might affect Professor Krauss's right to seek fees under, *e.g.*, *Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963 (9th Cir. 2009). Professor Krauss's attorneys have complied with Rule 1.5; they simply refused to provide privileged attorney-client communications to class counsel.

      c.      Similarly, class counsel explains that it is entitled to explore by subpoena any ownership by Donors Trust or the Center of United Online stock, on the theory that such ownership might have created a conflict of interest because it might have had an impact on the Center's legal strategy. Response at 14. The proposition is absurd:  corporations do not control their stockholders. But if stock ownership by Professor Krauss's lawyer's funder's parent corporation creates a conflict of interest, the entire class would therefore have had to be decertified, because that class failed to exclude class members who own stock in Classmates; moreover, class counsel has not disclosed their portfolios and whether any of their stock interests creates an identical "conflict of interest." The claim is especially absurd, given that Professor Krauss's objection required Classmates to pay $3.5 million to a common fund instead of under $60,000. In defending its subpoenas, class counsel hasn't done its job simply by dreaming up

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 6
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001

1  imaginary conflicts of interest; rather, it must show that its imagined conflicts of interest would be
2  relevant to Professor Krauss's objections.  Class counsel is not entitled to use subpoenas to serve
3  as a roving conflict-of-interest policeman; rather, any subpoena it issues must be relevant to its
4  dispute with Professor Krauss over a fee request that had not yet been made.  Because class
5  counsel's imaginary theories of conflicts of interest never reach the question of relevance, the
6  subpoenas that class counsel produced are pure harassment and deserve sanctions.  And to repeat:
7  Professor Krauss, a legal ethics professor, does not need class counsel to protect him from any
8  alleged conflict of interest; he has expressed satisfaction with his counsel's representation.
9  Declaration of Michael Krauss in Support of Motion for Sanctions ("Krauss Decl."), ¶ 9.

10        7.      Although class counsel defends its subpoenas as legitimate explorations of possible
11 conflicts of interest, it was unable after repeated requests to produce any case law or other
12 authority that would justify them.  The only case law that class counsel ever produced that class
13 counsel suggested might explain how the stock ownership of (to repeat class counsel's incredible
14 argument) *Professor Krauss's lawyer's funder's parent corporation* might create a conflict of
15 interest that is relevant to Professor Krauss's objection was *In re Mercury Interactive Sec. Litig.*,
16 618 F. 3d 988 (9th Cir. 2010).  Professor Krauss demonstrated at great length in his Statement
17 (Dkt. No. 186) that the use of this case to defend class counsel's subpoenas was without
18 justification; more particularly, he demonstrated that class counsel's argument that fee requests by
19 objectors had to meet the same notice requirements as fee requests by class counsel was entirely
20 groundless and frivolous—a mistake exhibited in class counsel's oral argument, and in briefing,
21 and in subsequent negotiations with Krauss's counsel.  Regrettably, class counsel persists in this
22 mistake in both of its latest filings: in both its Motion for Leave and its Response, it also confuses
23 "parties acting as fiduciaries for the class" with class members generally.  Dkt. No. 191, n.2;
24 Plaintiffs' Response in Opposition at 7.  But Professor Krauss owes no fiduciary duty to the class,
25 although he believes that he is acting in its best interest. Although class counsel represents to this
26 Court that its latest citation to *In re Mercury* discusses the powers of "parties acting as fiduciaries

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 7
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

acting for the class," anyone who reads the actual opinion will see that the sentence in question discusses the rights and powers of *class members as such* to examine *class counsel's* fee motion, not the fee motion of an objector. *In re Mercury Interactive Sec. Litig.*, 618 F. 3d, at 994. The frivolous *Mercury* argument in class counsel's advocacy, which flatly and repeatedly misrepresents the case and which simply ignores the extensive briefing on *Mercury* that it purports to respond to, deserves sanctions.

8.  Finally, class counsel's series of justifications and excuses for its conduct merits criticism. Class counsel complains that it was never warned that its subpoena was illegal by the Center after the subpoena's issuance. Response at 16. In fact, it was warned repeatedly by Center attorneys that its subpoena was illegal on its face.[4] Motion for Sanctions at 2. Class counsel complains that it was "shocked" when the Center filed its motions for sanctions, apparently because of a groundless belief that the dispute over the propriety of the subpoena had been resolved. Griffin Decl., ¶ 31. Class counsel's surprise was entirely unjustified, given the express warning of the Center's communication (which class counsel claimed to be responding to) that referenced the "consequences stemming from the positions you have taken in propounding a subpoena that is illegal on its face." (The January 23, 2012 declaration of Amy Williams-Derry contained a copy of this communication. Dkt. No. 192 at 7.) Furthermore, class counsel's bad-faith negotiation posture—best represented in Ms. Williams-Derry's statement to Center attorneys that she would not withdraw the subpoenas she issued, no matter how much discovery material the Center voluntarily provided, unless it either withdrew its fee request or withdrew its objection to the fee request of class counsel (*see* Declaration of Theodore H. Frank in Support of Michael Krauss's Motion for Sanctions (Dkt. No. 188-3), ¶ 20)—itself merits sanctions.

---

[4] Class counsel does not deny that their subpoena failed to comply with Rule 45 or that Frank informed class counsel of same; their own declaration supplies Frank's statement. See Declaration of Amy Williams-Derry (Dkt. No. 198), ¶ 20. Although they were demonstrably (and even admittedly) on notice, they refused to withdraw the subpoena. Class counsel's argument—that they cannot be sanctioned for failing to follow Rule 45 unless opposing counsel serves as their legal advisor by explaining precisely how to comply with the Rule—is not just unsupported by any precedent; it is almost beyond belief.

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 8
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone: (206) 676-7000
Fax: (206) 676-7001

### III.     CONCLUSION

In short, large parts of class counsel's subpoena were objectively unreasonable and failed to meet the requirements of the law of this Circuit.  Class counsel issued an abusive and illegal subpoena to harass Professor Krauss's counsel into withdrawing a fee request in an attempt to maximize its own fees, and to punish Professor Krauss for his two successful objections to class counsel's self-serving illegal settlements.  Large portions of the subpoena were without any legitimate justification; as a whole, the subpoena was precisely the kind of abusive litigation tactic that deserves, in response, nothing but sanctions from this Court.  Sanctions are appropriate; more importantly, they are necessary to ensure that future class counsel do not harangue objectors into withdrawing meritorious objections.

DATED this 3rd day of February, 2012.

Respectfully submitted,

*/s/ Daniel Greenberg*
Daniel Greenberg (*pro hac vice*)
**CENTER FOR CLASS ACTION FAIRNESS LLC**
**GREENBERG LEGAL SERVICES**
55 Fontenay Circle
Little Rock, AR  72223
(501) 588-4245
*dngrnbrg@gmail.com*

*/s/ Theodore H. Frank*
Theodore H. Frank (*pro hac vice*)
**CENTER FOR CLASS ACTION FAIRNESS LLC**
1718 M Street NW, No. 236
Washington, DC  20036
(703) 203-3848
*tfrank@gmail.com*

*/s/ Lawrence C. Locker*
Lawrence C. Locker, WSBA #15819
**SUMMIT LAW GROUP PLLC**
315 Fifth Avenue S., Suite 1000
Seattle, WA  98104-2683
(206) 676-7000
*larryl@summitlaw.com*

**Attorneys for Professor Michael I. Krauss, Objector**

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 9
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:   (206) 676-7001

# CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mark A. Griffin, Esq.
Amy C. Williams-Derry, Esq.
Keller Rohrback
1201 Third Avenue, Suite 3200
Seattle, WA  98101
*mgriffin@kellerrohrback.com*
*derry@kellerrohrback.com*

Stellman Keehnel, Esq.
Russell B. Wuehler, Esq.
DLA Piper LLP (US)
701 Fifth Avenue, Suite 7000
Seattle, WA  98104
*stellman.keehnel@dlapiper.com*
*russell.wuehler@dlapiper.com*

DATED this 3rd day of February, 2012.

/s/ *Marcia A. Ripley*
Marcia A. Ripley

REPLY TO PLAINTIFFS' OPPOSITION TO KRAUSS'S
MOTION FOR SANCTIONS - 10
CASE NO. C09-00045-RAJ

SUMMIT LAW GROUP PLLC
315 FIFTH AVENUE SOUTH, SUITE 1000
SEATTLE, WASHINGTON 98104-2682
Telephone:  (206) 676-7000
Fax:  (206) 676-7001